UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
SAMUEL WHITE,

                       Plaintiff,

      -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, RONALD TAVARES, MICHAEL MILAU,
SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE,
DARRYL LEVY, LAURA NEWCOMBE, THOMAS SPOTA,
JOHN DOES 1-10, TIMOTHY SINI, OFFICE OF THE
MEDICAL EXAMINER CRIME LABORATORY
(SUFFOLK COUNTY), HELEN WONG, M.D.,
JOHN PETERSON, JAMES McGUINNESS, and
ODETTE R. HALL,

                       Defendants.
-----------------------------------------------------------------------X

**ORDER**

20-CV-1501 (JS) (JMW)

**Stephanie McClure**
Law Office of Stephanie McClure
101 Avenue of the Americas, 9th Floor
New York, NY 10013
*For Plaintiff*

**Brian C Mitchell**
Suffolk County Dept. of Law-County Attorney
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
*For County Defendants*

**Anthony M. LaPinta**
**Kyle O Wood**
200 Vanderbilt Motor Parkway
Suite C-17
Hauppauge, NY 11788
*For Defendant Thomas Spota*

**WICKS,** Magistrate Judge:

1

Plaintiff Samuel White ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 1983 and 1985 asserting due process and equal protection violations, based on alleged false arrest, malicious prosecution, denial of a fair trial, failure to intervene, conspiracy and failure to train or supervise against the County of Suffolk, the Suffolk County District Attorney's Office, the Suffolk County Police Department, Ronald Tavares, Michael Milau, John Does 1-10, Daryl Levy, Laura Newcombe, Thomas J. Spota III, Timothy Sini, Helen Wong, the Suffolk County Medical Examiner Crime Lab, James McGuiness, John Peterson, and Odette R. Hall.  Plaintiff alleges that Defendants fabricated a case against him in an effort to charge him with manslaughter arising out of an incident that occurred on May 25, 2016, during which he was approached by a man who threatened to rob him.  (DE 87.)  Plaintiff alleges that he went to the police department to report the attempted robbery, where he was then arrested.  (*Id*.)  Following a jury trial in July of 2019, Plaintiff was acquitted.  (*Id*.)

Before the Court is yet another discovery kerfuffle, this time about the proper scope of *Monell* discovery. Plaintiff seeks records from Defendants as far back as 2002, claiming such are germane to the *Monell* claim.  Defendant opposes. For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## I.   BACKGROUND

Plaintiff filed his first motion to compel on April 15, 2021.  (DE 69.)  That motion also sought *Monell* discovery, as well as records regarding the investigation of Mr. Spota, a surveillance video of the subject incident, and an underlying criminal file of Plaintiff.  (*Id.*)  After oral argument, the motion was granted in part and denied in part.  (DE 90.)  As to the portion concerning the scope of *Monell* discovery, the Court held:

> Plaintiff's motion to compel *Monell*-related discovery is granted in part as follows: Plaintiff shall provide Defendants with a list articulating the specific types of case files that are being sought, tailored to the claims being asserted in this case, on or

> before November 19, 2021 and Defendants shall respond on or before December 20, 2021. To the extent that Defendants do not have responsive documents, Defendants shall provide an affidavit stating so. This includes the demands for Monell discovery pertaining to Defendant Thomas Spota. As to Plaintiff's request for Monell discovery pertaining to the Keith Bush file and Martin Tankleff file, that is denied without prejudice, on the basis of Rule 26's prescription of proportionality. Plaintiff may renew the request if, after conducting further discovery, a basis is established to assert that the records are proportionate to the needs of the case.

(DE 90.)

Plaintiff filed a second motion to compel discovery on January 25, 2022. (DE 98.) Defendants[1] opposed the motion. (DE 99.) The Court denied the motion with leave to renew after the parties met and conferred regarding the scope of Plaintiff's discovery requests. (DE 100.) The parties were directed to file a joint status letter advising the Court what discovery issues remained outstanding, if any, after the meet and confer. (*Id.*) On February 18, 2022, the parties filed a joint status report (DE 105), after which the Court held a status conference to address the open discovery issues. (DE 106.) The Court directed the parties to submit supplemental letters as to their respective positions regarding "the issue of the time limit reach-back on production of documents in light of the *Monell* claims asserted," and the cost-shifting of the production of deposition transcripts from cases involving like-kind claims. (*Id.*) The parties submitted their letters on February 28, 2022. (DE 107; DE 108.) On March 18, 2022, the Court addressed the branch of the parties' fee shifting dispute and reserved ruling on the scope of *Monell* discovery. (Electronic Order dated Mar. 18, 2022.)

Plaintiff now requests Internal Affairs records from 2002 through July 2019 for 11 specific categories: Abuse of Authority, Biased Policing, Bribery/Official Misconduct, Civil Rights Violation-Other, Excessive Force, Fail to Perform Duty, False Arrest, Illegal Search/Seizure, Improper Supervision, Lying/False Statement, and Misconduct. (DE 105; DE

---

[1] For purposes of this Order, "Defendants" refers to all Defendants except for Thomas Spota.

3

108.) These 11 categories were a result of this Court's prior Order (DE 90) directing Plaintiff to articulate a list of the specific types of case files that are being sought, tailored to the claims being asserted in this case. (DE 90.) Defendants have agreed to provide files for each of the named Defendants that relate to the nature of the claims, regardless of outcome and substantiated findings. (DE 107.) Defendants have also agreed to provide Internal Affairs files for non-defendant officers that relate to the nature of the claim dating back to 2008 (*more than 10 years prior* to the filing of the Complaint). (*Id.*) Defendants argue that files more remote than 2008 would not be proportional to the needs of the claim. (*Id.*) Thus, the two remaining issues are whether Plaintiff is entitled to *Monell* discovery dating back to 2002 related to non-defendant officers, and whether the Internal Affairs files for non-defendant officers shall include all files whether substantiated or not.

## II.      DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery. Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y.

Feb. 16, 2016) (quoting Fed. R. Evid. 401). This standard is applied more liberally during discovery than at trial. *Id.* Since December of 2015, "Rule 26 now defines the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.'" *Pothen v. Stony Brook Univ.*, CV 13-6170 (JFB)(AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017). "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)). Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, CV 16-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). That is, the more relevant the information sought is, the less likely a Court would find the subject discovery disproportionate. *Id.* (citation omitted). Courts weigh the following factors when assessing whether requested discovery is proportionate: the importance of the issues at stake in the litigation, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving issues, and whether the burden or expense of the discovery is outweighed by the benefit. *Huayuan Chen v. Stony Brook Univ.*, CV 15-6698 (JMA)(AYS), 2018 WL 1368031, at *5 (E.D.N.Y. Mar. 16, 2018). In the end, proportionality calls for a "common sense and experiential assessment." *Velez v. City of Chicago*, No. 18 C 8144, 2021 WL 1978364, at *4 (N.D. Ill. May 18, 2021) (initial citation omitted) (citing *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality'").

Plaintiff here has the burden of demonstrating potential relevance of the discovery requested. *T.H. by Shepherd v. City of Syracuse*, No. 5:17-CV-1081 (GTS/DEP), 2018 WL 3738945, at *2 (N.D.N.Y. Aug. 7, 2018). If Plaintiff meets that burden, the burden shifts to Defendants "to establish that the request lacks relevance, despite the broad and liberal construction afforded the federal discovery rules." *Id.* (internal quotation marks and citations omitted.) It is well-established that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) (citing *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 488 (2d Cir.1999)); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

To successfully establish a *Monell* claim, a plaintiff must show that an action pursuant to a municipality's official policy caused the injury. *Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012); *see also Shepherd*, 2018 WL 3738945, at *4 (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 707 (1978). The "policy or custom" requirement may be satisfied by alleging:

> (1) A formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (citation omitted). "[P]laintiff must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury." *Id.* citing *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d

6

Cir. 2008). Plaintiff must also establish "that the custom at issue is permanent and well-settled." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK)., 2015 WL 1379652, at *16 (S.D.N.Y. Mar. 26, 2015) citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Both the "causal link" and well-settled permanency queries are typically a fertile source of discovery.

"Courts faced with this issue [regarding the scope of *Monell* discovery] fashion temporal limitations based on the underlying facts of each case." *Maurer*, 2020 WL 12801030, at *4 (citation omitted). However, perscrutation of the authority as to the appropriate temporal scope of *Monell* discovery reveals a paucity of decisions. Having reviewed those available, there does appear to be a range of time that the courts recognize as appropriate.

The Northern District has found that a five-year look back period for *Monell* claims, including unsubstantiated complaints, is appropriate. *Shepherd* at *4-6. Outside of New York there also seems to be a consensus in other Districts across the country that the proper look-back period ranges between four to five years. For example, just last year a court found that "[f]ive years' worth of production has become a sort of benchmark in these types of cases," and held that the five-year time period was appropriate in a case alleging that a young man was unlawfully incarcerated for 16 years. *Velez*, 2021 WL 1978364, at *4 (citations omitted). About one year prior to the *Velez* decision, the Court held in *Bouto v. Guevara* that Plaintiff's request for seven years' worth of homicide files and complaint register files was unduly burdensome to produce and that, "Plaintiff has not persuaded the Court he needs such a large sample of files to *prove* the *Monell* claims." 2020 WL 4437671, at *2 (N.D. Ill. Aug. 3, 2020) (emphasis added). The Court "whittled the time period down to four or five years." *Id.*; *see also Prince v. Kato*, 2020 WL 1874099 (N.D. Ill. Apr. 15, 2020) (holding that four years of homicide files was sufficient "for the Plaintiff to examine and use in his attempt to establish a widespread pattern or practice," and

7

proportional to the needs of the case under Rule 26(b)(1)); *Maurer v. St. Tammany Par. Sch. Bd.*, No. CV 19-13479, 2020 WL 12801030, at *4 (E.D. La. June 26, 2020) (narrowing Plaintiff's discovery requests to four years before the underlying incident); *Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2020 WL 1890506, at *15 (D. Md. Apr. 15, 2020) (affirming Magistrate Judge's finding over Plaintiff's objection, that four years of discovery on *Monell* claim, "while hardly expansive, is sufficient to enable plaintiff to scour for evidence to support a *Monell* claim.") *Monell* discovery pertaining to alleged Brady violations may warrant a greater window of discovery. *See Adams v. City of New Orleans*, Civ. A. No. 15-1543, 2017 WL 713853, at *2-3 (E.D. La. Feb. 23, 2017) (finding that Plaintiff's requests for *Monell* discovery were narrowly tailored and ordering Defendants to respond to discovery requests for *Brady* materials dating back five years before a homicide and five years after a homicide).

Plaintiff's reliance on *Frails v. City of N.Y.*, 236 F.R.D. 116 (E.D.N.Y. 2006), where the Court found that twenty years of records was relevant, is misguided for two reasons. First, *Frails* was decided in 2006 before the amendment to Rule 26 commanding that proportionality be considered. *Id. See, e.g.*, *Nunez v. City of N.Y.*, No. 11 Civ. 5845(LTS)(JCF)., 2013 WL 2149869 (S.D.N.Y. May 17, 2013). Second, the Court in *Frails* ordered that Defendants produce CCRB, IAB, and NYPD records for both substantiated and unsubstantiated complaints of misconduct against the *named* defendant officers of a similar nature to the claims in plaintiff's complaint. *Id.* at *118. Here, Defendants have already agreed to provide the files for the named Defendants, that relate to the nature of the claim, regardless of outcome, and substantiated findings for any allegation for the *entire* career of each named Defendant. (DE 107.) Indeed, "the officers' conduct need not be subject to a *Monell* claim for the disciplinary files to be discoverable." *Benitez v. Lopez*, 372 F. Supp. 3d 84, 88 (E.D.N.Y. 2018).

8

After considering the proportionality factors in light of the specific facts of this case, and the decisions courts across the country have rendered since Rule 26's amendment, the Court finds that records dating back to 2002 are not proportional to the needs of this case. The Court acknowledges the importance of the issues at stake in this matter and the importance of discovery in resolving said issues. That said, Courts in various Districts have repeatedly found that the burden and expense of such discovery requests is balanced by directing defendants to produce an amount of records that is limited in scope, but still sufficient to enable a plaintiff to establish a potential *Monell* claim. That period has consistently been a 4 to 5-year timeframe.

In *Velez* for example, the plaintiff, who alleged he was unlawfully incarcerated for 16 years, originally sought 30 years of files to support his *Monell* claim, and then reduced the request to seven. 2021 WL 19788364, at *4. While noting that the amount in controversy was beyond substantial and the importance of the discovery was significant, the court nevertheless adhered to the five-year "benchmark," finding that Plaintiff did not demonstrate any special additional need for greater discovery. *Id.* at *5. Here, the seriousness of the allegations in Plaintiff's Complaint should not be minimalized, but Plaintiff's request for records dating back to 2002 is beyond the scope of what has been found to be proportionally necessary since Rule 26's amendment, in order to establish a purported *Monell* claim. Nonetheless, because the parties have met and conferred, resulting in Defendants agreeing to provide records dating back 10 years from July 2019, the Court Orders Defendants to produce the following[2]:

- <u>Named Defendants</u>: the requested files that relate to the nature of the claim (i.e., the 11 specific categories Plaintiff identified), regardless of outcome and substantiated findings for any allegation, for the entire career of each named Defendant (*Defendants have already agreed to provide such (See DE 107)*).

---

[2]Plaintiff's original document demand was withdrawn prior to the February 2, 2022 Conference and converted to a demand to "inspect." Nonetheless, the Court is directing discovery disclosures as Ordered herein and denying the request to inspect.

- <u>Non-Defendant Officers:</u> Internal Affairs files that relate to the nature of the claim (i.e., the 11 specific categories Plaintiff identified), dating back to 2008 (*Defendants have already agreed to provide such* (*See DE 107)*).  Records dating back to 2014 shall include *all* records regardless of outcome and substantiated findings for any allegation.³

The remainder of Plaintiff's requests for records dating back to 2002 is denied.

### III.   CONCLUSION

For the reasons set forth herein, Plaintiff's motion to compel *Monell* discovery is granted in part and denied in part.  Defendants are directed to provide the requested *Monell* discovery as specified in Section II. herein, on or before June 1, 2022.

Dated:  Central Islip, New York
         April 19, 2022

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

---

³ *See Frails v. City of New York*, 236 F.R.D. 116, 118 (E.D.N.Y. 2006) ("Although unsubstantiated allegations may not be admissible at trial, they may lead to witnesses who have evidence that would tend to prove defendants' intent."); *Shepher*d, 2018 WL 3738945, at *5 ("prior incidents and complaints regarding [Syracuse PD] officers, even those that are unsubstantiated, are relevant to plaintiff's claims") (citing among others *Zhao v. City of N.Y.*, No., 07-Cv-3636, 2007 WL 4205856, at *2 (S.D.N.Y. Nov. 21, 2007) (holding all complaints against police officers are relevant when a plaintiff is asserting a *Monell* claim)).