UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SAMUEL WHITE,

             Plaintiff,

             -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, RONALD TAVARES,
MICHAEL MILAU, SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE, DARRYL LEVY, LAURA
NEWCOMBE, THOMAS SPOTA, JOHN DOES
1-10, TIMOTHY SINI, OFFICE OF THE MEDICAL
EXAMINER CRIME LABORATORY (SUFFOLK
COUNTY), HELEN WONG, ODETTE R. HALL,
M.D., JOHN PETERSON and JAMES McGUINNESS,

             Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

20-CV-1501 (JS)(JMW)

**A P P E A R A N C E S:**

Stephanie McClure, Esq.
**Law Office of Stephanie McClure**
101 Avenue of the Americas, 9th Floor
New York, NY 10013
*For Plaintiff*

Brian C Mitchell, Esq.
**Suffolk County Dept. of Law-County Attorney**
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, NY 11788
*For All Defendants (except Thomas Spota)*

Anthony M. LaPinta, Esq.
Kyle O. Wood, Esq.
**Law Offices of Anthony M. La Pinta**
200 Vanderbilt Motor Parkway
Suite C-17
Hauppauge, NY 11788
*For Defendant Thomas Spota*

**WICKS,** Magistrate Judge:

## I.     PRELIMINARY STATEMENT

Plaintiff Samuel White ("Plaintiff") brings this action against Defendants pursuant to 42 U.S.C. §§ 1983 and 1985, seeking monetary damages and non-monetary relief for alleged violations of due process and equal protection, false arrest, malicious prosecution, denial of a fair trial, failure to intervene, denial of right to counsel, fabrication of evidence, presentation of false evidence to the grand jury and an appellate court, conspiracy, and failure to train or supervise.

Specifically, Plaintiff alleges that Defendants fabricated a case against him in an effort to charge him with manslaughter arising out of an incident that occurred on May 25, 2016, during which he was approached by a man ("E.R.") who threatened to rob him. (*See generally* DE 87.) According to Plaintiff, he went to the police department to report the attempted robbery incident, where he was then arrested. (*Id.* ¶¶ 85, 95, 103, 107.) Following a jury trial, Plaintiff was acquitted. (*Id.* ¶¶ 3, 155.) Defendants Assistant District Attorney Laura Newcombe, Assistant District Attorney Daryl Levy, and Honorable Timothy Sini, District Attorney of Suffolk County, move to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that all claims against Defendants Newcombe, Levy, and Sini should be dismissed because they are entitled to absolute prosecutorial immunity and sovereign immunity, and that Plaintiff's claims for equitable relief against Defendants should be dismissed.[1] (*See generally* DE 96-2.) Defendant Spota moves separately pursuant to Rule 12(b)(6) arguing that Plaintiff's claims fail because he has not plead that Defendant Spota was personally involved in any alleged constitutional deprivation, that all

---

[1] Unless specified otherwise, the Court's reference herein to "Defendants" pertains to Defendants Newcombe, Levy, and Sini. Defendant Spota is separately referred to, as he has separate counsel and has moved separately.

claims against Spota should be dismissed based upon sovereign immunity, prosecutorial immunity, and qualified immunity, and that Plaintiff's equitable relief claims should be dismissed.  (*See generally* DE 97-2.)

Before the Court on referral from the Honorable Joanna Seybert are Defendants' motions to dismiss pursuant to Rule 12(b)(6).  (DE 96; DE 97.)  For the reasons that follow, the undersigned respectfully recommends that the motions to dismiss be GRANTED in part and DENIED in part.

## II.    PERTINENT FACTUAL BACKGROUND[2]

The facts are drawn from Plaintiff's Third Amended Complaint ("Complaint") (DE 87) and are presumed true for purposes of this Report and Recommendation.[3]

### *The Underlying Criminal Case Against Plaintiff*

On the night of May 25, 2016, Plaintiff was leaving a pub in Huntington, New York, with Valerie Holloway (a/k/a "Janelle"), an acquaintance.  (DE 87 ¶¶ 82, 86.)  As they walked toward Plaintiff's car, Plaintiff saw Janelle's ex-boyfriend ("E.R.") driving toward them in the wrong direction down a one-way street without headlights.  (*Id.* ¶¶ 82, 83, 85.)  E.R. jumped out of the

---

[2] For purposes of this Report and Recommendation, the facts stated herein are limited to the relevant facts pertaining to the moving Defendants Sini, Newcombe, Levy, and Spota.

[3] In deciding a motion to dismiss, the Court may consider any document attached to the complaint.  *Yanes v. Ocwen Loan Serv., LLC*, No. 13-CV-2343 (JS)(ARL), 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015).  Here, Plaintiff attaches four news articles regarding prosecutorial misconduct, and Spota's federal indictment, which the Court takes judicial notice of, but does not look to the substance of the articles as evidence of any disputed issue at this juncture. (DE 87, Exhibits 1-4.)  *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding that pursuant to Rule 201, courts have considered newspaper articles attached to a complaint when deciding a Rule 12(b)(6) motion); *Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004) (taking judicial notice of news articles, but not looking to the substance of the articles to resolve any disputed issue on defendant's motion) (citing *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.3 (S.D.N.Y. 1998) (taking judicial notice of "widespread newspaper coverage")).

car and threatened to steal Plaintiff's jewelry. (*Id.* ¶ 85.) Plaintiff told E.R. that he did not want

to fight, but E.R. punched Plaintiff. (*Id.* ¶¶ 89, 90.) In self-defense, Plaintiff punched E.R. and

left the scene, although his jewelry was stolen during the altercation. (*Id.* ¶ 91.) Unbeknownst to

Plaintiff, Janelle had set up this encounter and robbery. (*Id.* ¶ 92.) Although E.R. was sitting up

and breathing when Plaintiff left the scene, E.R. passed away later that evening at a hospital.[4]

(*Id.* ¶ 97.) The incident was captured on surveillance video. (*Id.* ¶ 98.)

Plaintiff went to the Suffolk County Police Third Precinct and met with Detectives

Tavares and Milau (named Defendants), where he was placed in handcuffs where an unrecorded

statement was taken. (*Id.* ¶ 94.) Before Plaintiff arrived, the police had received information

that E.R. complained that same evening about "Bloods" gang members that had been following

him that night and had heard Janelle was a troublemaker that should be looked into. (*Id.* ¶¶ 101,

102.) Plaintiff told the police he wanted to help the investigation and gave them access to his

cell phone. (*Id.* ¶ 103.) However, Plaintiff was arrested within several minutes of giving his

statement and held without charges for hours while he was denied repeated requests for an

attorney. (*Id.* ¶ 107.)

The police then contacted the DA's office, and Defendant ADA Newcombe advised

Detectives Milau and Tavares to charge Plaintiff with the crime of manslaughter. (*Id.* ¶ 108.)

The grand jury indicted Plaintiff, but on appeal the indictment was dismissed as Judge

Condon found that the law on self-defense should have been read to the jury, but was not. (*Id.* ¶

111.) Plaintiff had at that point served a year in jail. (*Id.* ¶ 148.) Defendants appealed and

---

[4] Plaintiff asserts, based on trial testimony later elicited, that E.R. died after being left supine for
an extended period of time and an erroneously placed a C-Collar compressing his neck and not
because of the altercation. (*Id.*)

Plaintiff was re-arrested on November 23, 2018. (*Id.* ¶¶ 151, 154.) The case went to trial in June of 2019, and Plaintiff was fully acquitted on July 12, 2019, after a jury was finally presented with the surveillance video and Plaintiff's statement, and heard testimony regarding Janelle's lies, including photos of her posing with the proceeds of the robbery by E.R. (*Id.* ¶ 155.)

Despite providing Defendants with his cell phone, having the surveillance video available, and having access to Janelle's phone, the Defendant police officers allegedly ignored exculpatory evidence and passed lies to the prosecution to maliciously prosecute Plaintiff. (*Id.* ¶¶ 118-24.) Plaintiff alleges the DA and Suffolk Police fabricated evidence through a system regarding Tavares' notes that Plaintiff refers to as an "end around" ploy, in the purported statement and manipulation of Halloway, in the grand jury presentation, false reports, false autopsy report, and hiding/ignoring exculpatory evidence. (*Id.* ¶ 136.) Plaintiff alleges that Defendants acted in concert and conspired with each other to build a false case against Plaintiff. (*Id.* ¶ 133.) Further, Plaintiff alleges that Defendants withheld *Brady* material, including histories of Internal Affairs investigations about previous cases of falsifying evidence, coercing witnesses, and procuring false witness statements and confessions. (*Id.* ¶ 144.)

### Defendants Spota and Sini

Defendant Thomas Spota was the head of the Suffolk County District Attorney's Office during the investigation and prosecution of Plaintiff's criminal case until November of 2017, when Defendant Timothy Sini replaced Spota, as the head of the Suffolk County District Attorney's office, a position he remained in for the balance of the investigation, prosecution, and trial of Plaintiff's criminal case. (*Id.* ¶¶ 24-25, 37.) Spota was indicted in October of 2017 and convicted in 2019 for conspiracy, witness tampering, and obstruction. (*Id.* ¶ 69.)

Plaintiff alleges that Spota's conviction exposed a culture of law enforcement ignoring available exculpatory evidence, creating false facts and impressions, fabricating evidence, and engaging in cove-ups of facts, similar to what happened to Plaintiff. (*Id.* ¶ 36.) Plaintiff recounts various prior homicide cases that were overturned or dismissed while Spota was in office, including *Shawn Lawrence v. Suffolk County, et al.*; 2:19-cv-02887; *Thomas M. Moroughan v. The County of Suffolk, et al.*; 2:12-cv-00512; *People v. Hubbard*, 45 Misc.3d 328 (Efman, J.), aff'd 132 A.D.3d 1013 (2d Dept 2015); the matter of Austin Barth (no cite provided); *Wilfredo Flores*, 165 A.D.3d 695 (2d Dept 2018); the case of Dante Taylor (no cite provided); the case of Messiah Booker (not cite given); and, Rudolph Bisnauth (no cite provided) (*Id.* ¶¶ 10, 53, 56, 58, 59, 62, 67).

Plaintiff alleges Sini was aware of the culture of corruption and prior mishandlings of constitutional rights under the Spota Administration, including problems with other named Defendants, intentional withholding of *Brady* material, fabrication of evidence, knowingly or recklessly using false evidence, improper manipulation of witnesses, creation of false or unreliable statements/testimony, and tolerating police creation of false or unreliable statements/testimony. (*Id.* ¶ 25.) Plaintiff asserts that both Spota and Sini had a duty to train and supervise their employees. (*Id.* ¶ 38.)

### Defendant Newcombe and Defendant Levy

Defendants Larua Newcombe and Darryl Levy were Assistant District Attorneys at the Suffolk County District Attorney's Office during the underlying criminal case. (*Id.* ¶¶ 22-23.) Defendant Newcombe presented the case to the grand jury and according to Plaintiff, Newcombe guided Janelle into falsely testifying. (*Id.* ¶ 110.) During the appeal of Plaintiff's grand jury indictment, Newcombe signed an affirmation to the court regarding the case and presentation,

based upon her direct knowledge of the matter, her investigation, and the DA's investigation. (*Id.* ¶ 114.)  Newcomb intentionally withheld exculpatory DNA evidence from the defense by telling Helen Wong not to perform tests she knew would come back in plaintiff's favor. (*Id.* ¶ 140.)  Plaintiff alleges that Newcombe intentionally played an investigative role in Plaintiff's criminal case, requiring certain parts of the forensic investigation to be withheld and/or delayed. (*Id.* ¶¶ 66, 146.)  Newcombe also participated in the investigation by working with police on the initial search warrants, subpoenas issued post-grand jury, and when the matter "laid dismissed." (*Id.* ¶ 146.)  Newcombe paid for certain subpoenas to obtain evidence with a Suffolk County Police credit card and passed the evidence to police once received.  (*Id.* ¶ 146.)  Newcombe also allegedly gave false statements to the press about the contents of the surveillance video, which Plaintiff alleges was edited by police, but which Newcombe and Levy claimed was "damaged." (*Id.* ¶¶ 66, 147.)

Defendant Levy continued the prosecution of the case through trial.  (*Id.* ¶ 66.)  Levy presented evidence to the petit jury knowing the evidence contained falsehoods and hid other evidence from the jury.  (*Id.* ¶ 161.)  Levy covered up Defendant Tavaras' Internal Affairs history regarding falsifying witness statements.  (*Id.*)  Levy personally effected the "end-around" witness procedure.  (*Id.*)  The procedure entailed Defendant Tavares taking notes during unrecorded interviews, including Plaintiff's first interview, which were re-written, produced at trial through Defendant Milau and read to the jury.  (*Id.* ¶ 159.)  The notes contained false statements and this method was used so that Tavares, who had previously been caught creating false witness statements, could not be confronted at trial.  (*Id.* ¶¶ 159-61.)

### III.  <u>RELEVANT PROCEDURAL HISTORY</u>

Plaintiff commenced this action on March 21, 2020 (DE 1), filed an Amended Complaint on July 22, 2020 (DE 36), and was thereafter granted leave, in part, to file a Second Amended

Complaint on July 14, 2021 (DE 74; DE 61-2.) Plaintiff moved to file a Third Amended

Complaint on August 1, 2021. (DE 79.) The Court granted Plaintiff leave to amend, in part, for

the third time (DE 86) and Plaintiff filed the instant complaint, the fourth, styled "Third

Amended Complaint" ("Complaint") on October 20, 2021 (DE 87), setting forth twenty-one

causes of action, claiming violations of U.S.C. §1983 for false arrest (first and second causes of

action), malicious prosecution (third and fourth causes of action), withholding critical *Brady*

evidence (fifth cause of action), denial of a fair trial/fabricating evidence (sixth cause of action),

denial of a fair trial/withholding evidence (seventh cause of action), failure to intervene (eighth

cause of action), due process violations of the 4th amendment (ninth and tenth causes of action),

due process violations of the 14th amendment (eleventh and twelfth causes of action), due

process violations of the 6th amendment (thirteenth cause of action), due process violations of

the 14th amendment (fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth causes of

action), violation of equal protection (nineteenth cause of action), violations of §1985 for

conspiracy (twentieth cause of action), and violations of §1983 for failure to supervise,

investigate, train, and discipline (twenty-first cause of action). All individually named

Defendants are sued in their individual and official capacities. (DE 87 ¶ 28.)

Defendants, County of Suffolk, Detective Ronald Tavares, Detective Michael Milau,

Helen Wong, Odette R. Hall, M.D., Detective John Peterson, and Detective James McGuiness

answered the Complaint on October 29, 2021. (DE 89.) On November 10, 2021, Defendants

Newcombe, Levy, and, Sini, and Defendant Spota, filed letter motions seeking a pre-motion

conference in anticipation of a motion to dismiss (DE 91; DE 92.) The Court waived the pre-

motion conference requirement and granted Defendants and Defendant Spota leave to move to

dismiss. (Electronic Orders dated Nov. 19, 2021.) Defendants and Spota filed their motions on

December 30, 2021 (DE 96; DE 97.); Plaintiff filed opposition on February 4, 2022 (DE 101; DE 103[5]) and Defendants and Spota filed reply papers on March 4, 2022. (DE 109; DE 110). On April 7, 2022, the Honorable Joanna Seybert referred the motions to the undersigned for a report and recommendation. (Electronic Order dated Apr. 7, 2022.)

Defendants Newcombe, Levy, and Sini, assert that all claims against them should be dismissed because they are entitled to absolute prosecutorial immunity and sovereign immunity, and that Plaintiff's claims for equitable relief against Defendants should be dismissed. (DE 96-2.) Defendant Spota argues that Plaintiff's claims against him should be dismissed for failure to plead that he was personally involved in any alleged constitutional deprivation, and further argues that all claims against him should be dismissed based upon sovereign immunity, prosecutorial immunity, and qualified immunity. (DE 97-2.) Spota similarly argues that Plaintiff's equitable relief claims should be dismissed. (*Id.*)

## IV.    LEGAL STANDARD UNDER RULE 12(b)(6)

When considering a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Court uses a two-pronged approach to analyze the sufficiency of the pleadings in which District courts are to first "identify[ ] allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 664. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

---

[5] Plaintiff initially filed opposition on February 4, 2022 (DE 101) and re-filed an identical opposition with an Amended Caption on February 7, 2022 (DE 103.)

Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)). "[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal* at 678 (citing *Twombly* at 555). "[L]egal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Garcia v. Paylock*, No. 13-CV-2868 (KAM), 2014 WL 298593, at *4 (E.D.N.Y. Jan. 28, 2014) (latter alteration in original) (citation omitted).[6]

## V.  DISCUSSION

The Court considers Defendants' arguments in the order set forth below:

- Whether Defendants Newcombe and Levi, Sini are entitled to absolute prosecutorial immunity (*see* § V.A.i. *infra*);

- Whether Defendants Sini and Spota are entitled to absolute prosecutorial immunity (*see* § V.A.ii. *infra*);

- Whether Defendants Newcombe, Levy, Sini, and Spota are entitled to sovereign immunity (*see* § V.B. *infra*);

- Whether Defendant Spota is entitled to qualified immunity (*see* § V.C.i. *infra*);

- Whether Newcombe's statement to media is covered under qualified immunity (*see* § V.C.ii. *infra*); and

---

[6] Plaintiff's argument that the Court must apply a "beyond doubt" standard to Defendants' motions seeking entitlement to immunity (citing *Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.*, 835 F.2d 980 (2d Cir. 1987), is misplaced as the more recently cited authority herein clearly demonstrates the relevant applicable standard today.

- Whether Plaintiff's demand for equitable relief should be dismissed. (*see* § V.D. *infra*).

**A. Absolute Prosecutorial Immunity**

"It is well established that prosecutors are entitled to prosecutorial immunity for performing prosecutorial activities that are intimately associated with the judicial phase of the criminal process, including the decision whether to commence a prosecution." *Bussey v. Devane*, No. 13-CV-3660(JS)(WDW), 2013 WL 4459059, at *3 (E.D.N.Y. Aug. 16, 2013) (internal quotation marks omitted) (citing *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 530 (2d Cir. 1993) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Prosecutorial immunity from § 1983 claims is broad and covers essentially all acts "regardless of motivation, associated with [the prosecutor's] function as an advocate." *Id.* (citing *Hill v. City of N.Y.*, 45 F.3d 653, 661 (2d Cir. 1995). Indeed, "absolute prosecutorial immunity creates a formidable obstacle for a plaintiff." *Quartararo v. Catterson*, 917 F. Supp. 919, 951 (E.D.N.Y. 1996). However, not all claims brought against individual prosecutors as defendants are unsustainable and the Court must look at the nature of the prosecutor's function rather than the identity or status of who performed the function. *Id.* at 952 (citing *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995)). Administrative or investigative activities initiating and pursuing a criminal prosecution entitle a prosecutor to absolute immunity under the doctrine, while administrative duties and investigatory functions that do not relate to preparation for the initiation of a prosecution or judicial proceedings are not so protected. *See Id.* at 952 (citations omitted). "A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority or performed in the clear absence of all jurisdiction." *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal quotation marks and citations omitted). The party claiming absolute immunity has the burden of establishing its applicability and "once a court

11

determines that absolute immunity applies, 'the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused.'" *Kroemer v. Tantillo*, 758 F. App'x 84, 87 (2d Cir. 2018) (quoting *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004). Whether absolute prosecutorial immunity applies to each of the claims against the moving Defendants is analyzed below.

### i.    *Defendants Newcome and Levy*

Defendants Newcombe and Levy argue that all of the claims against them relate to a determination to charge Plaintiff, the means or matter in which evidence was presented to the grand jury, or Defendants' conduct after the indictment was handed up. (DE 96-2 at 8.) In other words, Defendants assert that all conduct on the part of Defendants Newcombe and Levy were entirely associated with the judicial phase of the criminal process, and that just because Plaintiff specifically uses the word "investigative" in his Complaint, does not make such acts investigatory or administrative. (*Id.* at 11.) Plaintiff argues that withholding *Brady* material is not covered by absolute prosecutorial immunity, Tavares' false "note" system used as an "end around" was during the investigation stage, and that fabricating evidence cannot be deemed advocacy in preparation for trial. (DE 103 at 38, 39, 41.)

With the exception of the false arrest claims (the first two causes of action which are not applicable to moving Defendants Newcombe and Levy), the failure to intervene claims (the eighth cause of action, which is more properly directed to the officer Defendants), and the failure to supervise, investigate, train and discipline (the twenty-first cause of action against Defendants Spota and Sini), the remaining causes of action sound in conduct on the part of Defendants Newcombe and Levy for malicious prosecution, denial of a fair trial, fabricating

evidence, presentation of false evidence to the grand jury and an Appellate Court, withholding *Brady* material, and conspiring to do the same.  (*See* DE 87.)

### a.  *Malicious Prosecution; Conspiracy (Third, Fourth, Fifth, and Twentieth Count)*

Here, Plaintiff's claims against Defendants Newcombe and Levy involving malicious prosecution, withholding *Brady* material, and conspiring are covered under absolute prosecutorial immunity and thus, should be dismissed.  *See Tretola v. D'Amico*, No. 13-CV-5705 (JS)(AKT), 2014 WL 2957523, at *4 (E.D.N.Y. July 1, 2014) (holding that County Defendants were entitled to absolute immunity regarding malicious prosecution claim, including grand jury proceedings, because "the decision whether to commence or continue a prosecution is made solely within the prosecutorial function. . . . ") (citing *Shmueli v. City of N.Y.*, 424 F.3d 231, 237-38 (2d Cir. 2005) (dismissing claims that ADA prosecuted plaintiff and continued with prosecution for crimes which they knew she was innocent of committing because "[a] prosecutor is also entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information.") (internal quotation marks omitted) (citing *Imbler*, 424 U.S. 409, 431 n.34)).  Moreover, allegations that malicious prosecution was commenced or continued pursuant to a conspiracy do not escape the privilege.  *Shmueli*, 424 F.3d. at 238-39; *see also Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012) (holding that because absolute immunity was triggered, the plaintiff's allegations that an interview was done to further a conspiracy to create statements that would falsely implicate a crime and falsely state comments made by the plaintiff, were irrelevant) (citing *Hill*, 45 F.3d at 662).

Further, Plaintiff's claims regarding Newcombe's purported advice to the Defendant police officers regarding charging Plaintiff with manslaughter also falls under absolute

prosecutorial immunity.  Plaintiff alleges that when Plaintiff went to the Third Precinct, he was handcuffed for safety purposes and arrested within minutes of giving a statement.  (DE 87 ¶¶ 107, 134).  Plaintiff further alleges that he was interrogated, at which time detectives called Newcombe, under Spota's direction, for advice – prior to any charges being logged against Plaintiff.  (*Id.* ¶ 134.)  Newcombe allegedly directed Suffolk Police to charge Plaintiff with manslaughter.  (*Id.*)  Although Plaintiff harps on the fact that Newcombe was called prior to "logging" a charge against Plaintiff, Plaintiff ignores that the Complaint states that he had already been under arrest when Newcombe was called.  Thus, the decision to charge Plaintiff with manslaughter under these circumstances falls under prosecutorial immunity.  *See Giraldo*, 694 F.3d 161, 167  (finding that once plaintiff's arrest took place, the prosecutor's legal decisions such as "pursuit of the charges, arraignment, bail, etc." were "legal decisions at the core of the prosecutorial function"); *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 531 (2d Cir. 1993) (finding that "a prosecutor's communication to police officers of his decision as to precisely what charges he would, and what charges he would not, lodge against a given individual is so closely related to the prosecutorial decision itself as to warrant absolute immunity."); *Contra Lehman v. Kornblau*, 134 F. Supp. 2d 281, 294 (E.D.N.Y. 2001) (finding that absolute immunity did not cover prosecutors for a planned sting operation, suborning perjury that led to the arrest warrant and the indictment, and false statements to the press, but presentation of evidence to the grand jury was covered); *Kellner v. City of N.Y.*, 17-CV-1268 (MKB), 2021 WL 4251343, at *8 (E.D.N.Y. Sep. 17, 2021) (finding that district attorney was not entitled to absolute immunity for actions that were part of evidence-gathering before the plaintiff's arrest, including decision to exclude a detective from the investigation into plaintiff, and counseling on what evidence to obtain against plaintiff).

Plaintiff argues that the *Ying* Court failed to acknowledge how the Court in *Burns v. Reed*, 500 U.S. 478 (1991) distinguished decisions made during an interrogation versus charging decisions made during and after a probable cause hearing. (DE 103 at 28.) As much as Plaintiff tries to draw parallels with *Burns* and his own case, arguing that the court in *Ying* was wrong, the facts alleged in the Complaint as discussed above are not the same – Plaintiff's Complaint concedes that he was arrested within minutes of arriving at the Third Precinct, *prior* to Newcombe being contacted (DE 87 ¶ 107). The Court is mindful that there is no bright line rule for when a prosecutor's acts, in preparing for a prosecution (which are immune), definitively commences. But here, based on the allegations, Newcombe's action of recommending a charge of manslaughter after the Defendant officer interviewed and arrested Plaintiff, was not an investigative act undertaken to gather and piece together evidence for indication of criminal activity. *See Giraldo*, 694 F.3d at 166-67 (contrasting "investigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution . . . [which] are shielded by absolute immunity when done by prosecutors."); *see also Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ("The Court has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line, leaving 'searching for the clues and corroboration' that might *lead* to a recommendation for an arrest on the qualified immunity side.") (emphasis added) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

### b. Denial of Fair Trial for Fabricating and Withholding Evidence (Sixth and Seventh Count)

Here, Plaintiff's claims against Defendants Newcombe and Levy pertaining to denial of a fair trial, fabricating evidence, presentation of false evidence to a grand jury and Appellate Court also warrant dismissal based on absolute prosecutorial immunity. *See Peay v. Ajello*, 470 F.3d 65, 67 (2d Cir. 2006) (affirming dismissal of § 1983 claims against Assistant State Attorney for fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate plaintiff into accepting a guilty plea because of absolute prosecutorial immunity); *Kroemer*, 758 F. App'x. 84, 87 (finding that allegations that ADA fraudulently amended indictment and then fabricated evidence to support that amendment by coaching a witness "falls squarely within the prosecutor's role as advocate and therefore remains protected by absolute immunity."); *D'Alessandro v. City of N.Y.*, 13-CV-930 (SLT), 2016 WL 6962516, at *5 (E.D.N.Y. Nov. 28, 2016) ("[I]t is clear that a prosecutor's delay in turning over discovery materials is protected by prosecutorial immunity.") (collecting cases).

### c. Fourth, Sixth, and Fourteenth Amendment Claims (Counts Nine through Nineteen)

Additionally, absolute prosecutorial immunity from § 1983 suits where prosecutors are found to have been exercising prosecutorial functions also applies to causes of action brought directly under the Sixth and Fourteenth Amendments (counts eleven through nineteen). *See Teichmann v. New York*, 769 F.3d 821, 826 (2d Cir. 2014) ("We see no reason why these fundamental principles [absolute immunity from § 1983 suits for prosecutors exercising prosecutorial functions] which preclude certain claims brought under § 1983, would not also apply to a cause of action brought directly under the Sixth and Fourteenth Amendments.") Plaintiff's Fourth Amendment claims (ninth and tenth counts) are also barred under absolute

prosecutorial immunity. *See Barber v. Winn*, No. 95-CV-1030 (FJS), 1997 WL 151999, at *5 (N.D.N.Y. Mar. 31, 1997) (holding that Fourth Amendment claims regarding "seizure" based on decision to prosecute the plaintiff were barred by absolute immunity).

### d. Newcombe's Press Statements

Defendant Newcombe argues that there is essentially no claim to address regarding her alleged false statements to the press because the Complaint does not state anything about causing harm to plaintiff, and there is no claim sounding in defamation.[7] (DE 109 at 10.) Plaintiff argues that Defendant Newcombe is not shielded by immunity for giving false statements to the press. (DE 103 at 29.)

"The conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Buckley*, 509 U.S. 259, 278. And so, like "executive officials who deal with the press," *id.*, statements to the media are entitled to only qualified immunity rather than absolute immunity. *Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 733 (S.D.N.Y 2012) (citing *Flagler v. Trainor*, 663 F.3d 543, 549 (2d Cir. 2011).

Here, the Complaint, which is assumed true for purposes of a motion to dismiss, alleges that Newcombe knowingly made false statements to the press, specifically Newsday, misstating the contents of the surveillance video.[8] (DE 87 ¶¶ 66, 147.) "[T]he Second Circuit made clear

---

[7] It appears that Defendants are conflating Plaintiff's allegations regarding false statements to the media with a defamation claim, which would have needed to be pled separately under a state law claim for defamation (and was not pled) or a stigma-plus claim pursuant to § 1983 (which also was not pled), but on the face of the Complaint, it is appears that these allegations at ¶¶ 66 and 147 pertain to the "custom of the destruction of evidence favorable to the defense" and "hid[ing] and delay of exculpatory evidence." (DE 87 ¶ 66.)

[8] The Court notes that Plaintiff's opposition mischaracterizes the details that are pled in the Complaint, and adds alleged facts that are not pled, *i.e.*, that Newcombe falsely states that

that only qualified good faith immunity is available where a prosecutor distributes extraneous statements to the press designed to gain unfair advantage at trial." *Javanovic v. City of N.Y.*, No. 04 Civ. 8437(PAC), 2006 WL 2411541, at *16 (S.D.N.Y. Aug. 17, 2006) (internal quotation marks and citation omitted). Thus, Newcome's statements to the press are not entitled to absolute immunity, and are instead, analyzed below, regarding qualified immunity. *See Quartararo*, 917 F. Supp. 919, 958 (holding that "prosecutors are only entitled to qualified immunity with respect to their statements to the media concerning a criminal prosecution.") (citation omitted); *see also Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987) ("Absolute immunity is not available . . . when a prosecutor undertakes conduct that is beyond the scope of his litigation-related duties . . . [including] when the prosecutor releases information or evidence to the media") (citing *Power v. Coe*, 728 F.2d 97, 103 (2d Cir. 1984) (holding "that only qualified good faith immunity is available where a prosecutor distributes extraneous statements to the press designed to gain unfair advantage at trial.") (citation omitted)).

Accordingly, the undersigned respectfully recommends that the claims against Defendants Newcombe and Levy (causes of action three through twenty-one) be dismissed based on absolute prosecutorial immunity grounds, with the exception of Newcombe's statement to the press, which is analyzed below under §V.C.ii. regarding qualified immunity.

---

Plaintiff fatally beat E.R., turned himself in, and was seen picking up a woman and fleeing. (DE 103 at 29.) However, those additional facts are not considered as part of the Court's analysis herein. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) (noting that it is improper for Courts to consider "factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss") (internal quotation marks and citation omitted).

### ii. *Defendants Sini and Spota*

While alleging that all individually named Defendants are sued in their individual and official capacities (DE 87 ¶ 28), Plaintiff specifically brings one cause of action against Defendants Sini and Spota in their individual capacities for failure to supervise, investigate, train and discipline Defendant Newcombe and Defendant Levy (twenty-first cause of action). Plaintiff argues that the history of corruption laid out in the Complaint (*i.e.*, the various cases specifically pleaded wherein convictions were overturned or dismissed due to prosecutorial misconduct), adequately sets forth the customs in place while Spota was in office that led to the same deprivation of Plaintiff's rights. (DE 103 at 14.) Plaintiff further argues that the fact that Spota may have never worked on Plaintiff's criminal case himself does not necessarily equate to a lack of personal involvement. (*Id.* at 15.) Plaintiff argues, therefore, that Spota's and Sini's (once he took over Spota's position) personal involvement is adequately pled through custom, failing to supervise, train, intervene or discipline, prior mishandlings, and deliberate indifference. (*Id.* at 16.) To that end, Plaintiff asserts that the Complaint specifically alleges that Spota and Sini participated personally in the alleged constitutional violations and/or failed to remedy the actions of their employees after being made aware of the within misconduct and mishandlings, and/or created a custom of deprivations of constitutional rights, or allowed such a custom to continue. (DE 87 ¶¶ 27, 321.) Defendant Sini argues that he is entitled to absolute immunity on these claims because when the actions of an ADA are subject to absolute immunity, a supervising DA is also covered by that immunity. (DE 96-2 at 16-17.) Defendant Spota makes the same argument, additionally noting that he was only in office simultaneously with Newcombe, and not Levy. (DE 97-2 at 20-23.)

> To the extent the supervision or policies concern the prosecutorial decisions for
> which the ADAs have absolute immunity, then those derivative allegations against
> supervisors must also be dismissed . . . [as] supervising district attorneys have
> absolute immunity for the prosecution-related decisions of their subordinates and
> because Section 1983 supervisory liability depends upon the existence of an
> underlying constitutional violation.

*Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 205 (S.D.N.Y. 2004) (internal quotation marks

omitted).  Thus, to the extent that Defendants Newcombe and Levy are granted absolute

immunity, Defendants Spota and Sini are also entitled to absolute immunity as to those claims.

*See Kanciper v. Lato*, 13- CV-00871 (ADS)(WDW), 2014 WL 12847274, at *3 (E.D.N.Y. Mar.

31, 2014) (finding that DA may invoke absolute immunity to the same extent as the Court finds

the ADA to be covered under absolute immunity).  The inquiry does not end here though for

Defendants Spota and Sini.

Under § 1983, liability may only be imposed upon those who caused a deprivation of

rights, meaning personal involvement of each defendant in the alleged constitutional violation is

a necessary element.  *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 288 (E.D.N.Y. 2001) (citations

omitted).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009); *see also Adames v. Cnty. of Suffolk

Court*, 18-CV-4069(JS)(SIL), 2019 WL 2107261, at * 4 (E.D.N.Y. May 14, 2019) (holding that

"a plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity

must sufficiently plead that the supervisor was personally involved in the alleged constitutional

deprivation.") (internal quotation marks and citation omitted).

> Supervisor liability under § 1983 can be shown in one or more of the following
> ways: (1) actual direct participation in the constitutional violation, (2) failure to
> remedy a wrong after being informed through a report or appeal, (3) creation of a
> policy or custom that sanctioned conduct amounting to a constitutional violation,
> or allowing such a policy or custom to continue, (4) grossly negligent supervision

of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (internal quotation marks and citation omitted.); *Quartararo*, 917 F. Supp. 919, 932 (same); *see also Stancati v. Cnty. of Nassau*, No. 14-CV-2694(JS)(ARL), 2015 WL 1529859, at *3 (E.D.N.Y. Mar. 31, 2015) (finding that a supervisory official, not personally involved in the alleged constitutional violation, may still be held liable if he created a policy or custom under which the unconstitutional practice occurred or allowed such a policy or custom to continue); *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 94 (E.D.N.Y. 2013) (holding that a supervisory official can be held liable for an award of damages under § 1983 "if he participated directly in the alleged constitutional violation or created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom.") (internal quotation marks and citation omitted).

Here, Plaintiff alleges that Spota and Sini "knew or should have known of the misdeeds of their employees which deprived . . . plaintiff, of his Constitutional Rights" (DE 87 ¶ 319). Absolute prosecutorial immunity though, still shields Spota and Sini relating to claims that their prosecution was constitutionally infirm. *See Anilao v. Spota*, 27 F.4th 855, 868 (2d Cir. 2022) (holding that arguments that DA "knew or should have known at the outset of the case that their prosecution of the plaintiffs was constitutionally infirm" fundamentally relates to the existence or lack thereof of probable cause as opposed to statutory authority to pursue prosecution in the first place which is protected under absolute immunity even in the absence of probable cause, and even if conduct was entirely politically motivated).

Additionally, Defendants are correct that the claims of failure to train or supervise against a DA are protected by absolute immunity. *See D'Alessandro*, 2016 WL 6962516, at *5 (holding that failure to train, deliberate indifference claims, including encouraging overzealous

prosecutions, against District Attorney were prosecutorial in nature and thus, covered under prosecutorial immunity). Indeed, as Defendants argue, the Court in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) specifically extended prosecutorial immunity to certain administrative tasks, including supervision and training. *Id.* at 344.

However, Plaintiff has adequately pled personal involvement of Defendants Spota and Sini by setting forth detailed allegations of policies/customs that Spota created and/or let continue, and that Defendant Sini let continue upon succeeding Spota. For example, Plaintiff specifically set forth various criminal cases wherein convictions were overturned (DE 87 ¶¶ 49-53, 56). Plaintiff further alleges that similar misdeeds were allowed to continue and did continue during Plaintiff's criminal case, including Defendant Tavares' "end around" note system and hiding internal affairs records.[9] (*Id.* ¶ 57.) *See Kanciper*, 2014 WL 12847274, at *3, 4 (finding that Plaintiff stated § 1983 supervisory claim because Plaintiff alleged that DA "Spota knew of, acquiesced, and failed to remedy [ADA's] alleged constitutional misconduct"); *Contra Stancati*, 2015 WL 1529859, at *3 (finding that plaintiff failed to state a claim for supervisory liability because complaint did not allege any facts, other than plaintiff's isolated constitutional violation, that created an inference that Sheriff's Department maintained a policy similar to the alleged wrongdoing claims in the complaint). Moreover, Defendants' argument that Plaintiff is conflating the allegations of Defendant Spota's and Defendant Sini's personal involvement with *Monell* claims in unavailing. (DE 109 at 10; DE 110 at 4-8.) This Court has

---

[9] Defendant Spota's argument that Spota had no personal involvement because he did not supervise Tavares as Tavares did not work for the District Attorney is misplaced because such an argument only focuses on the fourth scenario in establishing supervisory liability – that is, grossly negligent supervision of subordinates who committed a violation. *See Richardson*, 347 F.3d at 435.

held that "[s]upervisory liability and *Monell* liability are independent concepts." *Tretola v. D'Amico*, No. 13-CV-5705 (JS)(AKT), 2014 WL 2957523, at *10 (E.D.N.Y. July 1, 2014).

Accordingly, the undersigned respectfully recommends that Defendants' motions to dismiss Plaintiff's claims against Defendant Spota and Defendant Sini based on absolute prosecutorial immunity be granted except for the supervisory claims pursuant to § 1983.

## B. Sovereign immunity – Defendants Newcombe, Levy, Sini, and Spota

Defendants Newcombe, Levy, Sini, and Spota all argue that to the extent they are being sued in the official capacity as ADA's and as the DA's of Suffolk County, such claims must fail pursuant to the doctrine of state sovereign immunity. (DE 96-2 at 12; DE 97-2 at 18.) Plaintiff argues that a District Attorney is not immune from suit under sovereign immunity because such a position is categorized as a local position, rather than as a State officer. (DE 103 at 49.)

When a state official is sued for damages in their official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993) (citation omitted). There are few exceptions to the Eleventh Amendment's bar of federal courts from considering suits that are brought by a private party against a state in its own name, and such immunity "does not depend on the nature of the function performed by the state." *Id.* Whether the relief sought is legal or equitable, pursuant to the Eleventh Amendment, an unconsenting State is immune from federal suit by its own citizens and the citizens of other states. *Quartararo*, 917 F. Supp. 919, 930-31 (citations omitted).

Here, Plaintiff alleges that "[a]ll individually named Parties are sued in their individual and official capacities and the county is a named entity . . ." (DE 87 ¶ 28). These allegations brought against Defendants and Defendant Spota in their official capacities are barred under

sovereign immunity. *See Klein v. Zugabie*, No. 20-1975-cv, 2021 WL 5313708, at *2 (2d Cir. Nov. 16, 2021) (summary order amended Dec. 13, 2021) (affirming dismissal of § 1983 claims against District Attorney on Eleventh Amendment sovereign immunity grounds because DA was sued in his official capacity, and "in New York, district attorneys prosecuting a criminal matter act in a quasi-judicial capacity and represent the State, not the county.") (citing *Ying Jing Gan*, 996 F.2d at 536)).

Accordingly, the undersigned respectfully recommends that claims brought against Defendants Sini, Newcombe, Levy, and Spota in their official capacity be dismissed.

## C. Qualified Immunity – Defendant Spota; Defendant Newcombe's Press Statement

### i.     *Spota*

Defendant Spota argues that to the extent he is not entitled to absolute immunity, he is entitled to qualified immunity. (DE 97-2 at 24.) Specifically, Defendant Spota asserts that because the grand jury indicted Plaintiff, probable cause was established for Plaintiff's arrest, and therefore, it was not objectively unreasonable for Spota to continue Plaintiff's prosecution. (*Id.* at 25.) Plaintiff does not directly address Defendant Spota's arguments regarding qualified immunity.

Government officials are protected from civil damages liability under qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kellner*, 2021 WL 4251343, at *15 (internal quotation marks and citations omitted). When considering a qualified immunity defense, the court considers (1) whether the official violated a statutory or constitutional right, and (2) whether the right was clearly established at the time of the challenged conduct. *Id.* (citations omitted). "The Second Circuit has held, however, that whether a government official's actions

were objectively reasonable turns on factual questions that cannot be resolved at this [motion to dismiss] stage of the proceedings." *Taylor v. Wilde*, No. 11-CV-3608(JS)(ETB), 2012 WL 2860999, at *4 (E.D.N.Y. July 10, 2012) (internal quotation marks omitted) (collecting cases). However, qualified immunity may be found on a Rule 12(b)(6) motion if the complaint establishes the circumstances that are required for a qualified immunity defense. *Hirsch v. Desmond*, No. 08-CV-2660 (JS)(AKT), 2010 WL 3937303, at *5 (E.D.N.Y. Sep. 30, 2010). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation[,]" because the defense is lost if a case erroneously proceeds to trial. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citations omitted).

Probable cause is a complete defense to a claim for malicious prosecution. *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003). "Probable cause is . . . presumed when a grand jury has handed down an indictment." *Lehman v. Kornblau*, 134 F. Supp. 2d 281, 290 (E.D.N.Y. 2001) (citing *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). In such cases, "the plaintiff overcomes the presumption by a showing that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation marks and citations omitted). Exculpatory evidence that authorities become aware of between the time of arrest and the resulting prosecution undermines the probable cause that supported the arrest, and defeats a claim for malicious prosecution. *McDermott v. City of N.Y.*, 94CV2145, 1995 WL 347041, at *5 (E.D.N.Y. May 30, 1995).

Defendant Spota specifically argues that there is no evidence that the indictment of Plaintiff was procured by fraud, perjury, the suppression of evidence or other conduct undertaken in bad faith, and so therefore, the indictment establishes probable cause and the prosecution was not objectively unreasonable. (DE 97-2 at 25.) However, Defendant Spota's

argument misses a beat by failing to acknowledge what stage this matter is at, and the stringent standard for establishing entitlement to qualified immunity. *See Vallen v. Pierre*, No. 13-CV-6541 (JS)(ARL), 2015 WL 1299243, at *9 (E.D.N.Y. Mar. 23, 2015) (denying motion to dismiss claims for money damages against defendants in their individual capacities on qualified immunity grounds because there was no explanation on the Rule 12(b)(6) record for defendants' actions in order for the Court to conclude such actions were reasonable). Notably, in *Vallen*, the Court specifically acknowledged that the Second Circuit has emphasized that when defendants assert an immunity defense on a Rule 12(b)(6) motion rather than on summary judgment, they "must accept the more stringent standard applicable to this procedural route . . . [including] the facts supporting the defense must appear on the face of the complaint . . . ." *Id.* (internal quotation marks and citations omitted). Indeed, "qualified immunity does not apply when alleged fabrication of evidence is key to the case, as it is here." *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 372 (E.D.N.Y. 2021) (internal quotation marks and citation omitted).

*Jackson* is strikingly similar to this case. There, the plaintiff alleged certain individual county defendants became aware of key statements that were omitted from a report, and which the County Defendants attempted to base their entire probable case determination on, as well as information from two other witnesses that contradicted the story later developed by investigators and prosecutors. *Id.* The plaintiff also alleged that the defendants caused a witness to change his story and implicate the plaintiff despite being confronted with information from that witness that corroborated a different account. *Id.* at 372-73. The court found that the allegations undermined the County Defendants' probable cause determination, and thus, they did not clear the "formidable hurdle" at this stage for the court to conclude qualified immunity was warranted. *Id.* at 372.

Thus, Defendant Spota has not established entitlement to qualified immunity as to the malicious prosecution claim at this time. Further, neither Spota nor Plaintiff address whether qualified immunity applies to any claims other than the malicious prosecution claims. Again, at this pleading stage the Court cannot properly decide, based on the face of the complaint and before the completion of discovery, whether qualified immunity is applicable to Spota otherwise. *See Lehman*, 134 F. Supp. 2d 281, 295 (denying motion to dismiss based on qualified immunity, with leave to renew after discovery because plaintiff nor defendants provided court with "sufficient detail regarding the defendants' alleged conduct in order for court to properly decide whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed.") (internal quotation marks and citation omitted) (*also citing Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (holding that affirmative defense such as qualified immunity may be decided on a 12(b)(6) motion to dismiss the complaint if the defense appears on the face of the complaint)).

Accordingly, the undersigned respectfully recommends that Defendant Spota's motion to dismiss the claims against him based on qualified immunity, be denied with leave to renew.

**ii.    Newcombe's Statement to the Media**

As discussed above, Newcombe's statement to the media is not covered under absolute immunity as the court in "*Buckley* made clear that a prosecutor's statements to the press are not shielded by absolute immunity." *Smith v. Garretto*, 147 F.3d 91, 95 (2d Cir. 1998) (citing *Buckley*, 509 U.S. 259, 276-78). Also as noted above, Defendant did not specifically address Plaintiff's claims regarding Newcombe's alleged false statements to the media, but Plaintiff argued in opposition that Newcombe is not entitled to prosecutorial immunity for such statements. (DE 103 at 29-30.) Defendants only argue in reply that there is no claim to address

because none of Plaintiff's claims sound in defamation. (DE 109 at 10.) Accordingly, at this juncture to hold that qualified immunity applies to Newcombe's statements to the media would be improper, as the defense does not appear on the face of the complaint – *i.e.*, there is a lack of information for the Court to analyze whether Newcombe's actions were objectively reasonable. *See Lehman*, *supra*; *Pani*, *supra*. Accordingly, the undersigned respectfully recommends that Defendant Newcombe's motion to dismiss pertaining to her alleged false statements to the media be denied, with leave to renew.

### D. Equitable Relief

Plaintiff seeks equitable and specific performance requiring (1) the termination of all named defendants from their employment with Suffolk County, the Suffolk County Police and the Suffolk County District Attorney's Office in the interest of Public Protection; (2) notification of all defendants charged and/or tried by the named defendants, notifying them specifically of the internal affairs history and customs of malfeasance discussed in Plaintiff's Complaint, and notifying them that such history/customs may give rise to claims for post-conviction relief; and (3) an independent agency of licensed, impartial, and experienced attorneys to review and investigate all files prosecuted during the Spota era to date, specifically including all files in which the named detective and prosecutors participated. (DE 87 ¶¶ 324-326.)

Defendants Sini, Newcombe, and Levy argue that Plaintiff's claims for equitable relief should be dismissed since the claims against them for damages must be dismissed. (DE 96-2 at 14.) Defendants further argue the equitable relief demand must be dismissed because Plaintiff is really seeking a remedy for past wrongs rather than prospective relief, and because the relief sought requests the Court to issue an order directing action by entities other than the named

Defendants. (*Id.* at 14-15.) Defendant Spota argues that Plaintiff's request for equitable relief fails because Spota left the employ of the County in November of 2017, and because a request of review of prior cases and investigations is directed toward the municipal Defendant rather than individually named Defendants. (DE 97-2 at 25-26.) Plaintiff, essentially conceding that such demands for equitable relief and specific performance are improper, argues that even when specific relief requested in a party's demand for relief is "ungrantable" or "inappropriate," a court may *sua sponte* grant a declaration of findings of statuses and rights.[10] (DE 103 at 46.) Plaintiff further argues that this is a case of first impression and that based upon the Equal Protection clause of the Fourteenth Amendment, the prosecutors should not be protected under prosecutorial immunity and thus, based on qualified immunity, the demand for injunctive relief should not be dismissed. (*Id.* at 46-48.)

Declaratory relief under §1983 is not barred by an individual defendant's "various immunities." *Morales v. City of N.Y.*, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (citing cases holding that prosecutorial immunity does not extend to injunctive suits, the Eleventh Amendment does not bar suits against state officials in their official capacities for prospective relief, and qualified immunity does not shield defendants from actions for declaratory or injunctive relief). Here though, Defendants rightly point out that the equitable relief sought is inapplicable to Spota who is no longer employed with Suffolk County. As for Newcombe, Levy, and Sini, the relief sought in ¶ 324 and ¶ 326 is not properly directed toward them either – the claims ask the named Defendants to terminate themselves as employees, and to conduct investigations into themselves as employees. The claims in ¶ 325, demanding that prior

---

[10] Plaintiff cites "R. Civ. Pro. 57, as set forth in the Advisory Committee Notes thereto, 1937," without providing any further information as to the citation or any other authority.

criminal defendants be provided with County records and notified that they may have post-conviction causes of action, are not appropriately before the Court as this action was not brought as a collective or class action. Additionally, recognizing or declaring past wrongs as opposed to seeking prospective relief does not make out a case or controversy for declaratory relief because there is not an immediate threat of injury. *Morales*, 59 F. Supp. 3d at 581 (citations omitted). If anything, such requests for relief are more appropriately brought by moving for a preliminary injunction.

Accordingly, for the reasons the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's claims for equitable relief be granted.

## VI. <u>CONCLUSION</u>

Based on the foregoing, the undersigned respectfully recommends that: (1) Defendants Newcombe's and Levey's motions to dismiss Plaintiff's claims based on absolute prosecutorial immunity be granted (causes of action three through twenty) except for Newcombe's alleged false statement to the press; (2) Defendants Spota's and Sini's motions to dismiss Plaintiff's claims based on absolute prosecutorial immunity be granted to the extent that the undersigned's recommendations for absolute prosecutorial immunity as to Defendants Newcombe and Levy are adopted, and otherwise granted as to Plaintiff's claims for failure to supervise, investigate, train and discipline (twenty-first cause of action) except as to Plaintiff's supervisory claims, as specified herein; (3) Defendants Newcombe's, Levy's, Sini's, and Spota's motions to dismiss Plaintiff's claims against them in their official capacities be granted based on sovereign immunity[11]; (4) Defendant Spota's motion to dismiss Plaintiff's claims based on qualified

---

[11] The Court notes that Plaintiff pleads that all claims are brought against the named parties in their individual and official capacities, yet only specifically pleads that the sixth cause of action

immunity (which would apply to the remaining supervisory claims, and any additional surviving claims in the instance the undersigned's recommendations regarding absolute immunity are not adopted) be denied with leave to renew; (5) that the portion of Defendant Newcombe's motion to dismiss allegations regarding false statements to the media be further denied on qualified immunity grounds with leave to renew; and (6) Defendants Newcombe's, Levy's, Sini's, and Spota's motions to dismiss Plaintiff's equitable relief claims be granted.

The undersigned notes that under Fed. R. Civ. P. 15(a)(2), leave to amend should be given freely "when justice so requires," including leave to amend *sua sponte* when the court dismisses most of a party's claims on the basis of an inadequate pleading. *Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020). Here, however, Plaintiff has amended his Complaint three times (with the instant complaint being the fourth pleading filed) and has not requested leave to file another Amended Complaint. Accordingly, the undersigned does not find that granting *sua sponte* leave to amend is warranted under these circumstances. *See Rivera v. Brooklyn Hosp. Med. Ctr.*, 28 F. Supp. 3d 159, 163-64 (E.D.N.Y. 2014) (refusing to grant *sua sponte* leave to amend the Complaint because the Court previously pointed out inadequacies in the original complaint and plaintiff filed an amended complaint that was the subject of the motion to dismiss); *Chudnovsky v. Leviton Mfg. Co.*, 158 F. App'x 312, 314 (2d Cir. 2005) (denying leave to amend where plaintiff already had one opportunity to amend his complaint and "granting leave to amend would be unproductive or futile . . . [because plaintiff] did not indicate that he could allege additional facts that would cure the deficiencies in his already-amended complaint); *see also Murdock v. Legal Aid Soc'y*, No. 14-CV-0508(JS)(SIL),

---

is brought against Defendants Sini, Newcombe, Levy, and Spota in their individual and official capacities.

2015 WL 94245, at *4 (holding that leave to amend would be futile because plaintiff's claims failed as a matter of law, and there was no possibility he could state a plausible § 1983 claim against defendants).

## VII.  OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for all of the parties.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision") (citation omitted); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
       August 17, 2022

Respectfully submitted,

/S/ *James M. Wicks*
       JAMES M. WICKS
United States Magistrate Judge