**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SAMUEL WHITE,

*Plaintiff*,

-against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, RONALD TAVARES, MICHAEL MILAU, SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE, DARRYL LEVY, LAURA NEWCOMBE, THOMAS SPOTA, JOHN DOES 1-10, TIMOTHY SINI, OFFICE OF THE MEDICAL EXAMINER CRIME LABORATORY (SUFFOLK COUNTY), HELEN WONG, ODETTE R. HALL, M.D., JOHN PETERSON and JAMES MCGUINESS,

*Defendants*.
-----------------------------------------------------------X

**MEMORANDUM ORDER**
20-CV-1501 (JS)(JMW)

**A P P E A R A N C E S:**

Stephanie McClure, Esq.
**Law Office of Stephanie McClure**
101 Avenue of the Americas, 9th Floor
New York, NY 10013
*Attorney for Plaintiff*

Stacy A. Skorupa, Esq.
**Suffolk County Department of Law**
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, NY 11788
*Attorneys for All Defendants (except Thomas Spota)*

Anthony M. LaPinta, Esq.
Kyle O.Wood, Esq.
**Law Offices of Anthony M. La Pinta**
200 Vanderbilt Motor Parkway
Suite C-17
Hauppauge, NY 11788
631-231-1199
*Attorneys for Defendant Thomas Spota*

**WICKS,** Magistrate Judge:

Plaintiff Samuel White ("Plaintiff") commenced this Section 1983 Civil Rights action on March 21, 2020, seeking monetary damages and non-monetary relief for alleged violations of due process and equal protection, false arrest, malicious prosecution, denial of a fair trial, failure to intervene, denial of right to counsel, fabrication of evidence, presentation of false evidence to the grand jury and an appellate court, conspiracy, and failure to train or supervise. (ECF No. 87.) In her March 31, 2023 Order granting in part and denying in part Defendants' respective dismissal motions (ECF No. 96, 97), District Judge Joanna Seybert returned this case to the undersigned to preside over the discovery phase of this action. (ECF No. 130.)

The latest motions before the Court are twofold: (i) Defendants'[1] Letter Motion to Disqualify Counsel (*see* ECF Nos. 143, 146), which is opposed by Plaintiff (ECF No. 145); and (ii) Plaintiff's Third Motion for Discovery (ECF No. 144), which is opposed by Defendants (ECF No. 147).

For the reasons set forth below, both the Motion to Disqualify (ECF No. 143) and Plaintiff's Third Motion for Discovery (ECF Nos. 144) are denied, the latter motion without prejudice to renew.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case, as articulated in the undersigned's Report and Recommendation (ECF No. 124) and District Judge Seybert's Partial Adoption Order (ECF No. 130). Thus, only the facts relevant to the Motion for Disqualification and Plaintiff's Third Discovery Motion are outlined below.

---

[1] For purposes of this Order, "Defendants" refers to all Defendants except for Thomas Spota.

In May 2016, Plaintiff was arrested for manslaughter and a grand jury indicted him. (ECF No. 87 at ¶¶ 108, 111.) After spending a year in jail, that indictment was dismissed, and Plaintiff was released. (*Id.* at ¶¶ 111, 148, 154.) Defendants appealed and Plaintiff was re-arrested on November 23, 2018. (*Id.* at ¶ 154.) The case went to trial, and on July 12, 2019, Plaintiff was fully acquitted. (*Id.* at ¶ 155.) Plaintiff, represented by his attorney Stephanie McClure, commenced this action on March 21, 2020, (ECF No. 1), subsequently filing three amended complaints, (*see* ECF Nos. 36, 74, 86). The most recent alleges twenty-one different causes of action under both 42 U.S.C. §§ 1983 and 42 U.S.C. § 1985. (*See generally* ECF No. 86.) In eighteen of those claims, Plaintiff alleges:

> By reason of the foregoing, plaintiff suffered physical injuries, mental injuries, financial damages, loss of work, deprivation of liberty and privacy, terror, humiliation, damages to his personal and professional reputations, as well as loss of relationship with his family, including his young daughter. *All of these injuries continue to accrue and may be permanent.*

(*See, e.g.*, ECF No. 87 at ¶ 204 (emphasis added).) In his demand section, Plaintiff requests, *inter alia*:

> For actual and compensatory damages against all defendants jointly and severally in an amount to be determined by a jury or a fact finder, and at least:
>
> > a. $100 million dollars for pain and suffering, loss of liberty, and loss of relationship with his family
> >
> > b. $60 million dollars representing loss of work, contracts, future work, loss of personal and professional reputation[.]

(ECF No. 87 at ¶ 331.)

On July 20, 2023, the undersigned adopted a revised discovery schedule, directing all fact discovery to be completed by December 1, 2023, and set a status conference for November 13, 2023. (ECF No. 140.) At the status conference, the parties represented that they were on track to meet the discovery deadlines and Defendants' deposition of the Plaintiff was scheduled for the

end of that week. (ECF No. 142.) Plaintiff was deposed on November 15, 2023. (ECF No. 143 at 1.) During the deposition, Defendants learned that Ms. McClure, Plaintiff's Counsel (hereafter, "Ms. McClure" or "Plaintiff's counsel"), "has been romantically involved with and dating Plaintiff" since at least the last six months of 2019, totaling four years. (*Id.*) Defendants additionally learned that Ms. McClure and Plaintiff have been living together for most of this time, and Ms. McClure's law firm employs Plaintiff, who has been "working [there] in various capacities, for some time." (*Id.*) Following Plaintiff's deposition, Defendants moved to disqualify Ms. McClure under Rule 3.7(a) of New York's Rules of Professional Conduct, otherwise known as the "advocate-witness Rule," because she "is likely to be a witness on a significant issue of fact." (*Id.* at 2.)

On November 19, 2023, Plaintiff filed his Third Motion for Discovery (ECF No. 144), seeking: (i) certain Internal Affairs files of non-defendant officers, as relating to Plaintiff's claim under *Monell v. Dep't of Soc.Servs. of City of N.Y.*, 436 U.S. 658, 707 (1978) (the "*Monell* Claim"); (ii) Internal Affairs files which pertain to any officer involved in the "thirteen specifically identified case files," identified earlier in discovery litigation – specifically, "litigation documents including electronic copies of any depositions, sworn statements, signed statements, answers to interrogatories or responses to requests for admissions[;]" and (iii) "any/all documents that pertain to the federal criminal case against Mr. Spota." (*Id.*)

The Court notes that this is Plaintiff's *third* request for Internal Affairs files and second request for "any/all documents that pertain to the federal criminal case against Mr. Spota." (*See* ECF Nos. 69, 98). Plaintiff filed his first motion to compel on April 15, 2021 (ECF No. 69), seeking *Monell* discovery, as well as records regarding the investigation of Mr. Spota, a surveillance video of the subject incident, and an underlying criminal file of Plaintiff, which was

granted in part and denied in part. (ECF Nos. 69, 90.) As to the portion concerning the scope of *Monell* discovery, this Court held:

> Plaintiff's motion to compel *Monell*-related discovery is granted in part as follows: Plaintiff shall provide Defendants with a list articulating the specific types of case files that are being sought, tailored to the claims being asserted in this case, on or before November 19, 2021, and Defendants shall respond on or before December 20, 2021. To the extent that Defendants do not have responsive documents, Defendants shall provide an affidavit stating so. This includes the demands for *Monell* discovery pertaining to Defendant Thomas Spota. As to Plaintiff's request for *Monell* discovery pertaining to the Keith Bush file and Martin Tankleff file, that is denied without prejudice, on the basis of Rule 26's prescription of proportionality.

(ECF No. 90.)

Plaintiff filed a second motion to compel discovery on January 25, 2022 (ECF No. 98), requesting Internal Affairs records from 2002 through July 2019 for 11 specific categories: Abuse of Authority, Biased Policing, Bribery/Official Misconduct, Civil Rights Violation-Other, Excessive Force, Fail to Perform Duty, False Arrest, Illegal Search/Seizure, Improper Supervision, Lying/False Statement, and Misconduct. (*See* ECF Nos. 105, 108, and 98.)

Defendants subsequently agreed to: (i) provide files for each of the named Defendants that relate to the nature of the claims, regardless of outcome and substantiated findings; and (ii) provide Internal Affairs files for nondefendant officers that relate to the nature of the claim dating back to 2008 (*more than 10 years prior* to the filing of the Complaint) – however, Defendants "disputed whether Plaintiff is entitled to *Monell* discovery dating back to 2002 related to non-defendant officers, and whether the Internal Affairs files for non-defendant officers shall include all files whether substantiated or not." (*See* ECF Nos. 107, 111.)

This Court granted Plaintiff's second motion to compel *Monell* discovery in part,[2] ordering Defendants to produce:

<u>Named Defendants</u>: the requested files that relate to the nature of the claim (i.e., the 11

[2] The Court denied Plaintiff's request for records dating back to 2002. (ECF No. 111.)

specific categories Plaintiff identified), regardless of outcome and substantiated findings for any allegation, for the entire career of each named Defendant (*Defendants have already agreed to provide such* (*See ECF No. 107*)).

Non-Defendant Officers: Internal Affairs files that relate to the nature of the claim (i.e., the 11 specific categories Plaintiff identified), dating back to 2008 (*Defendants have already agreed to provide such (See ECF No. 107)*). Records dating back to 2014 shall include all records regardless of outcome and substantiated findings for any allegation.

(ECF No. 111.)

In the instant motion,[3] Plaintiff argues Defendant did not produce five out of the eleven "categories" of Internal Affairs files – specifically documents relating to 1) Biased Policing; 2) Bribery and Official Misconduct; 3) Civil Rights; 4) Illegal Search and Seizure; and 5) Lying / False Statement – and, Defendants' production only included Internal Affairs files from 2014-2016, in violation of this Court's order directing Defendants to provide all Internal Affairs files dating back to 2008. (*See* ECF Nos. 144, 111.)

Plaintiff additionally argues Defendants' production "should have included those Internal Affairs files which pertain to any officer involved in the 'thirteen specifically identified case files' identified earlier in discovery litigation."[4] With respect to these thirteen cases, Plaintiff claims that Defendants' production is incomplete,[5] and requests "litigation documents, including

---

[3] As a preliminary matter, the Court notes that Plaintiff's counsel claims to have met and conferred with defense counsel prior to filing the latest motion to compel (*see* ECF No. 144 at 1 ("After attempts to meet and confer, the County Defendants have not come into compliance with Your Honor's prior Discovery Orders."), but Defendants' counsel disagrees (*see* ECF No. 147).

[4] Plaintiff's counsel notes that she has already received "some documents relating to the Thomas Moroughan Internal Affairs case, but not other." (ECF No. 144.)

[5] Plaintiff's counsel states that Ms. Skorupa provided her with a copy of a letter from former defense counsel, Brian Mitchell, dated June 2, 2022, in which Mr. Mitchell had agreed to provide the request litigation documents, including electronic copies of any depositions, sworn statements, signed statements, answers to interrogatories or responses to requests for admissions. (ECF No. 144 at 1-2.) However, Plaintiff's counsel claims she never received the hard copy letter and DVD it references, and, in any event, "the production it references is incomplete." (*Id.*) Plaintiff's counsel claims the letter from Mr. Mitchell makes it clear "that no effort was made to secure any documents from his/her clients, and instead, relied only on material that was in the present possession of the County Attorney's Office." (*Id.*)

electronic copies of any depositions, sworn statements, signed statements, answers to interrogatories, or requests for admission" that are in "in the possession of any/all of the County Attorneys' clients." (ECF No. 144 at 1-2.)

Finally, Plaintiff challenges Defendants' production of "any and all documents that pertain to the federal criminal case against Mr. Spota." (ECF No. 144.) This Court had previously ordered Mr. Mitchell to provide the documents, and, specifically, to provide Plaintiff's counsel with an Affidavit from a person conducting a search for the documents and the result of it. (ECF Nos. 90, 100, 144.)[6] Plaintiff concedes that Mr. Mitchell provided an Affidavit, which she attached to her letter motion, from a person who searched for documents pertaining to the "discipline, firing, or termination" of Thomas Spota. (ECF No. 144.)

However, Plaintiff argues the Affidavit is insufficient, as the search performed was "inappropriate" for three reasons: (i) the records allegedly searched for were records relating only to the "discipline, firing, or resignation" of Thomas Spota – an improper proper scope of the search requested; (ii) the Affidavit was written by an individual from the Suffolk County District Attorney's Office who purported to "search" their records only, and the discovery demand and subsequent court orders were directed to Mr. Mitchell to cause a search of his clients' records, not just the District Attorney's office alone; and (iii) the Affidavit stated the affiant was actually aware of a list of documents that had been used in the FBI investigation and returned to his office as of the date of that writing, but that he "hasn't personally seen or located them" – "indicating that [no] reasonable search of their records was performed." (ECF No. 144.)

In response, Defendants preliminary argue that Plaintiff's motion should be denied "for failure to comply with both the Individual Practice Rules of this Court" and the Eastern District's

[6] This Court issued the mentioned Orders as a result of Mr. Mitchell's claims that "none of his clients had any documents relating to that matter." (ECF No. 144.)

Local Civil Rules. (ECF No. 147.) Specifically, Defendants argue Plaintiff's counsel did not comply with Local Rules 37.1 and 37.3, which require the parties to "make a good faith effort" to confer "in-person or by telephone" "to resolve disputes before making a motion[,]" and, if a motion is made, "the moving party [must] specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed[,] set[ting] forth the grounds upon which the moving party is entitled to prevail as to each request or response." (ECF 147; Local Civil Rules 37.1-37.3). Defendants claim that in her motion, Plaintiff's counsel does not "specify and quote or set forth verbatim in the motion papers each discovery request and response to which the motion or application is addressed[,]" and "[a]t no point in time ever "attempt[ed] to confer in good faith in person or by telephone in an effort to resolve the disputes, in conformity with Fed. R. Civ. P. 37(a)(1)" with Defendants' counsel. (ECF No. 147.)

As to Plaintiff's counsel's first request pertaining Internal Affairs files productions, Defendants claim they already produced all required categories of Internal Affairs files "to the extent they exist" in the thumb drive provided to Plaintiff's counsel on August 9, 2023, which Defendants state "they are happy to provide a copy of" to the Court "for in camera inspection" (ECF No. 147 at 2-3).

As to Plaintiff's counsel's second request, Defendants claim: (i) there is "no such ruling on the docket" requiring Defendants to provide "Internal Affairs files which pertain to any officer involved in the 'thirteen specifically identified case files, identified earlier in discovery litigation'" (ECF Nos. 144, 147), and (ii) Defendants will provide Plaintiff's counsel "with another copy" of the letter and DVD from Mr. Mitchell, and that Plaintiff's counsel's "contention that 'the production it references is incomplete'" is "without merit and not based on

any Order of the Court nor does it reference one because one does not exist." (ECF No. 147 at 3.) With respect to Plaintiff's third request, Defendants maintain they are "fully compliant with the Court's prior Orders on this issue," and that "Ms. McClure was previously advised to contact the U.S. Attorney's Office for the documents she seeks as they are the agency who prosecuted Mr. Spota." (ECF No. 147 at 3.).

## DISCUSSION

### I. Motion to Disqualify

The Court is guided by both the American Bar Association ("ABA") and New York's Rules of Professional Conduct ("RPC") to determine disqualification motions. *See Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00-cv-3759 (LTS) (MHD), 2001 U.S. Dist. LEXIS 20352, at *5 (S.D.N.Y. Dec. 7, 2001). Disqualifying counsel has "a serious and immediate adverse effect by denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Indeed, courts – which have wide discretion in deciding disqualification motions – should be "loathe to separate a client from" chosen counsel. *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979). This fundamental precept, coupled with the risk for potential abuse of these types of motions for "tactical purposes," is why motions for disqualification are subject to strict scrutiny. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989).

At bottom, motions to disqualify should only be granted where the court concludes that there is a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also Galloway v. Nassau Cnty.*, No. 19-CV-5026 (AMD) (JMW), 2021 WL 5013735 (E.D.N.Y. Oct. 27, 2021). Thus, the movant shoulders a heavy burden, and must establish *specific facts* warranting the disqualification. *See Evans v. Artek Sys. Corp.,* 715 F.2d

788, 791, 794 (2d Cir. 1983). Conclusory statements parroting the language of the applicable Rule of Professional Conduct will not suffice. Here, as previously mentioned, Defendants move for the disqualification of Ms. McClure under Rule 3.7(a) of New York's Rules of Professional Conduct, otherwise known as the "advocate-witness Rule," because she "is likely to be a witness on a significant issue of fact" in this case. (ECF No. 143 at 2.) As further explained below, the Court finds that Defendants have not presented specific facts warranting Ms. McClure's disqualification under Rule 3.7.

Rule 3.7 provides that "lawyer[s] shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." RPC § 3.7(a). Simple and clear as this statement appears, application of the rule can sometimes be elusive. In short, this rule "prohibits an attorney from representing a party in case where the attorney will or 'ought to' be called as a witness." *Rizzuto* v. *De Blasio*, No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019). The rule attempts to alleviate four risks:

1. the lawyer might appear to vouch for his own credibility;
2. the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility;
3. some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and
4. when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray v. Metro. Life Ins. Co*., 583 F.3d 173, 178 (2d Cir. 2009).

Generally, courts have found that the advocate-witness rule only applies to counsel's participation at trial and is not a bar to pre-trial proceedings. *Cassini v. Cnty. of Nassau*, 2023 U.S. Dist. LEXIS 189089 at *9-10 (noting that plaintiffs were uncertain of the nature of counsel's testimony); *Bakken Res., Inc. v. Edington*, No. 15-cv-08686 (ALC), 2017 WL 1184289, at *3 (S.D.N.Y. Mar. 29, 2017) ("Generally, disqualification under Rule 3.7(a) 'is triggered only

when the attorney actually serves as an advocate before the jury.'") (quoting *Finkel v. Frattarelli Bros*., 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)); *Interpharm, Inc. v. Wells Fargo Bank, N.A*., No. 08-cv-11365 (RJH) (HBP), 2010 WL 1141201, at *5 (S.D.N.Y. Mar. 25, 2010) ("[T]he concerns that justify disqualification of an attorney who will be a witness are not implicated at the pretrial stage"); *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) ("Where there it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature"); *McDonald v. Hammons*, 129 F.3d 114 (2d Cir.1997) (noting that the need to disqualify counsel "frequently only becomes clear at the conclusion of the underlying litigation").

As a result, disqualification "is warranted only where the testimony given by counsel is *necessary*." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (emphasis added). For example, courts in this Circuit have found disqualification warranted – and more compelling – in cases where an attorney is also a named party. *See Rizzuto*, 2019 WL 1433067 (disqualifying attorney who was plaintiff's father and named plaintiff); *Decker v. Nagel Rice LLC,* 716 F. Supp. 2d 228 (S.D.N.Y. 2010) (disqualifying attorney who was to be named as a third-party defendant).

To this end, to disqualify an attorney under the advocate-witness rule, the movant must prove by "clear and convincing evidence" that: (i) "the witness will provide testimony prejudicial to the client[;]" and (ii) "the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-179; *see also Ramey v. Dist. 141 Int'l Ass'n of Machinist,* 378 F.3d 269, 283 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client *before a jury* seeks to serve as a fact witness *in that very proceeding*."). The underlying purpose of the so-called "advocate-witness rule" is "to protect the integrity of the judicial system." *City of New York v. Henriquez*, 2023 U.S. Dist. LEXIS 175794, at *9–10

(E.D.N.Y. Sep. 29, 2023); *see also Rizzuto*, 2019 WL 1433067. In determining whether a party's testimony will be necessary or that the testimony would be prejudicial to the client, courts similarly consider "the significance of the matters, weight of the testimony, and availability of other evidence." *Noval Williams Films LLC v. Branca*, 128 F. Supp.3d 781, 791 (S.D.N.Y. 2015). "Prejudice in this context means testimony that is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Decker*, 716 F. Supp. 2d. at 232.

Defendants argue that because of her personal and professional relationship with Plaintiff, Ms. McClure is a witness to both the allegations in Plaintiff's Amended Complaint – which alleges "physical injuries, mental injuries, financial damages, loss of work, deprivation of liberty and privacy, terror, humiliation, damages to his personal and professional reputations, as well as loss of relationship with his family, including his young daughter" all of which "continue to accrue and may be permanent" – and, to his damages request – specifically, his request for "$100 million dollars for pain and suffering, loss of liberty and loss of relationship with his family" and "$60 million representing loss of work, contracts future work, loss of personal and professional reputation" – that they "not only may wish to call at trial, but may also wish to depose in this matter prior to the close of fact discovery." (ECF Nos. 87, 143.) Defendants note that "upon information and belief[,]" Ms. McClure was "present in in court" during Plaintiff's underlying criminal trial, which "further exemplifies her role as a witness in this matter." (ECF No. 143 at 3.)[7]

[7] Defendants additionally note that it "remains unclear at this juncture how personally familiar [Ms. McClure] is with the facts alleged in the complaint as it appears she has firsthand knowledge of many of them[,]" and that "[f]urther inquiry by the Court and/ or Defendants' attorneys in a deposition is

In response, Ms. McClure argues that she is "neither a fact witness, nor witness to any damages claimed by [Plaintiff], except in the capacity as his attorney." (ECF No. 145 at 1.) Ms. McClure states that she did not know Plaintiff "until years after the underlying incident." (*Id.*) Additionally, Ms. McClure argues that Plaintiff does not seek "emotional distress damages or damages for loss of relationship with his family, other than that suffered during the period of incarceration." (*Id.*) Instead, a damages expert "will quantify and testify as to the damages he seeks." (*Id.*) Ms. McClure likewise argues that her being present at Plaintiff's underlying criminal trial is irrelevant. (*Id.*) Moreover, states that "the complaint was not filed until long after [their] relationship began." (*Id.* at 2.)

In their reply to Ms. McClure's opposition, Defendants argue that Ms. McClure living with Plaintiff for at least four years "clearly exhibits their financial interdependence making her a clear witness to the economic and emotional damages he allegedly sustained." (ECF No. 146 at 2.) Defendants reiterate that Ms. McClure employing Plaintiff at her law firm "illustrates her identity as a direct witness to the economic damages . . . for his purported loss of work, contracts, etc." (*Id.*)

Notably, New York state and federal courts have only been inclined to disqualify attorneys under Rule 3.7 for having personal relationships with their clients in cases where said attorney was the *only* person with firsthand knowledge regarding a claim or element of the client's case. *See e.g.*, *The Cadle Co. v. Demadeo*, 256 F. Supp. 2d 155 (E.D.N.Y. 2003) (Spatt, J.) (in a case of creditor against debtors, husband and wife, disqualifying husband from representing his wife where husband admitted would testify regarding insolvency, an element of the case, because he was the only one with knowledge of it); *see also Smolenski v. T.G.I. Friday's*

undoubtedly necessary to ascertain the full scope of her knowledge of the facts alleged in the complaint and the damages Plaintiff claims as set forth above." (ECF No. 143 at 3.)

*Inc.*, 834 N.Y.S.2d 436 (Sup. Ct., Nassau Cty., Feb. 7, 2007) (holding plaintiff could not be represented by her husband because "the Court [was] troubled by the prospect of [the husband] being called as a fact witness, testifying and being cross-examined, and at the same time representing [the wife] as her attorney in the [negligence] case" where the husband was present during the wife's accident); *Rizzuto*, 2019 WL 1433067 at *5 (noting that plaintiff's father and counsel would serve as an "indispensable source of information" in relation to his case against defendants).

The Court is in agreement with Ms. McClure that she is not a named-defendant in this suit, and is "neither a fact witness, nor witness to any damages claimed by [Plaintiff], except in the capacity as his attorney" (ECF No. 145 at 1), and otherwise lacks first-hand knowledge with respect to the claims and damages alleged in Plaintiff's Amended Complaint, because: (i) she did not know Plaintiff "until years after the underlying incident," (ii) Plaintiff does not seek "emotional distress damages or damages for loss of relationship with his family, other than that suffered during the period of incarceration," and (iii) her presence at Plaintiff's underlying criminal trial is irrelevant. (*Id.*) *See Murray*, 583 F.3d at 179 (finding that the witnesses would do little more than authenticate documents and confirm facts not in dispute); *Cf*. Noval, 128 F. Supp.3d at 791 (noting that producer and attorney was a key witness on factual issues would be "in the best, or only, position" to testify about the events); *Superb Motors Inc. v. Deo*, 23-CV-6188 (JMW) (E.D.N.Y. Dec. 1, 2023) (granting motion to disqualify defendants' counsel since he was a named defendant and his anticipated testimony deemed material and necessary).

Moreover, the Court notes that "for the purposes of considering a disqualification motion, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact *require* his testimony." *Wachovia Bank, Nat'l*

*Ass'n v. Focus Kyle Group, LLC*, 896 F. Supp. 2d 330 (S.D.N.Y. 2012) (emphasis added). While it is a possibility that Ms. McClure *could* speak to the "economic and emotional damages Plaintiff allegedly sustained" (ECF No. 146 at 2) – as Ms. McClure has identified, she is not the *only* person who can testify to those economic and emotional damages. *See* ECF No. 145 (Plaintiff "will have a damages expert quantify and testify as to the damages he seeks.")[8] Defendants have not made a sufficient showing as to why Ms. McClure is the *only* witness who can testify as to Plaintiff's economic and emotional damages or how her testimony would be critical to Plaintiff's case.[9] As such, Ms. McClure's testimony, although potentially useful and relevant to Plaintiff's case, is not necessary as to warrant her disqualification. *See S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 508 N.E.2d 647 (N.Y. 1987) ("Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence."); *People v. Berroa*, 782 N.E.2d 1148 (N.Y. 2002) (quoting 22 NYCRR 1200.21(d)) ("A lawyer is ethically required to withdraw from acting as an advocate if it is obvious that he or she 'may be called as a witness on a significant issue other than on behalf of the client [and] it is apparent that the testimony is or may be prejudicial to the client.'").

Additionally, the Court finds that disqualifying Ms. McClure at this juncture would impose a substantial hardship upon Plaintiff. The case commenced in March 2020 (ECF No. 1),

---

[8] Plaintiff's Counsel additionally notes that "Brian Mitchell himself was actually firsthand fact witness to some of Thomas Spota's malicious cover-up efforts relating to a criminal prosecution," and yet, "despite Mr. Mitchell's first-hand knowledge, plaintiff has thus far opted not to disrupt the litigation with motion practice to disqualify him or his office, because other evidence exists to prove these claims at trial." (ECF No. 145.)

[9] The Court notes that Defendants concede that it "remains unclear at this juncture how personally familiar [Ms. McClure] is with the facts alleged in the complaint[,]" however, "it appears she has firsthand knowledge of many of them[.]" (ECF No. 143 at 3.) The Court declines to make the same assumption based on Ms. McClure's personal and working relationship with Plaintiff alone.

and fact discovery was set to be complete on December 1, 2023 (ECF No. 140). Thus, the Court concludes that disqualifying Ms. McClure as this late stage of pre-trial proceedings, would be inappropriate, especially considering the lack of grounds presented for disqualification. *Cf. Noval*, 128 F. Supp. 792 (finding the removal Plaintiff's attorney "at an early stage of the litigation" appropriate.). Accordingly, the motion to disqualify Ms. McClure as Plaintiff's counsel based on the advocate-witness rule is denied.

## II. <u>Motion to Compel</u>

Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06-CV-460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of

the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

Since December of 2015, "Rule 26 has defined the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.'" *Pothen v. Stony Brook Univ.*, Np. 13-CV-6170 (JFB)(AYS), 2017 WL 1025856, at *2 (E.D.N.Y. Mar. 15, 2017). "Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated," and permissible discovery under Rule 26 must be relevant "to any party's claim or defense," and that means "proportional to the needs of the case." *Id.* at *3 (citing Fed. R. Civ. P. 26(b)(1)). Proportionality goes "hand-in-hand" with relevance. *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). That is, the more relevant the information sought is, the less likely the Court would find the subject discovery disproportionate. *Id.*

It is beyond doubt that "[m]otions to compel are left to the court's sound discretion." *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see also Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

As the parties are aware, the Federal Rules of Civil Procedure, the Local Civil Rules of this Court, and the undersigned's Individual Practice Rules concomitantly require that parties meet and confer in a good faith attempt to resolve discovery disputes before formally initiating motion practice or raising disputes with the Court. *See* Individual Practice Rule 3.A; Local Civil Rules 26.4, 37.3(a); Fed R. Civ. P. 37(a). This requires the parties to:

> Meet, *in person or by telephone*, and make a *genuine effort* to resolve the dispute by determining: (i) what the requesting party is actually seeking; (ii) what the discovering party is reasonably capable of producing that is responsive to the request; and (iii) what specific genuine issues, if any, cannot be resolved without judicial intervention.

*Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05-CV-10174, 2007 WL 2900217, at *12 (S.D.N.Y. Oct. 4, 2007) (emphasis added) (explaining the meet and confer requirement).

It is apparent from the instant application that the parties have not made a meaningful effort to meet and confer prior to raising this dispute with the Court. Notably, perfunctory email correspondence will not suffice. *See, e.g.*, ECF Nos. 144-2, 147-1. The Court additionally notes the parties had an opportunity to discuss any outstanding discovery disputes or issues at the November 13, 2023 Status Conference before the undersigned, and yet failed to do so. (ECF No. 142.) Accordingly, the parties are hereby directed to, on or before December 31, 2023 meet and confer by person or by telephone, and make a genuine effort to resolve the dispute by determining the factors above. If genuine disputes remain after the parties have met and conferred, Plaintiff's counsel may renew her motion.

**CONCLUSION**

For the reasons stated, Defendants' motion for disqualification of Ms. McClure as counsel for Plaintiff (ECF No. 143) is denied. Plaintiff's Third Motion for Discovery (ECF No. 144) is denied without prejudice and with leave to renew.

Dated: Central Islip, New York
December 19, 2023

**S O O R D E R E D:**

/S/ James M. Wicks
JAMES M. WICKS
United States Magistrate Judge