**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
SAMUEL WHITE,

                                  *Plaintiff,*

                    -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, RONALD TAVARES,
MICHAEL MILAU, SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE, DARRYL LEVY, LAURA
NEWCOMBE, THOMAS SPOTA, JOHN DOES
1-10, TIMOTHY SINI, OFFICE OF THE MEDICAL
EXAMINER CRIME LABORATORY (SUFFOLK
COUNTY), HELEN WONG, ODETTE R. HALL,
M.D., JOHN PETERSON and JAMES MCGUINESS,

                                  *Defendants*.
-------------------------------------------------------------X

**MEMORANDUM ORDER**
20-CV-1501 (RER)(JMW)

**A P P E A R A N C E S:**

Stephanie McClure, Esq.
**Law Office of Stephanie McClure**
101 Avenue of the Americas, 9th Floor
New York, NY 10013
*Attorney for Plaintiff*

Stacy A. Skorupa, Esq.
**Suffolk County Department of Law**
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, NY 11788
*Attorneys for All Defendants (except Thomas Spota)*

Anthony M. LaPinta, Esq.
Kyle O.Wood, Esq.
**Law Offices of Anthony M. La Pinta**
200 Vanderbilt Motor Parkway
Suite C-17
Hauppauge, NY 11788
631-231-1199
*Attorneys for Defendant Thomas Spota*

James H. Knapp, Esq.
**United States Attorneys Office**
Eastern District of New York
610 Federal Plaza
Central Islip, NY 11722
*Attorneys for Non-party Federal Bureau of Investigation*


**WICKS,** Magistrate Judge:

Plaintiff Samuel White ("Plaintiff") commenced this Section 1983 civil rights action against Suffolk County, former District Attorney Thomas Spota, and various other defendants (collectively "County Defendants") on March 21, 2020, seeking monetary damages and non-monetary relief for alleged violations of due process and equal protection, false arrest, malicious prosecution, denial of a fair trial, failure to intervene, denial of right to counsel, fabrication of evidence, presentation of false evidence to the grand jury and an appellate court, conspiracy, and failure to train or supervise. (*See* ECF No. 87). In her March 31, 2023 Order granting in part and denying in part Defendants' respective dismissal motions (ECF No. 96, 97), District Judge Joanna Seybert returned this case to the undersigned to preside over the discovery phase of this action. (*See* ECF No. 130). In January 2024, this case was re-assigned to District Judge Ramon E. Reyes, with the undersigned still presiding over discovery and pretrial matters. (*See* Electronic Entry dated January 23, 2024).

Now before the Court is a Motion for Reconsideration (ECF No. 163), filed by the Federal Bureau of Investigation ("FBI")—not a party to this case—asking this Court to partially reconsider and modify its March 5, 2024 Order denying County Defendants' Motion for Extension of Time to Complete Discovery. (*See* Electronic Order dated March 5, 2024 ("March 5 Order")). The United States Attorney's Office for the Eastern District of New York ("USAO") supplemented the FBI's Motion for Reconsideration, specifically requesting that this Court

2

prohibit disclosure of FBI "FD-302" Reports (hereinafter "FBI Reports")[1] related to a prior

federal criminal investigation of Defendant Spota. (*See* ECF No. 168). Plaintiff opposed both the

FBI's Motion for Reconsideration and the USAO's supplementary filing. (*See* ECF Nos. 167,

169).

For the reasons that follow, the FBI's Motion for Reconsideration (ECF No. 163) is

**GRANTED** and the County Defendants are no longer obligated to produce the FBI Reports in

accordance with this Court's March 5 Order.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of

this case, as articulated in the undersigned's Report and Recommendation (ECF No. 124),

District Judge Seybert's Partial Adoption Order (ECF No. 130), and District Judge Reyes's Order

Granting County Defendants' Motion for Protective Order (Electronic Order dated March 13,

2024). Thus, only the facts relevant to the Motion for Reconsideration are outlined below.

### I.        The FBI's Motion for Reconsideration

On March 5, 2024, this Court denied County Defendants' Motion for Extension of Time

to Complete Discovery, with prejudice and without leave to renew. (*See* March 5 Order). County

Defendants were directed to, *inter alia*, "produce the outstanding *Monell* discovery as it relates to

the Federal Criminal investigation and case in which Defendant Spota was a party, including any

files the County Defendants received from the FBI (the "Outstanding Monell Discovery") on or

before March 11, 2024." *Id.*

---

[1] FBI agents generally use "302s to memorialize interviews '[w]hen it is anticipated that the results of an interview may become the subject of court testimony.'" *Am. Oversight v. United States Dep't of Just.,* 45 F.4th 579, 585 (2d Cir. 2022) (quoting FBI, *Domestic Investigations and Operations Guide* § 18-33 (Mar. 3, 2016)).

Three days later, the FBI asked this Court via letter motion to reconsider and modify its March 5 Order. (ECF No. 163). The FBI reasoned that County Defendants were not "authorized to retain or produce" any FBI documents. (*Id.* at 2). As of the time of its letter motion, the FBI stated that it was "investigating the circumstances under which the County Defendants came to possess the material in question." (*Id.* at 2). According to the FBI, pursuant to the Supreme Court's decision in *U.S. ex rel. Touhy v. Ragen* ("*Touhy*"), not only could the Department of Justice ("DOJ") bar its employees from disseminating materials pursuant to DOJ regulations, but the County Defendants were also prohibited from producing to Plaintiff any FBI or DOJ documents pertaining to Defendant Spota's federal criminal investigation. (*See id.* at 2-3; *see also U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–68 (1951)). Additionally, the FBI asserted that Plaintiff had other means of recourse, namely, that he could petition the FBI for such documents in accordance with the DOJ's *Touhy* regulations, or seek disclosure of the documents under the Freedom of Information Act ("FOIA"). (*See* ECF No. 163 at 2-3; *see also* 28 C.F.R. §§ 16.21-29; Freedom of Information Act, 5 U.S.C. § 552 (2016)).

## II.      Plaintiff's Opposition to the FBI's Motion for Reconsideration

Plaintiff filed an objection to the FBI's Motion for Reconsideration on March 13, 2024. (*See* ECF No. 167). *First*, Plaintiff argued that the undersigned, as a federal Magistrate Judge, lacked the authority under Local Civil Rule 6.3 to entertain the FBI's motion for reconsideration. (*See id.* at 1; *see also* Local Civil Rule 6.3 (specifying the time periods governing motions for reconsideration in the District Courts for the Southern and Eastern Districts of New York)). *Second*, Plaintiff asserted that the FBI's Motion improperly raised new matters not addressed by this Court—supposedly, the "discoverability" of FBI documents related to Defendant Spota's federal criminal investigation, when "the only issue regarding the Spota material was whether it

was available not whether it was discoverable." (ECF No. 167 at 2 (internal quotation marks

omitted)). *Third*, Plaintiff claimed that *Touhy* did not apply to those documents. (*Id.* at 2-3).

According to Plaintiff, "dissemination" to the County Defendants "waive[d] the privilege,"

because *Touhy* only applies to the DOJ, not state or county-level entities. (*See id.* at 2-3).

Plaintiff also stated that those documents were released to the media.[2] *Finally*, Plaintiff alleged

that the FBI lacked standing to challenge this Court's March 5 Order. (*Id.* at 3).

### III.   The USAO's Supplementary Filing Supporting the FBI's Motion for Reconsideration

Subsequently, the USAO supplemented the FBI's letter motion "to advise the Court of

information it has learned about the circumstances under which the County Defendants came to

---

[2] Plaintiff does not specify for *which FBI documents* the privilege was allegedly waived. Plaintiff conclusively states that "[t]hese materials have not only already been disclosed to the County Defendants, but it also appears they've been otherwise released to the media." ECF No. 167 at 3. Nor does Plaintiff's Exhibit A, an email from Counsel for County Defendants, provide more insight. In that email, Counsel for County Defendants indicates that "the Documents provided to Suffolk IAB from the US Attorney's Office . . . have either been released by the US Attorney to other sources, or have appeared in various media." *Id.*, Exhibit A, at 1. But Plaintiff does not identify any media sources disclosing copies of the FBI Reports, much less any publications even identifying the FBI Reports. Privilege cannot be waived solely through such vague references to "the media"—privileged documents must actually be disclosed. *See, e.g., In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential. The cat is let out of the bag, so to speak."). Moreover, only FBI documents disclosed to the media—and thus viewable by the public—could lose their privilege. For the purposes of this Order, the Court relies on the USAO's identification of those documents, which included publicly available trial materials and FBI Reports subject to a Protective Order issued by Judge Joan M. Azrack (hereafter, "Judge Azrack's Order") in Defendant Spota's federal criminal investigation. *See* ECF No. 168 at 1-2, 4-7. Issued on March 29, 2019, Judge Azrack's Order permitted Defendants Spota and McPartland to "obtain and review . . . Confidential Materials" the "government intend[ed] to produce." *See* Protective Order, *USA v. McPartland et al.*, No. 2:17-cr-00587-JMA (E.D.N.Y. Mar. 29, 2019), ECF No. 78 at 1. Judge Azrack's Order allowed disclosure of those Confidential Materials "without the need for extensive redaction of the materials, and without risking disclosure of any witnesses' sensitive or personal information," only for trial and appeals purposes. *Id.* at 2. In the instant case, the USAO indicates that the FBI Reports were included in the Confidential Materials exchange, are "sensitive and remain appropriately subject to [Judge Azrack's Order]." ECF No. 168 at 3. As discussed further, the FBI and USAO have not waived privilege as to the FBI Reports—those reports are subject to Judge Azrack's Order and are not viewable by the public. Of course, Plaintiff may still access publicly available trial records relating to Defendant Spota's federal criminal investigation.

possess certain documents and materials related to the federal investigation of [Defendant Spota] and others." (ECF No. 168 at 1). The USAO maintained that, on March 6, 2024, one day after this Court's March 5 Order, the Suffolk County Department of Law informed the government that it possessed FBI documents related to Defendant Spota's federal criminal investigation. (*See id.* at 1). Those documents included: (i) trial transcripts and materials publicly available, and (ii) approximately forty FBI Reports, some accompanied by handwritten notes, memorializing the substance of witness interviews. (*See id.* at 1-2). According to the USAO:

> In approximately January 2020, the FBI, in consultation with [the USAO], provided the [FBI Reports] to the [Suffolk County Police Department ("SCPD")], with the explicit understanding that these materials were confidential, would not be further disseminated, and would be used exclusively by the SCPD's Internal Affairs Bureau ("IAB") solely for purposes of assessing whether to take administrative action against Certain officers and detectives, none of whom is named as a defendant in this action. (*Id.* at 2.)

At some point after January 2020, in connection with the instant case, the SCPD disclosed the FBI Reports to the Suffolk County Department of Law. (*See id.*). The USAO asserted that the FBI Reports "contain[ed] sensitive information from and about individuals wholly unrelated to [Plaintiff's case]." (*Id.* at 3.) Importantly, the USAO "ha[d] no objection to the disclosure of any publicly filed documents, including the McPartland/Spota trial transcripts and filings from that docket and from related criminal dockets." (*Id.* at 2.)

### IV.    **Plaintiff's Opposition to the USAO's Supplementary Filing**

Plaintiff opposed the USAO's supplementary filing on March 13, 2024, reiterating his standing and waiver objections. Plaintiff also objected on the grounds of this Court's Individual

Rules,[3] vague references to relevancy, and mootness.[4] On these bases, Plaintiff requests that this Court dismiss the FBI's Motion for Reconsideration in its entirety. (*See* ECF No. 169 at 3.)

## **LEGAL STANDARD**

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3." *LM Ins. Corp. v. Safety Nat'l Cas. Corp.,* 2023 WL 8440864, at *1 (E.D.N.Y. Dec. 6, 2023). A party may move for reconsideration must "set[] forth concisely the matters or controlling decisions which [the party] believes the Court has overlooked." S.D.N.Y & E.D.N.Y Civ. R. 6.3. Reconsideration is justified where: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error I s established, or (iv) reconsideration is necessary to avoid a manifest injustice. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021). The reconsideration standard is "strict" to "dissuade repetitive arguments on issues that have already been considered fully by the court." *Nielsen v. New York City Dep't of Educ.*, 2007 WL 2743678, at *1 (E.D.N.Y. Sept. 18, 2007)

---

[3] Plaintiff claims that the USAO's letter to this Court was filed as a reply, not as a filing supporting a Motion for Reconsideration. *See* ECF No. 169 at 1. However, this Court's Individual Rule 3.A is inapplicable to the USAO's filing. *See* Individual Practice Rules of Magistrate Judge James M. Wicks, Rule 3.A. Individual Rule 3.A applies to replies to opposing parties*, not supplementary filings. (*See id.*). While Plaintiff himself files a letter motion as a reply, his mootness and relevancy arguments are addressed in the following footnote. *See infra footnote* 3.

[4] Plaintiff's assertion that the "Spota material" (again, with no distinction between what material is publicly available and subject to a protective order) is relevant is inapposite. (ECF No. 169 at 2.) The FBI Reports' relevance does not permit this Court to circumvent *Touhy*. Similarly, Plaintiff's mootness objection—claiming that the "issue of confidentiality has now been decided" and is moot—is unavailing. "A case is moot when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *Blackwelder v. Safnauer*, 866 F.2d 548, 551 (2d Cir. 1989) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). Not only is the issue of confidentiality "live"—it is central to the FBI's Motion for Reconsideration, because permitting disclosure of the FBI reports would abrogate Judge Azrack's Order. As explained below, the FBI and USAO are parties with standing, and thus, legally "cognizable" interests in the outcome of this discovery dispute: the confidentiality of documents subject to the DOJ's *Touhy* regulations and a protective order. The mootness doctrine cautions against courts issuing advisory opinions—an issue far beyond the scope of this dispute. *See ParamesWaran v. Mysorekar*, 2006 WL 3393688, at *3 (E.D.N.Y. Sept. 22, 2006).

(quoting *Lykes Pasco v. Ahava Dairy Prods. Corp.*, 1998 WL 427570, at *3 (E.D.N.Y. Jan. 26, 1998)). Reconsideration is left within the sound discretion of this Court.[5] *See Rivas v. Melecio*, 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024).

## **DISCUSSION**

The FBI asks this Court to partially reconsider and modify its March 5 Order mandating that County Defendants disclose any FBI documents relating to this case. (*See* March 5 Order; *see also* ECF Nos. 163, 168.) Specifically, as indicated by the USAO's supplementary filing, the FBI seeks to prevent disclosure of approximately forty (40) FBI Reports. (*See* ECF No. 168.) According to the FBI and USAO, the Supreme Court's decision in *Touhy* bars disclosure of the FBI reports without a stamp of approval from the proper DOJ official. (*See* ECF No. 163 at 2; *see also* ECF No. 168 at 2-3; *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). The undersigned addresses each parties' contentions below.

## I.    **Standing**

*First*, Plaintiff asserts that the FBI and USAO—not parties to this action—lack standing to intervene and claim that *Touhy* applies to FBI reports. (*See* ECF No. 167 at 3; *see also* ECF

---

[5] Plaintiff asserts that the undersigned, as a Federal Magistrate Judge, cannot entertain the FBI's motion for reconsideration. (*See* ECF No. 167 at 1). Plaintiff cites a single footnote from *McNamee v. Clemens*, reasoning that because Local Rule 6.3 does not explicitly mention magistrates, the FBI's motion for reconsideration "must be denied for that reason alone." *Id.; see also McNamee v. Clemens,* 2014 WL 1338720 *7 n.4 (E.D.N.Y. Apr. 2, 2014). But *McNamee* is not dispositive; various judges in this District and Southern District of New York—the District Courts *employing the joint local rules*—have disagreed over whether magistrates can entertain motions for reconsideration, even though magistrates are not explicitly mentioned in the rule. *See Rouviere v. DePuy Orthopaedics, Inc.,* 560 F. Supp. 3d 774, 786 n.3 (S.D.N.Y. 2021). "[M]any district and magistrate judges who have held that magistrate judges have the power to field motions for reconsideration of their prior rulings." *Id.; see also Joint Stock Co. "Channel One Russia Worldwide" v. Infomir LLC*, 2020 WL 1480465, at *2 n.2 (S.D.N.Y. Mar. 26, 2020) (collecting cases). The Local Rules apply to all civil actions under the Federal Rules of Civil Procedure, and the fact that Local Rule 6.3 does not mention magistrates does not mean that they are excluded from entertaining motions for reconsideration. *See Rouviere*, 560 F. Supp. at 786 n.3; *see also* S.D.N.Y & E.D.N.Y Civ. R. 1.1, 6.3.

No. 169 at 2). Relevant here, a non-party or non-recipient of a subpoena "'has standing to challenge [the] subpoena 'only if it has a privilege, privacy or proprietary interest in the documents sought.'" *State Farm Mut. Auto. Ins. Co. v. Khait*, 2023 WL 6541583, at *4 (E.D.N.Y. Sep. 26, 2023) (quoting *City of Almaty, Kazakhstan v. Ablyazov*, 2020 WL 1130670, at *1 (S.D.N.Y. Mar. 9, 2020)).

The USAO and FBI have standing, as they are objecting to disclosure of material that they claim is protected by privilege. Specifically, the USAO and FBI have a privileged interest in the FBI Reports, which were deemed confidential by Judge Azrack's Order. (*See* ECF No. 168 at 1-2, 4-7; *see also* Protective Order, *USA v. McPartland et al.*, No. 2:17-cr-00587-JMA (E.D.N.Y. Mar. 29, 2019), ECF No. 78). Those FBI Reports "were not introduced into evidence by either side during the course of trial, nor were they otherwise publicly disclosed during the trial, or at any time after trial had concluded." (ECF No. 168 at 2). Further, the USAO states that "the Government has no reason to believe that the trial defendants or their respective counsel have violated the provisions of the protective order by disclosing the FBI [Reports]." (*Id.* n.3). As discussed below, the SCPD's disclosure of the FBI reports to the Suffolk County Department of Law did not waive privilege, nor abrogate Judge Azrack's Order. Arguably, the USAO and FBI a proprietary interest as well: pursuant to the DOJ's *Touhy* regulations, the documents were the USAO and FBI's property, and disclosure to County Defendants was inadvertent and/or mistaken. Either through privilege or proprietary interest, the USAO and FBI have standing to object to the March 5 Order.

## II.    **Privilege and *Touhy Regulations***

In connection with his argument against *Touhy's* applicability to this case, Plaintiff broadly states that "privilege . . . has been waived." (ECF No. 167 at 2). According to Plaintiff,

because "the documents" (not specifying *which FBI documents*) were "released to the 'County

Defendants' who were non-parties to the criminal actions" surrounding Defendant Spota,

dissemination to County Defendants waived those documents' privilege. (*Id.*) Plaintiff claims

that *Touhy* only applies to parties seeking materials from the federal government; presumably,

disclosure to County Defendants waived the confidentiality imposed by *Touhy*. (*See id.* at 2).

As a threshold matter, *Touhy* bars DOJ employees from disseminating materials where

the Attorney General forbids such disclosure. *See U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462,

467–68 (1951). Pursuant to the DOJ's *Touhy* regulations, DOJ employees cannot disclose any

DOJ materials or information, as part of those employees' "performance of [their] official

duties" without approval from the proper DOJ official. *See* 28 C.F.R. § 16.22(a).

For documents governed by confidentiality orders—here, the FBI Reports—the waiver

doctrine is instructive. In its *in re Steinhardt Partners, L.P.* decision ("*Steinhardt Partners*"), the

Second Circuit recognized that selective waiver applies to cases where the government and

disclosing parties enter into confidentiality agreements. 9 F.3d 230, 235 (2d Cir. 1993)

("Establishing a rigid rule [against selective waiver] would fail to anticipate . . . situations in

which the SEC and the disclosing party have entered into an explicit agreement that the SEC will

maintain the confidentiality of the disclosed materials."). *Steinhardt Partners* concerned the

discoverability of an attorney's memorandum prepared for the Securities and Exchange

Commission in a subsequent civil case. *See id.* at 231. Outlining the limits on work product

protection[6], the Second Circuit explained that "[t]he waiver doctrine provides that voluntary

---

[6] The undersigned notes the FBI Reports here constitute "work product" under Fed. R. Civ. P. 26, as the
Reports "at issue were prepared by law enforcement agents who were memorializing interviews
conducted by federal prosecutors or by agents working under the substantial direction of prosecutors" in
connection with the federal criminal investigation of Defendant Spota. *See Am. Oversight*, 45 F.4th at 591
(collecting cases) ("Prosecutors' use of agents to conduct or memorialize interviews is not unusual in

disclosure of work product *to an adversary* waives the privilege as to other parties." *Id.* at 235 (emphasis added).

Indeed, the guiding question in this case is whether the SCPD's disclosure of the FBI Reports to the Suffolk County Department of Law, as an actual or potential adversary in litigation, waived *Touhy's* bar on disseminating those Reports. *See Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 90 (E.D.N.Y. 1981) (finding waiver for documents disclosed to "potential adversaries"). Answering that question in the affirmative would effectively abrogate Judge Azrack's Order, an extraordinary result. *See Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 296 (2d Cir. 1979) (determining that "absent a showing of improvidence in the grant of a . . . protective order or some extraordinary circumstance or compelling need . . . a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government").

In this instance, the SCPD's decision to selectively disclose the FBI Reports to the to the Suffolk County Law Department did not waive privilege as to Plaintiff. *See Harding v. Dana Transp.*, Inc., 914 F. Supp. 1084, 1092 (D.N.J. 1996) ("Parties selectively disclose privileged communication when they reveal information to one party and not another."); *see also Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) ("Selective waiver permits the client who has disclosed privileged communications to one party to continue asserting the privilege against other parties."). Selective disclosure may become full disclosure where parties are adversaries, but SCPD and County Defendants are not—and were never—adversaries: assumedly, they cooperated for the purposes of this case. *See Shinnecock*

---

criminal investigations, and courts have frequently held 302s as well as prosecutors' own memoranda to constitute attorney work product.")

*Indian Nation v. Kempthorne*, 652 F. Supp. 2d 345, 363 (E.D.N.Y. 2009) ("[S]elective disclosure of certain material, particularly to certain parties who are potential or actual adversaries, may constitute a basis for effectuating an implied waiver" (emphasis added)).

Similarly, the FBI and SCPD were cooperating parties in the context of Defendant Spota's federal criminal investigation. If SPCD somehow waived the USAO and FBI's privilege, it only did so with respect to a cooperating party—the County Defendants—and not an adversary like Plaintiff. *See e.g., New York Times Company v. United States Department of Justice*, 939 F.3d 479, 494-95 (2d Cir. 2019) (collecting cases); *Am. Oversight*, 45 F.4th at 595 (holding federal prosecutors and law enforcement agents did not waive work product protection for 302 documents memorializing interviews with targets or subjects of their criminal investigation into possible campaign finance law violations where those federal prosecutors and law enforcement agents did not "disclose to a litigation adversary the contents of" the documents or "any and all matters discussed" during the interviews).

Imposing a bright-line rule that *any* inadvertent or mistaken disclosure between federal and state actors results in waiver could substantially interfere with, if not undermine, federal criminal investigations. For example, federal and state prosecutors frequently cooperate in federal criminal investigations, and cooperation is crucial to effective interstate enforcement of criminal statutes. *See* Rachel E. Barkow, *Federalism and Criminal Law: What the Feds Can Learn from the States*, 109 MICH. L. REV. 519, 577 (2011) ("[L]ocal and federal prosecutors frequently cooperate on cases); *see also* Lisa L. Miller & James Eisenstein, *The Federal/state Criminal Prosecution Nexus: A Case Study in Cooperation and Discretion*, 30 LAW & SOC. INQUIRY 239, 252-59 (2005) (discussing federal and state cooperation with respect to gun crimes and federal prosecution as leverage in local prosecutions); Jenia Iontcheva Turner, *Interstate*

*Conflict and Cooperation in Criminal Cases: An American Perspective*, 4 EUR. CRIM. L. REV

115, 117 (explaining that "federal authorities may entirely take over a case that spills over state

borders, and increasingly, local and federal agencies may join together in 'multijurisdictional

task forces'"). As discussed further, Plaintiff has other means to obtain the FBI Reports, as well

as other FBI documents he desires. Considering the possible consequences of allowing Plaintiff

to circumvent *Touhy*, this case does not present extraordinary circumstances warranting the

abrogation of Judge Azrack's Order.

On the point of *Touhy's* applicability, *Meisel v. F.B.I.*, relied on by both here, is

illustrative. 204 F. Supp. 2d 684 (S.D.N.Y. 2002). In *Meisel*, the Plaintiff sought to obtain FBI

agent depositions from the FBI pursuant to the DOJ's *Touhy* regulations. *See id.* at 685. Despite

the Plaintiff's assertion that it "made a proper request under the *Touhy* Regulations," the FBI

denied the Plaintiff's request. *Id.* at 687. The *Meisel* Court determined that, after the Plaintiff

sought to obtain further permissions from the FBI regarding specific agents' depositions, the

Plaintiff could challenge the FBI's denial under the Administrative Procedure Act. *See id.*; *see*

*also* Administrative Procedure Act, 5 U.S.C. §§ 551-559 (1946).

Here, as in *Meisel*, Plaintiff does not possess the FBI Reports and has not indicated that

he formally requested those documents. Plaintiff may petition the FBI for them pursuant to the

*Touhy* regulations and seek judicial relief if his request is ultimately denied. *See* 28 C.F.R. §§

16.21-29; *see also* ECF No. 163 at 2-3.  Perhaps Plaintiff could even file a FOIA request. *See*

Freedom of Information Act, 5 U.S.C. § 552 (1967); *see also* ECF No. 163 ("Plaintiff may seek

disclosure of the material he seeks under [FOIA]"). However, Plaintiff cannot bypass the *Touhy*

regulations for confidentiality, which were not otherwise waived by disclosure to the County

Defendants.

**CONCLUSION**

For the reasons stated, the FBI's Motion for Reconsideration (ECF No. 163) is

**GRANTED**. The County Defendants are no longer obligated to produce the FBI Reports in

accordance with this Court's March 5 Order. Following review of the parties' Joint Status

Report, due by April 10, 2024 (*see* Electronic Order dated April 2, 2024), the undersigned will

set dates for production of all outstanding discovery.

Dated: Central Islip, New York
      April 9, 2024

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

14