**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SAMUEL WHITE,

        *Plaintiff*,

      -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, RONALD TAVARES,
MICHAEL MILAU, SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE, DARRYL LEVY, LAURA
NEWCOMBE, THOMAS SPOTA, JOHN DOES
1-10, TIMOTHY SINI, OFFICE OF THE MEDICAL
EXAMINER CRIME LABORATORY (SUFFOLK
COUNTY), HELEN WONG, ODETTE R. HALL,
M.D., JOHN PETERSON and JAMES MCGUINESS,

        *Defendants*.
-----------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**
20-CV-1501 (RER)(JMW)

**A P P E A R A N C E S:**

Stephanie McClure, Esq.
**Law Office of Stephanie McClure**
101 Avenue of the Americas, 9th Floor
New York, NY 10013
*Attorney for Plaintiff*

Stacy A. Skorupa, Esq.
**Suffolk County Department of Law**
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, NY 11788
*Attorneys for All Defendants (except Thomas Spota)*

Anthony M. LaPinta, Esq.
Kyle O.Wood, Esq.
**Law Offices of Anthony M. La Pinta**
200 Vanderbilt Motor Parkway
Suite C-17
Hauppauge, NY 11788
631-231-1199
*Attorneys for Defendant Thomas Spota*

**WICKS**, Magistrate Judge:

Plaintiff Samuel White ("Plaintiff") commenced this Section 1983 civil rights action against Suffolk County, former District Attorney Thomas Spota, and various other defendants (collectively, the "County Defendants") on March 21, 2020, seeking monetary damages and non-monetary relief for alleged violations of due process and equal protection, false arrest, malicious prosecution, denial of a fair trial, failure to intervene, denial of right to counsel, fabrication of evidence, presentation of false evidence to the grand jury and an appellate court, conspiracy, and failure to train or supervise. (*See* ECF No. 87.) In her March 31, 2023 Order granting in part and denying in part Defendants' respective dismissal motions (ECF No. 96, 97), District Judge Joanna Seybert returned this case to the undersigned to preside over the discovery phase of this action. (*See* ECF No. 130.) In January 2024, this case was re-assigned to District Judge Ramon E. Reyes, with the undersigned still presiding over discovery and pretrial matters. (*See* Electronic Entry dated January 23, 2024.)

On February 27, 2024, following a status conference with the parties, the undersigned directed the County Defendants to "produce the outstanding *Monell* discovery as it relates to the Federal Criminal investigation and case in which Defendant Spota was a party (the "Outstanding *Monell* Discovery")," and, in light of the County Defendant's admission on the record to being in possession of the Outstanding *Monell* Discovery,[1] further stated the Court would "consider an application for costs from Plaintiff's Counsel for having to continue to pursue these materials." (ECF No. 160.) Plaintiff's Counsel filed her First Motion for Sanctions on March 22, 2024 (ECF

---

[1] The County Defendants previously represented that they were not in possession of these materials, and were directed by the Court to provide Plaintiff with a sworn affidavit stating so. *See* ECF No. 90; Electronic Order dated November 13, 2021.

No. 171) and Second Motion for Sanctions on April 10, 2024.[2] (ECF No. 177.) The County

Defendants subsequently moved to seal two documents attached to Plaintiff's Counsel's Second

Motion – at ECF No. 177-2 and 177-3 (ECF No. 179) – arguing that these documents are

covered by the Confidentiality Order issued by the undersigned on July 21, 2023. (ECF No.

141.)[3] On April 27, 2024, the County Defendants additionally filed a Motion to Compel

discovery in the form of documents requested by Defendants' damages expert. (ECF No. 187.)

Accordingly, the latest motions before the Court are: (i) the County Defendants' Motion to Seal

(ECF No. 179), which is opposed by Plaintiff (ECF No. 180), and (ii) the County Defendant's

Motion to Compel (ECF No. 187), which is also opposed by Plaintiff (ECF No. 188).[4] For the

reasons that follow, both motions are **DENIED**.

---

[2] The undersigned declines to address the merits of Plaintiff's Motions for Sanctions at this juncture in light of the Oral Argument scheduled for May 31, 2024 to address both Motions. (*See* Electronic Order dated April 22, 2024.)

[3] The Confidentiality Order at ECF No. 141 (hereafter, the "Confidentiality Order") was reinstated by Judge Reyes on March 13, 2024. (*See* Electronic Order dated March 13, 2024.) The Confidentiality Order defines certain documents as "confidential" in this matter including, *inter alia*, Internal Affairs Reports. *See* ECF No. 141 at ¶ 2(b) (emphasis added) ("Confidential document is defined to mean Suffolk County Police Department personnel files, Internal Affairs Reports, Autopsy Report of Edwin Rivera, Jr., Medical Records of the plaintiff Samuel White, and any materials in possession of the County defendants received from the U.S. Attorney's Office related to defendant Spota *that are not otherwise available to the public*."). This Confidentiality Order specifically directs the following with respect to any "confidential documents" in ¶ 2(c): "Counsel will produce for inspection and use one copy of each confidential document to each of the other counsel. Counsel and parties are prohibited from making their own copy of any confidential document or portions thereof given to them pursuant to this Order, except for; (1) use as an exhibit to a paper filed in this litigation under paragraph (h); (2) for internal working copies to be utilized by counsel; and (3) for use at depositions or trial." *Id*. at ¶ 2(c). Paragraph "h" referenced therein, in pertinent part, specifically states that "[i]n the event that any party wishes to use a confidential document or any confidential information therein in any paper filed in this litigation, such paper (or part thereof containing the confidential document or confidential information) shall be filed under seal." *Id*. at ¶ 2(h).

[4] The undersigned acknowledges Plaintiff's Ninth Motion to Compel (ECF No. 182) is also pending before the Court, but declines to address the merits of Plaintiff's Motion at this juncture in light of the Oral Argument scheduled for May 31, 2024 at which time it will be addressed. (*See* Electronic Order dated April 22, 2024.)

## **BACKGROUND**

The Court assumes the parties' familiarity with the factual and procedural background of this case, as articulated in the undersigned's Report and Recommendation (ECF No. 124), District Judge Joanna Seybert's Partial Adoption Order (ECF No. 130), District Judge Reyes's Order Granting County Defendants' Motion for Protective Order (Electronic Order dated March 13, 2024), and the undersigned's Order granting the FBI's Motion for Reconsideration (Electronic Order dated April 9, 2024). Thus, only the facts relevant to the County Defendants' Motion to Seal and Motion to Compel are outlined below.

Plaintiff filed his Second Motion for Sanctions on April 10, 2024, seeking a default judgment against the County Defendants "for their willful and unrelenting disregard of discovery orders." (ECF No. 177.) Two attachments to the Motion, ECF Nos. 177-2 and 177-3, contain sequential pages of an Internal Affairs report related to the Thomas Moroughan case (the "Moroughan IA Report") disclosed by the County Defendants to Plaintiff in discovery, and written about in *Newsday*. (ECF Nos. 177-2, 177-3, 177-4.) Specifically, a report in *Newsday* was published referencing – and publishing portions of – the Moroughan IA Report, describing how Suffolk County law enforcement officials hand-wrote notes calling for the deletion of critical material from the Report. (ECF No. 177-4.)[5]

On April 11, 2024, the County Defendants moved to seal ECF Nos. 177-2 and 177-3, arguing that those documents are Internal Affairs records subject to the Confidentiality Order, and Plaintiff's counsel attached them as exhibits to her filing on the public docket in violation of that Order. (ECF No. 179.) In response, Plaintiff's counsel argues that "these documents were

---

[5] *See* David M. Schwartz, *Inside Internal Affairs: Secret file reveals 'cover up of a cover up' in unjustified police shooting, arrest of innocent man*, NEWSDAY, Feb. 10, 2022, https://projects.newsday.com/long-island/suffolk-police-nassau-cover-up/.

4

marked restricted and removed from public view nearly immediately after uploading" and,

nevertheless, the documents "do not fall under the protection of" the Confidentiality Order

because: (i) the Moroughan IA Report was in the possession of *Newsday* in or before February

2022, and, therefore, cannot be deemed "confidential" under paragraph 2(b) of the Order, which

specifically excludes information "otherwise available to the public[,]" and (ii) the

Confidentiality Order, initially signed July 21, 2023,  "is not retroactive" and the two pages in

question were received by Plaintiff's counsel "approximately one year prior to the initial entry of

the Order." (ECF No. 180.)[6] Plaintiff further maintains that "[w]hile that is enough to take the

documents out of the strictures of [the Confidentiality Order] alone, *Newsday* actually published

parts of the report in its February 10, 2022 article, which has also been uploaded at [ECF No.]

177-4." (*Id*.)

On April 27, 2024, the County Defendants filed their Motion to Compel discovery in the

form of documents requested by Defendants' damages expert. (ECF No. 187.) Specifically, the

County Defendants seek an order compelling Plaintiff to produce personal and business tax

returns, as well as various documents pertaining to his alleged businesses:

- Personal Income tax returns for Plaintiff (2013 – 2023)
- Income tax returns for American Waste & Recycling, LLC (2013 – 2019)
- Income tax returns for Legend Waste Service, Inc. (2019 – 2023)
- Information supporting [Plaintiff's] partnership interest in American Waste & Recycling, LLC
- Information supporting the transition of ownership of American Waste & Recycling, LLC to [Plaintiff]; and
- Information on *Legend Waste Service, Inc. vs. the Town of Islip*. [INDEX NO. 000107/2021]

---

[6] Plaintiff's Counsel argues Plaintiff's possession of Moroughan IA Report prior July 21, 2023 "is illustrated by [the] substantial use of the document and questioning surrounding this same *Newsday* article in our April 2022 deposition of Alexander Crawford." *See* ECF No. 180; *see also* ECF No. 115 at 191.

(hereafter, the "Damages Documents"). (*Id.* at 2.) The County Defendants claim Defendants' retained economic damages expert, Mark Gottlieb, requested this information "that is necessary to complete his rebuttal expert report." (*Id.* at 1.)[7] The County Defendants argue that the Damages Documents "are necessary to assess the true value of" Plaintiff's economic loss, which is alleged to be in excess of $108 million. (*Id.* at 3.)[8] They further maintain that the legal standard applicable to a request for tax returns[9] is satisfied because "these tax returns are most certainly relevant to the subject matter of the action as Plaintiff is claiming over $100 million in economic damages—lost income—in this case" and "the information contained therein regarding his personal and his business income is not otherwise readily obtainable." (*Id.*)

In opposition, Plaintiff argues that the Damages Documents are not "expert discovery" as "'[e]xpert discovery is narrowly construed to include the disclosure of experts and their reports,

---

[7] The County Defendants claim that on April 15, 2024, Counsel received an e-mail from Mr. Gottlieb requesting a multitude of additional documents he required to continue with their engagement, and 18 of said documents were listed as mentioned in Plaintiff's damages expert report from Sobel Tinari (the "Tinari Report"), of which Defendants were only in possession of 16. (ECF No. 187 at 1.) The remainder of the documents Mr. Gottlieb indicated he needed for his analysis – the Damages Documents – are not documents that were ever in Defendants' possession and Defendants did not previously request these documents in fact discovery, which concluded on December 1, 2023. (*Id.*; ECF No. 140.) Plaintiff's counsel agreed to provide Defendants with the two documents which were missing from her prior disclosures that were referenced in the Tinari Report, but took the position that she would not turn over the Damages Documents. (*Id.*) The undersigned further notes that the deadline for identification of rebuttal experts and service of Rule 26 expert disclosures was May 2, 2024, and the deadline for expert discovery is June 14, 2024. (ECF No. 160.) The County Defendants maintain that the Damages Documents constitute "expert discovery." (ECF No. 187 at 3.)

[8] The County Defendants concede that the Tinari Report does not rely on the Damages Documents in making its assessments. *See id.* ("The Sobel Tinari report from Plaintiff's 'Expert' assesses Plaintiff's economic loss to be in excess of $108 million. While it is unclear how any expert could assess an individual's economic loss without access to both personal and business tax returns to ascertain their annual income and worth, Sobel Tinari appears to have solely taken Plaintiff's word for his worth without access to documents.").

[9] A two-prong test must be satisfied for a Court to order disclosure of tax returns: "first, the court must find that the returns are relevant to the subject matter of the action; and second, that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *SEC v. Cymaticolor Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985).

rather than the documents that could form the basis of an expert's report in the future.'" (ECF No. 188 at 2) (quoting *City of Almaty, Kazakhstan v. Ablyazov*, No. 115CV05345KHPAJN, 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019)). Plaintiff further argues that Defendants are not entitled to this information because "the documents are neither relevant nor necessary" to rebut the Tinari Report, which "does not contemplate them." (*Id.*) Specifically, Plaintiff identifies that the Damages Documents "are not considered [n]or referenced anywhere in [P]laintiff's expert report." (*Id.*) The Court considers the parties' arguments on each of Defendants' Motions in turn.

## DISCUSSION

### I.     The Motion to Seal

"[M]otions to seal documents must be 'carefully and skeptically reviewed to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("*Lugosch*") ("The common law right of public access to judicial documents is firmly rooted in our nation's history."). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc*., 121 F.3d 818, 826 (2d Cir. 1997); *In re Parmalat Sec. Litig*., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (internal citations omitted) ("The party opposing disclosure of a judicial document must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection . . . broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test.").

The Second Circuit in *Lugosch* "has articulated a three-part test for determining whether the common law right of public access attaches[:]"

> *First*, a court must determine whether the documents at issue are "judicial documents" to which a presumption of access attaches. *Second*, if the documents are judicial documents, a court must determine the weight of the presumption of access. *Third*, a court must balance "competing considerations" against the weight of the presumption of access.

*In re Tel. Media Grp. Ltd.*, No. 23-MC-215 (JGLC), 2023 WL 5770115, at *3 (S.D.N.Y. Sept. 6, 2023) (citing *Lugosch*, 435 F.3d at 119-20) (emphasis added); *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 467 (S.D.N.Y. 2017) (internal citations omitted) ("To be a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process. There is no presumption of access to documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery.")[10]

---

[10] *Preliminary*, the Court finds the Moroughan IA Report, although exchanged by the parties in discovery, is a "judicial document" to which a presumption of access attaches, as Plaintiff's Counsel has included it as an Exhibit in support of her Second Motion for Sanctions, which seeks a default judgment against the County Defendants. *See* ECF No. 177; *Under Seal*, 273 F. Supp. 3d at 469 (quoting *Lugosch*, 435 F.3d at 126) ("Generally, the presumption of access applies to all documents filed with the court. Moreover, documents filed in relation to a motion 'are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment.'"). "Dispositive motions are adjudications, and '[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" *Id.* (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)); *see also Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 204 (S.D.N.Y. 2007) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)) (collecting cases) ("[T]he Court finds, as an initial matter, that the submissions relating to the sanctions proceeding—including the Order to Show Cause, plaintiff's response thereto, and the instant Order—are 'judicial documents.' Specifically, it is beyond doubt that the items at issue are clearly 'relevant to the performance of the judicial function,' insofar as it relates to the Court's duty under Rule 11 to determine 'whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate.'"). Moreover, because the Moroughan IA Report is an "item[] relating to the sanctions proceeding in this action" and "come[s] within the court's purview for the essential purpose of permitting this Court to perform its Article III duties of deterring abuses of the judicial process and imposing sanctions to achieve that end, if necessary[,]" the Court finds the Report "must be accorded a strong presumption of public access." *Id.* at 205 (internal citations and quotations omitted).

"In addition to the common law right of access, there is also a qualified First Amendment right to access judicial documents." *Id.* (citing *Lugosch*, 435 F.3d at 120). "Under the First Amendment 'experience and logic' test, the court must consider *whether the documents have historically been open to the press and general public* and whether public access plays a significant positive role in the functioning of the particular process in question." *Id*. (internal citations omitted) (emphasis added). "If a First Amendment right of access applies, documents may only be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id*. (internal citations omitted).

Relevant here, "[t]he fact that a document is restricted by a protective order 'has no bearing on the presumption of access that attaches when it becomes a judicial document.'" *In re Tel. Media Grp. Ltd*., No. 23-MC-215 (JGLC), 2023 WL 5770115, at *5 (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 289–90 (S.D.N.Y. 2016)) ("The presumption of public access is not diminished just because certain information has been subject to a protective order."); *Dodona I, LLC v. Goldman, Sachs & Co*., 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015) ("[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order ... that same material might not overcome the presumption of public access once it becomes a judicial document."). To this end, the County Defendants' citations to the Confidentiality Order "do not satisfy *Lugosch* and are, in any event, insufficient to overcome the presumption of access[,] as the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure is reasonable." *In re Tel. Media Grp. Ltd*., No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6.

Furthermore, the Court is aware that the "intimate details" of the Moroughan IA Report have already been disclosed to the public, as significant portions of the Report have been published and written about in *Newsday*. *Id*.[11] The "prior public disclosure of the information that [the County Defendants] seek[] to seal here is *fatal* to [their] sealing motion." *Id*. (collecting cases) (emphasis added); *Campbell v. City of New York*, No. 16-CV-8719 (AJN), 2021 WL 826899, at *10 (S.D.N.Y. Mar. 4, 2021) (collecting cases) (holding that because the information seeks to redact has already been made public, the presumption of public access to judicial documents was not overcome and noting: "[r]arely, if ever, can the presumption of public access be overcome when the information has already been made public."); *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2019 WL 10892081, at *3 (S.D.N.Y. Sept. 27, 2019) ("Information that is publicly available need not be sealed."); *Sparman v. Edwards*, 325 F. Supp. 3d 317, 319 (E.D.N.Y. 2018) ("The Court can conceive of no justification to seal an opinion that is readily available in the public domain."); *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. 2013) (collecting cases) ("Any countervailing privacy interest of [Defendant] cannot defeat the strong presumption of public disclosure where the material it seeks to seal is already in the public domain."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again."); *Centauri Shipping Ltd.*, 528 F. Supp. 2d at 205 (declining to seal the Order to Show Cause, which "ha[d] already been the subject of an article in a maritime publication"). At bottom, the publication of the

---

[11] As the Report has been disclosed to the public, it is not subject to the Confidentiality Order. *See* ECF No. 141 at ¶ 2(b) (emphasis added) ("Confidential document is defined to mean Suffolk County Police Department personnel files, Internal Affairs Reports, Autopsy Report of Edwin Rivera, Jr., Medical Records of the plaintiff Samuel White, and any materials in possession of the County defendants received from the U.S. Attorney's Office related to defendant Spota *that are not otherwise available to the public*.").

information in the public domain sounded the death knell to any claim that the documents should

be sealed.

Accordingly, because the County Defendants have "not met [their] burden to demonstrate

that countervailing factors outweigh the presumption of public access" afforded to the

Moroughan IA Report, the Court denies their Motion to Seal ECF No. 177-2 and 177-3. *In re*

*Tel. Media Grp. Ltd*., No. 23-MC-215 (JGLC), 2023 WL 5770115, at *6 ("Because the common

law framework is dispositive of the motion to seal, the Court need not undertake the First

Amendment analysis.").

## II.    The Motion to Compel

Defendants claim the Damages Documents are "expert discovery," and seek an Order

compelling the production of those documents in order for their expert to prepare a rebuttal

report. *See* ECF No. 187 at 3. "Expert discovery is narrowly construed to include the disclosure

of experts and their reports, rather than the documents that could form the basis of an expert's

report in the future." *City of Almaty, Kazakhstan v. Ablyazov*, No. 115CV05345KHPAJN, 2019

WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019) (denying defendant's motion to compel valuations of

one of its real estate investments at issue in the case where defendant did not support its

proposed classification of the valuations as expert discovery, and noting that if the Court

accepted defendant's contention "fact discovery could continue long after the close of fact

discovery, so long as such discovery were made for purposes of developing expert reports");

*Henry v. Quicken Loans Inc.*, No. 04-40346, 2008 WL 4735228, at *6 (E.D. Mich. Oct. 15,

2008) ("[B]ased on the design of the Federal Rules of Civil Procedure, there is an apparent

presumption that data for an expert report should be gathered during fact discovery and that the

extended deadline for the expert report is provided to give the expert time to thoroughly analyze

the collected data."); *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 14 (2007) ("[E]xpert opinions are to be distinguished from the facts upon which they rely.").

Indeed, it is well established that "[e]xpert discovery includes a burden to produce [only] 'the data or other information considered by the witness in forming' his or her expert opinion." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 00 MDL 1898 (SAS), 2009 WL 2003382, at *2 (S.D.N.Y. June 30, 2009) (quoting Fed R. Civ. P. 26(a)(2)(B)(ii)) (collecting cases) ("[C]ourts have embraced an objective test that defines 'considered' as anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed."). "If a document received or authored by an expert is not relevant to the subject matter of the expert's report, it is not subject to disclosure." *Id*.

Likewise, "Federal Rule of Civil Procedure 26 allows rebuttal expert testimony 'intended solely to contradict or rebut evidence on the same subject matter identified by another party.'" *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 1405185, at *2 (S.D.N.Y. Apr. 14, 2021) (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (A rebuttal's scope "is limited to the same subject matter encompassed in the opposing party's expert report"). "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party[,]" however, "[a] rebuttal expert report is *not* the proper place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice" nor "is a rebuttal report an opportunity to correct oversights in the party's case in chief." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 03 Civ. 1851 (NGG) (RML), 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13,

2008); *Ebbert v. Nassau Cnty.*, No. CV 05-5445, 2008 WL 4443238, at \*13 (E.D.N.Y. Sept. 26, 2008) (citation omitted); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, No. 18-MC-2859 (PAC), 2021 WL 1405185, at \*2 (collecting cases).

Here, the County Defendants "did not cite to any case law . . . to support [their] proposed classification of the [Damages Documents] as expert discovery[,]" and have not otherwise met their burden of "showing good cause to justify why *fact* discovery should be reopened."[12] *City of Almaty, Kazakhstan*, No. 115CV05345KHPAJN, 2019 WL 275701, at \*2. Moreover, it is undisputed that the Tinari Report does *not* rely on or contemplate the Damages Documents in making its assessments. *See* ECF No. 187 at 3. Therefore, Plaintiff is not required to produce the Damages Documents well past the fact-discovery deadline for the purpose of allowing Defendants' expert to complete his rebuttal report. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (expert reports must contain "the facts or data considered by the witness in forming them"); *Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 CIV. 09546LMMTHK, 2007 WL 4157163, at \*12 (S.D.N.Y. Nov. 16, 2007) (noting that "[w]hile an expert is required to produce any material he considered or relied on in preparing his report," plaintiff's expert did not rely on his notes, as he tossed them out immediately after his meeting and before he began preparing his report, and therefore plaintiff was not required to produce them). To the extent Defendants seek to challenge the Tinari Report's findings, they have the ability to do so at a later point through a *Daubert*

---

[12] When a party requests an extension of a discovery deadline after the deadlines in fact have passed, they must file a motion under Fed. R. Civ. P. 6(b)(1)(B) to re-open discovery. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . .on motion made after the time has expired."). Therefore, the County Defendants were required – and failed to make – a motion to re-open discovery in this case. *See Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 514 (E.D.N.Y. 2018) (internal quotations and citations omitted) ("A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery.").

motion. *See e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018) ("Under the Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), we have a gatekeeping function under Rule 702, under which we are charged with the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). Accordingly, Defendants' Motion to Compel the Damages Documents is denied.

## **CONCLUSION**

For the reasons stated, the County Defendants' (1) Motion to Seal (ECF No. 179) and Motion to Compel (ECF No. 187) are both **DENIED**. Defendants are directed to serve Plaintiff their rebuttal expert reports by May 31, 2024.   The remaining dates set at the prior conference (*see* ECF No. 160) remain in place and are unaffected by this Order.

Dated: Central Islip, New York
May 20, 2024

S O   O R D E R E D:

/S/  *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge