**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
SAMUEL WHITE,

                            *Plaintiff*,

                 -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, RONALD TAVARES,
MICHAEL MILAU, SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE, DARRYL LEVY, LAURA
NEWCOMBE, THOMAS SPOTA, JOHN DOES
1-10, TIMOTHY SINI, OFFICE OF THE MEDICAL
EXAMINER CRIME LABORATORY (SUFFOLK
COUNTY), HELEN WONG, ODETTE R. HALL,
M.D., JOHN PETERSON and JAMES MCGUINESS,

                          *Defendants*.
-------------------------------------------------------------X

                                 **MEMORANDUM**
                                **AND ORDER**
                      20-CV-1501 (RER)(JMW)

**A P P E A R A N C E S:**

        Stephanie McClure, Esq.
        **Law Office of Stephanie McClure**
        101 Avenue of the Americas, 9th Floor
        New York, NY 10013
        *Attorney for Plaintiff*

        Stacy A. Skorupa, Esq.
        **Suffolk County Department of Law**
        H. Lee Dennison Building
        100 Veterans Memorial Highway
        Hauppauge, NY 11788
        *Attorneys for All Defendants (except Thomas Spota)*

        Anthony M. LaPinta, Esq.
        Kyle O.Wood, Esq.
        **Law Offices of Anthony M. La Pinta**
        200 Vanderbilt Motor Parkway
        Suite C-17
        Hauppauge, NY 11788
        631-231-1199
        *Attorneys for Defendant Thomas Spota*

**WICKS**, Magistrate Judge:

> *Something is rotten, but contrary to Marcellus's suggestion to Horatio,*
> *it's not in Denmark. Rather, it's in discovery in modern federal civil*
> *litigation right here in the United States.*[1]

Plaintiff Samuel White ("Plaintiff") commenced this Section 1983 civil rights action against Suffolk County, various other defendants (collectively, the "County Defendants") and former District Attorney Thomas Spota (collectively, "Defendants") on March 21, 2020, seeking monetary damages and non-monetary relief for alleged violations of due process and equal protection, false arrest, malicious prosecution, denial of a fair trial, failure to intervene, denial of right to counsel, fabrication of evidence, presentation of false evidence to the grand jury and an appellate court, conspiracy, and failure to train or supervise. (*See* ECF No. 87.) In her March 31, 2023 Order granting in part and denying in part Defendants' respective dismissal motions (ECF No. 96, 97), District Judge Joanna Seybert returned this case to the undersigned to preside over the discovery phase of this action. (*See* ECF No. 130.) In January 2024, this case was re-assigned to District Judge Ramon E. Reyes, with the undersigned still presiding over discovery and pretrial matters. (*See* Electronic Entry dated January 23, 2024.)

Plaintiff has embarked on a seemingly never-ending quest for three categories of discovery documents and, as it turns out, the pursuit was not in the least Quixotic. Rather, the conduct Plaintiff complains of here – where the County repeatedly and adamantly denied possession of documents -- is reminiscent of the words uttered by Queen Gertrude in *Hamlet*, namely, "the lady doth protest too much, methinks." The three categories sought are: (i) certain Internal Affairs files of non-defendant officers, as relating to Plaintiff's claim under *Monell v. Dep't of Soc.Servs.* of City of N.Y., 436 U.S. 658, 707 (1978) (the "*Monell* discovery"); (ii)

---

[1] *Sec. Nat. Bank of Sioux City, Iowa v. Abbott Labs.*, 299 F.R.D. 595, 596 (N.D. Iowa 2014).

Internal Affairs files which pertain to any officer involved in the thirteen specifically identified

case files, identified earlier in discovery litigation – specifically, litigation documents including

electronic copies of any depositions, sworn statements, signed statements, answers to

interrogatories or responses to requests for admissions (the "Internal Affairs files"); and (iii)

any/all documents that pertain to the federal criminal case against Defendant Thomas Spota (the

"Spota Documents"). *See* ECF No. 149 at 4. On February 27, 2024, following a Status

Conference with the parties, the undersigned directed the County Defendants to "produce the

outstanding *Monell* discovery as it relates to the Federal Criminal investigation and case in which

Defendant Spota was a party (the "Outstanding *Monell* Discovery")," and, in light of the County

Defendant's admission on the record to being in  possession of the Outstanding *Monell*

Discovery,[2] further stated the Court would "consider an application for costs from Plaintiff's

Counsel for having to continue to pursue these materials." (ECF No. 160.) Plaintiff filed his First

Motion for Sanctions on March 22, 2024 (ECF No. 171) and Second Motion for Sanctions on

April 10, 2024. (ECF No. 177.)  Plaintiff additionally filed a "Ninth" Motion to Compel (ECF

No. 182) discovery previously ordered by this Court on February 27, 2024, and March 5, 2024,

arguing that Defendants' production of said discovery was deficient. *See* ECF No. 160;

Electronic Order dated March 5, 2024.

Accordingly, the latest motions before the Court are Plaintiff's: (i) First Motion for

Sanctions as against the County Defendants (ECF No. 171), (ii) Second Motion for Sanctions as

against the County Defendants (ECF No. 177), and (iii) "Ninth" Motion to Compel (ECF No.

---

[2] The County Defendants previously represented that they were not in possession of these materials, and were directed by the Court to provide Plaintiff with a sworn affidavit stating so. *See* ECF No. 90; Electronic Order dated November 13, 2021. The Court notes that Counsel for Defendant Spota, unlike the Counsel for the County Defendants, previously represented to the Court to being in possession of relevant documents, but declined to disclose them on privilege grounds. *See* ECF No. 94.

182), all of which are opposed by Defendants (*see* ECF Nos. 185, 186).  For the reasons that

follow, Plaintiff's First Motion for Sanctions (ECF No. 171) is **GRANTED** *in part* and

**DENIED** *in part*, Plaintiff's Second Motion for Sanctions (ECF No. 177) is **GRANTED** *in part*

and **DENIED** *in part*, and Plaintiff's Ninth Motion to Compel (ECF No. 182) is **GRANTED**.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of

this case, as articulated in the undersigned's Report and Recommendation (ECF No. 124),

District Judge Joanna Seybert's Partial Adoption Order (ECF No. 130), District Judge Reyes's

Order Granting County Defendants' Motion for Protective Order (Electronic Order dated March

13, 2024), and the undersigned's Order granting the Federal Bureau of Investigation's ("FBI")

Motion for Reconsideration (Electronic Order dated April 9, 2024). Thus, only the facts relevant

to Plaintiff's Sanctions Motions and Motion to Compel are outlined below.

Plaintiff filed his First Motion to Compel on April 15, 2021 (ECF No. 69), seeking

*Monell* discovery, as well as records regarding the investigation of Mr. Spota, a surveillance

video of the subject incident, and an underlying criminal file of Plaintiff, which was granted in

part and denied in part. (ECF Nos. 69, 90.) As to the portion concerning the scope of *Monell*

discovery, this Court held:

> Plaintiff's motion to compel *Monell*-related discovery is granted in part as follows:
> Plaintiff shall provide Defendants with a list articulating the specific types of case files
> that are being sought, tailored to the claims being asserted in this case, on or before
> November 19, 2021, and Defendants shall respond on or before December 20, 2021. To
> the extent that Defendants do not have responsive documents, Defendants shall provide
> an affidavit stating so. This includes the demands for *Monell* discovery pertaining to
> Defendant Thomas Spota. As to Plaintiff's request for *Monell* discovery pertaining to the
> Keith Bush file and Martin Tankleff file, that is denied without prejudice, on the basis of
> Rule 26's prescription of proportionality.

(ECF No. 90.) Plaintiff filed a Second Motion to Compel discovery on December 31, 2021 (ECF No. 98), requesting Internal Affairs files from 2002 through July 2019 for 11 specific categories: Abuse of Authority, Biased Policing, Bribery/Official Misconduct, Civil Rights Violation-Other, Excessive Force, Fail to Perform Duty, False Arrest, Illegal Search/Seizure, Improper Supervision, Lying/False Statement, and Misconduct. (*See* ECF Nos. 105, 108, and 98.) Defendants subsequently agreed to: (i) provide files for each of the named Defendants that relate to the nature of the claims, regardless of outcome and substantiated findings; and (ii) provide Internal Affairs files for nondefendant officers that relate to the nature of the claim dating back to 2008 (*more than 10 years prior* to the filing of the Complaint) – however, Defendants "disputed whether Plaintiff [was] entitled to *Monell* discovery dating back to 2002 related to non-defendant officers, and whether the Internal Affairs files for non-defendant officers shall include all files whether substantiated or not." (*See* ECF Nos. 107, 111.) This Court granted Plaintiff's Second Motion to Compel *Monell* discovery in part[3], ordering Defendants to produce:

> Named Defendants: the requested files that relate to the nature of the claim (*i.e.*, the 11 specific categories Plaintiff identified), regardless of outcome and substantiated findings for any allegation, for the entire career of each named Defendant (*Defendants have already agreed to provide such* (*See ECF No. 107)*).

> Non-Defendant Officers: Internal Affairs files that relate to the nature of the claim (i.e., the 11 specific categories Plaintiff identified), dating back to 2008 (*Defendants have already agreed to provide such (See ECF No. 107)*). Records dating back to 2014 shall include all records regardless of outcome and substantiated findings for any allegation.

(ECF No. 111.)

On November 19, 2023, Plaintiff filed his Third Motion to Compel (ECF No. 144), seeking *Monell* discovery, Internal Affairs files, and Spota Documents. Plaintiff argued Defendants did not produce five out of the eleven "categories" of Internal Affairs files –

---

[3] The Court denied Plaintiff's request for records dating back to 2002. (ECF No. 111.)

specifically documents relating to 1) Biased Policing; 2) Bribery and Official Misconduct; 3) Civil Rights; 4) Illegal Search and Seizure; and 5) Lying / False Statement – and, Defendants' production only included Internal Affairs files from 2014-2016, in violation of this Court's Order directing Defendants to provide all Internal Affairs files dating back to 2008. (*See* ECF Nos. 144, 111.) Plaintiff additionally argued Defendants' production "should have included those Internal Affairs files which pertain to any officer involved in the 'thirteen specifically identified case files' identified earlier in discovery litigation." (ECF No. 144.) With respect to these thirteen cases, Plaintiff claimed that Defendants' production was incomplete, and requested "litigation documents, including electronic copies of any depositions, sworn statements, signed statements, answers to interrogatories, or requests for admission" that are in "in the possession of any/all of the County Attorneys' clients." (ECF No. 144 at 1-2.)

Plaintiff also challenged Defendants' production of "any and all documents that pertain to the federal criminal case against Mr. Spota." (ECF No. 144.) This Court had previously ordered former defense counsel to the County Defendants – Assistant County Attorney Brian Mitchell[4] – to provide the documents, and, specifically, to provide Plaintiff's counsel with an Affidavit from a person conducting a search for the documents and the result of it. (ECF Nos. 90, 100, 144.)[5]

---

[4] Mr. Mitchell moved to withdraw as attorney for the County Defendants on December 30, 2022, in light of his retirement, which was granted by the undersigned on January 4, 2023. (ECF No. 129; Electronic Order dated January 4, 2023.) Assistant County Attorney Stacy A. Skorupa replaced Mr. Mitchell as Counsel for the County Defendants. (*Id.*)

[5] This Court issued the mentioned Orders as a result of Mr. Mitchell's claims that "none of his clients had any documents relating to that matter." (ECF Nos. 90, 144-2.) Specifically, on November 9, 2021, the undersigned directed Plaintiff "to provide Defendants with a list articulating the specific types of case files that are being sought, tailored to the claims being asserted in this case, on or before November 19, 2021" and directed Defendants to respond on or before December 20, 2021. (ECF No. 90.) The undersigned further directed: "To the extent that Defendants do not have responsive documents, Defendants shall provide an affidavit stating so. This includes the demands for *Monell* discovery pertaining to Defendant Thomas Spota." (*Id.*) The undersigned denied "Plaintiff's request for records pertaining to the federal investigation and prosecution of Defendant Thomas Spota" without prejudice, noting that "Plaintiff ha[d] alternative routes to pursue such discovery *in the face of Defendant's*

Plaintiff's Counsel stated that Mr. Mitchell provided her an Affidavit, which she attached to her Third Motion to Compel, from a person who searched for documents pertaining to the "discipline, firing, or termination" of Thomas Spota. (ECF No. 144.) Specifically, Mr. Mitchell provided Plaintiff's Counsel with an Affidavit from Richard Weinschenk, Deputy General Counsel of the Suffolk County District Attorney's Office, who attested that: "[a] search was conducted for responsive documents and the only records located that related to the inquiry were emails. An inter-office communication, and a letter of resignation, which were located in Mr. Spota's personnel file. No other responsive documents were located." (ECF No. 144-3.)

The undersigned declined to address the merits of Plaintiff's Third Motion to Compel due to the parties' failure to meaningfully meet and confer prior to raising the discovery dispute with the Court, and ultimately denied the Motion without prejudice and with leave to renew. (ECF No. 49 at 18.)[6] On January 26, 2024, Plaintiff filed a Fifth Motion to Compel (mislabeled as a "Seventh" Motion), again seeking *Monell* discovery (contained on a "thumb drive"), Internal Affairs files (contained on a "DVD/CD"), and Spota Documents, arguing that Defendants' previous production of said documents was deficient. (ECF No. 151.) With respect to the

---

*representation it does not have possession, custody or control of anything further to be produced.*" (*Id.*) (emphasis added). On November 12, 2021, Defendant Spota indicated via Letter to the Court that he was in possession of materials related to the federal criminal case against him, but that he declined to produce the material on privilege grounds. *See* ECF No. 94. On November 13, 2021, the undersigned directed Plaintiff to "provide the County Defendants with a list articulating the documents sought pertaining to Defendant Spota, tailored to the claims being asserted in this case, on or before November 19, 2021" and further noted: "To the extent that County Defendants do not have responsive documents, Defendants shall provide an affidavit stating so." (*See* Electronic Order dated November 13, 2021.) Again, on January 25, 2022, the undersigned directed the County Defendants to "provide the outstanding affidavit pertaining to Plaintiff's discovery requests related to Defendant Spota, on or before February 11, 2022." (ECF No. 100.)

[6] Plaintiff additionally filed a Fourth Motion to Compel on December 19, 2023, reiterating the same discovery requests made in her Third Motion to Compel. (ECF No. 148.) The undersigned denied Plaintiff's Fourth Motion as moot in light of its December 19, 2023 Order, without prejudice and with leave to renew. (ECF No. 149; Electronic Order dated December 19, 2023.)

outstanding *Monell* discovery as it relates to the Federal Criminal investigation and case in which Mr. Spota was a party, along with several other SCPD Officers, Plaintiff argued that the deposition of Alexander Crawford of the Suffolk County Internal Affairs Department (the "Crawford Deposition") revealed that the County did fact have material relevant to that federal criminal case and investigation as early as January 2020, despite previous representations from the County to both Plaintiff's Counsel *and* the Court that they were not in possession of these documents. (*See* ECF Nos. 115, 151.)[7]

On February 27, 2024, at a Status Conference with the parties, the Court addressed Plaintiff's "Seventh" Motion to Compel (ECF No. 151). After the undersigned confronted Counsel for the County Defendants with the Crawford Deposition, the County Defendants admitted on record to being in possession of discovery relating to the Federal Criminal investigation and case in which Defendant Spota was a party, which the undersigned deemed as part of the "Outstanding *Monell* Discovery." (ECF No. 160.) The undersigned subsequently granted Plaintiff's "Seventh" Motion to Compel (ECF No. 151) as follows:

> Counsel for the County of Suffolk Defendants is directed to: (i) serve on Plaintiff's Counsel and file on ECF an updated thumb drive, along with a comprehensive index of its contents, on or before March 4, 2024; (ii) hand deliver the DVDs to Plaintiff's Counsel and file an Affidavit of Service on ECF on or before March 22, 2024; (iii) produce the outstanding *Monell* discovery as it relates to the Federal Criminal investigation and case

---

[7] On February 22, 2022, this Court ordered "the deposition of the County to take place on the issues of search, review and production of Internal Affairs records, namely the 11 categories Plaintiff has identified as directly relating to his claims in this matter, and the County's 'Concise Officer History' database/documents." (ECF No. 106.) Specifically, the Court directed Plaintiff to "serve a Rule 30(b)(6) notice for the deposition at which the County will produce Mr. Alexander Crawford. The notice shall specify the categories of inquiry. Mr. Crawford's deposition shall be completed on or before 4/15/2022." (*Id.*) Plaintiff's Counsel took Mr. Crawford's deposition on May 2, 2022. (ECF No. 115.) Mr. Crawford testified that the County was in possession of documents related to the federal criminal investigation of Mr. Spota as early as January 2020: "[T]here was a request from Commissioner Hart that was made to the FBI for whatever documentation they could share and, yes, there was some documentation that was provided to the police department." (*See* Crawford Deposition Transcript, ECF No. 115 at 221.)

in which Defendant Spota was a party (the "Outstanding *Monell* Discovery") on or before March 4, 2024.

In light of the County of Suffolk Defendants' admission regarding the Outstanding *Monell* Discovery, the Court will consider an application for costs from Plaintiff's Counsel for having to continue to pursue these materials. On or before March 20, 2024, the parties are directed to file a Joint Status Report advising the Court if the thumb drive issue raised by Plaintiff's Counsel at ECF No. 151 (the "Thumb Drive Dispute") has been resolved. If any disagreements remain over the contents of the thumb drive, the parties are directed to appear, with the thumb drive and personal computers, for an in-person Status Conference scheduled for March 26, 2024, at 1:30 PM at the United States District Court, Eastern District of New York, 100 Federal Plaza, Courtroom 1020, Central Islip, New York. If the Thumb Drive Dispute is reported as resolved, the March 26 Status Conference will be cancelled.

(ECF No. 160.) On February 29, 2024, the County Defendants moved for an extension of time to complete discovery in compliance with the undersigned's February 27, 2024 Order. (ECF No. 161). The undersigned denied the County Defendants' Motion with prejudice and without leave to renew,[8] and directed the County Defendants:

[T]o serve on Plaintiff's Counsel and file on ECF an updated thumb drive, along with a comprehensive index of its contents, on or before March 11, 2024; hand deliver the DVDs to Plaintiff's Counsel and file an Affidavit of Service on ECF on or before March 22, 2024; [and] produce the outstanding *Monell* discovery as it relates to the Federal Criminal investigation and case in which Defendant Spota was a party, *including any files the County Defendants received from the FBI* (the "Outstanding *Monell* Discovery") on or before March 11, 2024.

(Electronic Order dated March 5, 2024) (hereafter, the "March 5, 2024 Order") (emphasis added). The undersigned further warned: "[f]ailure to comply with this Court's Order may result in sanctions against the County Defendants under Rule 37(b)." (*Id.*)

---

[8] The County Defendants' request was premised on the fact that there was a Renewed Motion for a Protective Order pending before this Court at ECF No 157. (ECF No. 161.) However, as the undersigned noted: "the County Defendants ha[d] not adequately explained why production of the documents outlined in this Court's February 27, 2024 Order should be delayed until such time as the Court render[ed] its decision on the renewed Motion for Protective Order at ECF No. 157." (Electronic Order dated March 5, 2024.) The County Defendants made a second application to Judge Reyes (ECF No. 164), who extended the March 11, 2024 production deadlines set by the March 5, 2024 Order to March 18, 2024. (*See* Electronic Order dated March 8, 2024.)

On March 8, 2024, the FBI—not a party to this case— filed a Motion for Reconsideration (ECF No. 163), asking this Court to partially reconsider and modify its March 5, 2024 Order denying County Defendants' Motion for Extension of Time to Complete Discovery. The U.S. Attorney's Office for the Eastern District of New York ("USAO") supplemented the FBI's Motion for Reconsideration, specifically requesting that this Court prohibit disclosure of FBI "FD-302" Reports (hereinafter "FBI Reports")[9] related to a prior federal criminal investigation of Defendant Spota. (*See* ECF No. 168). The FBI reasoned that County Defendants were not "authorized to retain or produce" any FBI documents. (ECF No. 163 at 2). As of the time of its letter motion, the FBI stated that it was "investigating the circumstances under which the County Defendants came to possess the material in question." (*Id.* at 2). According to the FBI, pursuant to the Supreme Court's decision in *U.S. ex rel. Touhy v. Ragen* ("Touhy"), not only could the Department of Justice ("DOJ") bar its employees from disseminating materials pursuant to DOJ regulations, but the County Defendants were also prohibited from producing to Plaintiff any FBI or DOJ documents pertaining to Defendant Spota's federal criminal investigation. (*See id.* at 2-3; *see also U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 467–68 (1951)). For the reasons stated in its Memorandum Order, the Court granted the FBI's Motion for Reconsideration, and provided that "The County Defendants [were] no longer obligated to produce the FBI Reports in accordance with this Court's March 5 Order." (ECF No. 175.)[10]

---

[9] FBI agents generally use "302s to memorialize interviews '[w]hen it is anticipated that the results of an interview may become the subject of court testimony.'" *Am. Oversight v. United States Dep't of Just.,* 45 F.4th 579, 585 (2d Cir. 2022) (quoting FBI, *Domestic Investigations and Operations Guide* § 18-33 (Mar. 3, 2016)). As indicated by the USAO's supplementary filing, the FBI sought to prevent disclosure of approximately forty (40) FBI Reports. (*See* ECF No. 168.)

[10] The undersigned noted that "[f]ollowing review of the parties' Joint Status Report, due by April 10, 2024 (*see* Electronic Order dated April 2, 2024), the undersigned will set dates for production of all outstanding discovery." (*Id.*) On April 10, 2024, the parties reported that the discovery dispute raised by Plaintiff at ECF No. 174 had not been resolved after a Court-ordered "meet and confer" (*see* Electronic

On March 22, 2024, Plaintiff filed his First Motion for Sanctions pursuant to Fed. R. Civ. P. 37 against the County Defendants, seeking attorney's fees "incurred specifically in conjunction with efforts and litigation undertaken to obtain certain *Monnell* and 'Spota-related' discovery." (ECF Nos. 171, 171-1 at 3.) Plaintiff contends "Federal Rule of Civil Procedure 37 makes clear that where motions to compel are litigated, the prevailing party may be permitted to recover expenses including attorney fees[,]" and that the requested attorney's fees are reasonable here. (ECF No. 171-1 at 5.) *First*, Plaintiff argues the "time and labor" spent by Plaintiff's Counsel in efforts to obtain these materials "has been extraordinary." (*Id.* at 6.) Plaintiff claims the County Defendants have "delayed for years since the original discovery order from May of 2021, ordering the discovery of the material in question. The list of relevant billing shows the efforts necessitated due to the unrelenting refusals by the [C]ounty to acknowledge possession of certain Spota-related material, turn-over material related to other litigations, and an obvious reluctance to discover certain I.A. [(*i.e.*, "Internal Affairs")] material[,]" as evidenced by the Crawford Deposition and at the February 27, 2024 Status Conference before the undersigned. (*Id.*)

*Second*, Plaintiff argues Counsel's fee of $750 per hour is reasonable, and that the "hours reflected" in Plaintiff's Counsel's billing records "reflect the attorney time that was necessary to litigate this very specific discovery issue, which, by virtue of the fact that the discovery still has not been made, is indicative of the extents to which litigation has been (and may continue to be) necessary." (*Id.* at 8.) Specifically, Plaintiff argues the attorney's fees sought are reasonable because: (i) Plaintiff's Counsel's "particular skill set as a former member of law

---

Order dated April 2, 2024), and the undersigned set a briefing schedule for Plaintiff's "renewed 'Eighth' Motion to Compel." (*See* Electronic Order dated April 11, 2024.)

enforcement and homicide prosecutor, specifically having an understanding of the inner workings and duties of any prosecuting agency, police department, and Internal Affairs bureau, as well as the particular software used by Suffolk County, have been instrumental in the pursuit of the discovery in this matter[,]" (ii) the acceptance of any long-term contingency case at the Federal level can preclude a solo attorney from accepting other cases or employment, (iii) $750/hour is Plaintiff's Counsel's standard hourly rate, (iv) the fee is contingent, and (v) Plaintiff's Counsel's background in law enforcement "has proven to be supremely important in navigating discovery in this case; not only toward what has been discovered, but critically, what has been *withheld*." (*Id*. at 8-9) (emphasis in original). Plaintiff ultimately seeks $101,525.00 in attorney's fees, and has submitted billing records dated from June 21, 2020 to March 14, 2024. (ECF No. 171-2 at 1-16.) The scope of the billing records submitted are all entries "Relating to certain *Monell*/I.A./Spota Discovery." (*Id*. at 1.)

On April 1, 2024, Plaintiff filed a Sixth Motion to Compel (mislabeled as an "Eighth" Motion), claiming that the County Defendants' production of the DVD containing Internal Affairs files was deficient. (ECF No. 174.) Plaintiff contended that "disclosure was to include transcripts and sworn statements from 13 cases (unless published on PACER)" and that the County Defendants' "disclosure only includ[ed] files that were in the possession of the County Attorney's office, as a result of the County Attorney's having litigated the matters." (*Id*. at 2.)[11] Plaintiff specifically identified that the "deposition transcript of a critical eyewitness, Risco Mention-Lewis, was missing from disclosure." (*Id*.) The undersigned denied Plaintiff's "Eighth" Motion to Compel without prejudice and with leave to renew, on the grounds that Plaintiff's

---

[11] Plaintiff claimed that the "The County Attorney acknowledged that claims and documents existed from the identified state court matters and federal filings, but it indicated that 'the County Attorney does not handle those claims and are not in possession of any documents relating to (it).'" (*Id*.)

Motion failed to include a certification that the parties met and conferred in an attempt to resolve the issues without judicial intervention, and directed the parties to meet and confer and file a status report by April 10, 2024 advising if the discovery dispute had been resolved. (*See* Electronic Order dated April 2, 2024.)

Plaintiff filed his Second Motion for Sanctions on April 10, 2024, seeking a default judgment against the County Defendants "for their willful and unrelenting disregard of discovery orders." (ECF No. 177.) Plaintiff contends that "Federal Rule of Civil Procedure 16 permits the imposition of sanctions-including those authorized by Rule 37(b)(2)(A)(ii)-(vii)- when a party fails to obey a discovery order. Sanctions include striking a pleading and rendering a default judgment against a disobedient party showing willfulness, bad faith or fault." (*Id.* at 1) (citing Fed. R. Civ. P. 37(b)(2)(A)(iii),(vi)). Plaintiff argues the County Defendants' "repeated noncompliance with Court orders is willful" such that default judgment as against them is warranted. (*Id.* at 2.) *First*, with respect to the Spota Documents, Plaintiff contends:

> For years, the [C]ounty [D]efendants vehemently denied that any defendant had any document pertaining to the Spota case or investigation. In 2021, [the Court] ordered that, if no such documents were available, someone who made a reasonable search must produce an affidavit stating so. The duty was ignored, resulting in a *second* Order being issued. Thereafter, the [C]ounty produced a half-hearted affidavit stating a search for documents was performed relating to Spota's hiring, firing, or discipline (only) which clearly evaded the discovery question. Thereafter, [the Court] ordered the deposition of Alexander Crawford. It was at that deposition that Crawford testified he had been in possession of documents relating to Spota since January of 2020.

> After two years of denying his clients had any documents relating to defendant Spota, Brian Mitchell finally acknowledged Crawford's testimony and waived privilege over those documents, in writing.[12] In no uncertain terms, Mitchell advised he would be

---

[12] Plaintiff is referencing email correspondence between Plaintiff's Counsel and Mr. Mitchell, dated May 13, 2022, in which Mr. Mitchell stated: "I have been informed by Internal Affairs that the investigation of Christopher Loeb complaint is not yet completed. As expected, the documents provided to the Suffolk IAB [(*i.e.*, the "Internal Affairs Bureau")] from the U.S. Attorney's Office were provided with the caveat that they not be disseminated. That being said, apparently the documents have either been released by the U.S. Attorney to other sources, or have appeared in various media. So we will not have any objection to providing you whatever relevant documents that exist with that file." (ECF No. 177-1 at 1.) As this Court

---

13

disclosing the FBI documents and reports. In addition to the email to [Plaintiff's Counsel], reference was made to these documents and the fact that the [C]ounty had no objection to disclosing them in a Status Report filed shortly after the Crawford deposition in May 2022.[13] No privilege log was ever proffered by the County – as privilege was not their contention.

That position was fleeting. [Mr.] Mitchell soon thereafter refused to provide the material, or any of the outstanding material, despite [the Court's] Orders to the contrary and [the Court's] issuance of a [C]onfidentiality [O]rder.[14] Still, no privilege log was ever made, and instead, the [C]ounty began taking the position that it was in full compliance with all discovery orders, that nothing was due and owing, and it had nothing to discover in regard to Spota. In fact, the [C]ounty sought a ruling from [the Court] to actually bar [Plaintiff's Counsel] from continuing to request Spota-related discovery because it had 'nothing' to discover.[15]

_____

has previously ruled, Mr. Mitchell's correspondence to Plaintiff's Counsel did not waive privilege under *Touhy*. *See* ECF No. 175.

[13] In a May 16, 2022 Joint Status Report addressed to the undersigned, Mr. Mitchell stated: "The investigation into the events underlying the conduct engage in by former [Suffolk Police] Chief James Burke (and a number of other Suffolk Police Officers) has not yet been completed. I have confirmed, however, that certain documents were provided to the Internal Affairs Bureau from the United States Attorney and/or the FBI relating to its investigation of former Chief Burke, which ultimately resulted in a further investigation and prosecution of Mr. Spota. Even though the Internal Affairs investigation itself is not yet completed, we do not object to providing documents relating to the Internal Affairs investigation, including any internal correspondence, statements, or Federal 302 memorandum." (ECF No. 118.)

[14] The Confidentiality Order at ECF No. 141 (hereafter, the "Confidentiality Order") was reinstated by Judge Reyes on March 13, 2024. (*See* Electronic Order dated March 13, 2024.) In his Order, Judge Reyes noted that "Defendants' deadline to produce the unredacted IAB and Spota documents will be extended to a date to be set by Judge Wicks after consideration of the pending motion of the United States [at ECF No.] 163." (*Id.*) The Confidentiality Order defines certain documents as "confidential" in this matter including, *inter alia*, Internal Affairs Reports. *See* ECF No. 141 at ¶ 2(b) (emphasis added) ("Confidential document is defined to mean Suffolk County Police Department personnel files, Internal Affairs Reports, Autopsy Report of Edwin Rivera, Jr., Medical Records of the plaintiff Samuel White, and any materials in possession of the County defendants received from the U.S. Attorney's Office related to defendant Spota *that are not otherwise available to the public.*").

[15] In response to Plaintiff's "Seventh" Motion to Compel, on February 5, 2024, Ms. Skorupa stated: "It is Defendants' continuing position that we are fully compliant with the Court's prior Orders on [the] issue [of Plaintiff's request pertaining to the Spota Documents]. [Plaintiff's Counsel] was previously advised to contact the U.S. Attorney's Office for the documents she seeks as they are the agency who investigated and prosecuted Mr. Spota and thus are in possession of these documents. Instead, days prior to the close of fact discovery in November[,] [Plaintiff's Counsel] first took the position in her first motion on this issue that an affidavit provided to her regarding these purported documents almost two years prior in February 2022 by my predecessor was insufficient. Defendants note the Court's prior warnings that December 1, 2023 was the final deadline for fact discovery—a date that now passed more than two months ago. We respectfully request that the Court enforce that deadline and deny this motion and any further colloquy on this issue." (ECF No. 155.)

(*Id.*) (emphasis in original). Plaintiff maintains that for years, the County Defendants

"intentionally withheld" Spota Documents, and their actions "prejudiced the course of this

case[,]" as Thomas Spota is a "named defendant and former policy-maker[,]" and "[d]ocuments

relating to the investigation and criminal case against him are critical" to Plaintiff's case. (*Id.* at

3.)

  *Second*, with respect to the Internal Affairs files contained on a "DVD/CD," Plaintiff

argues that the County Defendants continuously failed to produce it, and falsely claimed that it

was "lost in the mail." (*Id.*) Plaintiff maintains Counsel for the County Defendants admitted at

the February 27, 2024 Status Conference before the undersigned that she was not in possession

of the DVD, to which the undersigned ordered production and hand-delivery of the DVD to

Plaintiff's Counsel the following week. (*Id.*) Plaintiff claims that he received the DVD by hand

delivery on March 12, 2024, however, production was again deficient. (*Id.*) Specifically, Plaintiff

contends the DVD, which was supposed to include "all transcripts from the Thomas Moroughan

case" is missing the deposition transcript of Risco Lewis, whose testimony was "critical" in the

Moroughan case. (*Id.*)

  *Third*, with respect to the *Monell* discovery contained on a "thumb drive," Plaintiff

argues that pursuant to this Court's order, disclosure was to include Internal Affairs ("I.A.")

records from 11 specific categories, from 2014 through 2019, regardless of the outcome of the

investigation, and from 2008-2014 for substantiated cases. (*Id.* at 4-5.) Plaintiff maintains

Counsel for the County Defendants "argued vehemently on multiple occasions before [the

undersigned] that a previously disclosed 'thumb drive' containing only 216 files was 'complete'"

but, production was actually deficient, "forc[ing]" Plaintiff's Counsel to "continually move to

compel the outstanding material." (*Id.* at 5.) Plaintiff argues the pattern of deficiencies was "willful[:]"

> A 2021 letter from [Mr.] Mitchell provided certain statistical information regarding the number of I.A. files in certain categories. In that letter, Mitchell advised that the category of False Arrest, alone, from the discoverable time period had over 1,000 files. Notwithstanding whether or not that figure is accurate, a thumb drive containing a mere 216 files was obviously deficient and should have been addressed years ago, ago, rather than wasting years taking the inexplicable stance that it was complete.

(*Id.*) Plaintiff maintains that it was only upon the undersigned's confrontation of the County Defendant's Counsel at the February 27, 2024 Status Conference that the deficiency of the thumb drive production was finally acknowledged. (*Id.*)

Plaintiff additionally argues that the duration of the County Defendants' noncompliance weighs in favor of severe sanctions, as the "history of non-compliance dates back to 2021." (*Id.*) Plaintiff contends: (i) the County Defendants "willfully disobeyed discovery orders and acted in cavalier disregard for their Duty of Candor and their discovery obligations, even after warnings" by the Court that failure to comply with Court orders could result in discovery sanctions, and (ii) that "[less] harsh sanctions would prove fruitless at this stage[16] and prejudice has already ensued." (*Id.* at 6.) Ultimately, Plaintiff requests default be entered upon the docket against the County Defendants, "with the amount of damages remaining the only issue to be determined by a fact finder." (*Id.*)

On April 17, 2024, Plaintiff filed his Seventh Motion to Compel (mislabeled as a "Ninth" Motion). (ECF No. 182.) *First*, Plaintiff claims the County Defendants' production of the

---

[16] Plaintiff argues that any lesser sanctions would be ineffective given the County Defendant's "brazen disregard" for Court Orders and "strategic motion practice" including "a pattern of last minute filings" requesting "ipso facto 'stays'" and "frivolous delay tactics." (*Id.* at 5.) Plaintiff is referencing multiple requests by the County Defendants to stay production of discovery previously ordered by the undersigned on February 27, 2024, and March 5, 2024, as well as the County Defendants' requests for extensions of time to respond to Plaintiff's First Motion for Sanctions. *See e.g.*, ECF Nos. 161, 164, 172, 176.

Internal Affairs files contained on a "DVD" produced to Plaintiff on March 12, 2024 is "obviously and willfully deficient." (*Id*. at 1.) Plaintiff argues that "[a]t a minimum, the DVD was supposed to include transcripts, (not published on PACER), of any testimony and any sworn statements, from the 13 cases" – notably, the Thomas Moroughan case. (*Id*.) Plaintiff claims the deposition testimony of Riscoe Mention-Lewis, a critical eyewitness in the Moroughan cases, was intentionally withheld from the County Defendants' DVD production. (*Id*. at 2.) Plaintiff claims several other items are also missing from the DVD, which were cited to in the Moroughan case: (i) the deposition of Investigator Palumbo of the District Attorney's Office; (ii) the deposition of Assistant District Attorney Pearl; (iii) the deposition testimony of Dr. Kraszewski; and (iv) the deposition of Jillian Bienz. (*Id*.) Plaintiff maintains these depositions "were critical in [the Moroughan case] and are important to this [P]laintiff's case." (*Id*.) Additionally, Plaintiff claims the DVD is missing the 50-h deposition of Rodolfo Taylor, "another one of the 13." (*Id*.)

*Second*, Plaintiff argues the County Defendants' production of *Monell* discovery, contained on a "thumb drive," was also deficient. (*Id*. at 3.) Plaintiff argues this disclosure was "supposed to include 11 full categories of I.A. files, deemed relevant to this matter, over a particular time span" and that, "according to known statistics, one particular category, False Arrest, alone, should have had over 1,000 files alone." (*Id*.) Plaintiff claims the discovery was "ordered years ago" and "has still not been received to date." (*Id*.) Overall, Plaintiff seeks a two-part Order: (i) compelling the County Defendants to "disclose all material relating in any way to the 13 specifically identified disputes, including but not limited to any testimony and sworn statements and transcripts that [the Court] ordered several years ago[;]" and (ii) compelling the County Defendants to disclose the *Monell* discovery contained on the "thumb drive" of the 11

17

categories, "along with its publication on PACER and index, consistent with [this Court's] February 27, 2024 Order." (*Id*.)

On April 25, 2024, Defendants filed their Response in Opposition to Plaintiff's First and Second Motion for Sanctions. (ECF No. 185.) With respect to Plaintiff's First Motion to Compel seeking attorney's fees, Defendants take the position that Plaintiff's "Seventh" Motion to Compel was "granted in part and denied in part based on the outcome of the FBI's Motion for Reconsideration" and therefore "Plaintiff's [First] M]otion [for Sanctions] is governed by Rule 37(a)(5)(C) as opposed to Rule 37(a)(5)(A)[,]" which provides, "in pertinent part, that '[i]f the motion [to compel] is granted in part and denied in part, the court…may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." (*Id*. at 2) (citing Fed. R. Civ. P. 37(a) (5)(C)). Defendants further take the position that "Plaintiff's application for costs and attorneys' fees should be denied outright as Plaintiff's motion to compel [the "Outstanding *Monell* Discovery"] was denied vis-à-vis the Court's decision on the FBI's Motion for Reconsideration." (*Id*.) However, Defendants argue that "[s]hould the Court entertain Plaintiff's motion to compel for materials beyond the referenced outstanding *Monell* discovery as to Spota," Defendants respectfully contend that 'the Court find it appropriate for each side to bear its own expenses regarding the completion and filing of the instant motion.'" (*Id*. at 3) (quoting *Ganci v. U.S. Limousine Serv., Ltd.*, No. CV 10-3027, 2012 WL 13109965, at *2-3 (E.D.N.Y. Sept. 28, 2012)).

Defendants further argue that "[s]hould the Court deem it appropriate to award any amount of costs and attorneys' fees in this matter pertaining to Plaintiff's "Seventh" Motion for Discovery and the outcome of same, the fees and costs sought are far beyond that which are reasonable." (*Id*.) *First*, Defendants argue that "any costs and attorney's fees associated with

18

Plaintiff's motion to compel discovery of the Outstanding *Monell* Discovery (the Spota documents) must be denied as said motion ultimately was not successful." (*Id.*) Defendants contend that, at best, Plaintiff is only entitled to 2/3 of the costs and fees in making the motion as 1/3 of the motion was ultimately decided against him:

> [A]ny fees or costs sought up to the point of the ["Seventh"] [M]otion to [C]ompel which was filed on January 26, 2024 [(ECF No. 151)] are improper and premature at this stage of the proceedings. [I]n assessing the fees and costs Plaintiff's Counsel lists at [ECF No.] 171-2, all such fees and costs up to the point of her drafting and filing [ECF No.] 151 are not appropriate in this application (all fees from pages 1 of 16 to page 13 of 16 starting with the entry of 1/25/24). Plaintiff has not won his case at this point, necessitating a costs and fees application for all work done in any fashion on these issues for Plaintiff's Counsel under 42 U.S.C. §1988. This application and the appropriateness of it in the form of a discovery sanction under Rule 37 pertains solely to whether the Court opts to award attorney's fees and costs as it 'may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion' as Plaintiff's motion to compel was, in fact, granted in part and denied in part.

> [T]he only entries in Plaintiff's Counsel's entire 16-page invoice at [ECF No.] 171-2 that potentially pertain to 'expenses for the [M]otion' to [C]ompel are those found at the following dates: 1/2/24, 1/25/24, 2/5/24 and 2/27/24 (the date the Court held a conference and rendered its decision on Plaintiff's Seventh Motion for Discovery). Anything prior to that does not constitute "expenses for the motion." In fact, Plaintiff's Counsel's prior motion on these very issues was denied due to her failure to meet and confer as required by the Court, which has been the reason that the vast portion of her discovery motions in this matter have been denied since the case's inception. Any work Plaintiff's Counsel attempts to attribute to this [M]otion to [C]ompel beyond 2/27/24 relates to other issues regarding discovery, including the FBI's Motion for Reconsideration, as the motion to compel had already been decided. Further, as stated above, the FBI's Motion for Reconsideration resulted in the Court's reversal of its prior decision on the discovery of the Outstanding *Monell* Discovery regarding the Spota investigation and trial—a motion Plaintiff lost in the end. Plaintiff certainly cannot recover the costs and attorney's fees associated with this unsuccessful portion of his motion.

> Adding up the time Plaintiff's Counsel alleges she spent on the four dates referenced, they add up to a total of 5.1 hours which is a far cry from the 135.5 hours for which she seeks reimbursement of fees and costs based on the aforementioned [M]otion to [C]ompel.

(*Id.* at 3-4) (citing Fed. R. Civ. P. 37(a)(5)(C)). Defendants argue that "given the Court's authority under Rule 37(a)(5)(C) to apportion the reasonable expenses for the motion when a

motion to compel is granted in part and denied in part, the 5.1 hours for which [Plaintiff's Counsel] may argue she spent to make the motion is offset by the time the undersigned spent to oppose it, succeeding in part." (*Id.* at 4.) Defendants request the Court find it appropriate, given the "mixed results" of Plaintiff's "Seventh" Motion to Compel, for each side to bear their own expenses of the Motion, and decline to impose Rule 37 sanctions. (*Id.*)

Defendants claim that if the Court were to "award Plaintiff for the 5.1 hours of work potentially spent making the referenced [M]otion to [C]ompel, the amount of costs and fees sought in [ECF No.] 171-2 ($101,625) are far from reasonable." (*Id*) ("These fees are based on an alleged 135.5 hours of work at an hourly rate of $750 per hour, which is beyond unreasonable."). Defendants maintain that "there are no unique circumstances that would justify a departure from the prevailing market rates in this district" and it cannot be assumed that based on Ms. McClure's practice as a solo practitioner that she has the experience or expertise to qualify as a 'partner-level' attorney to merit an hourly rate as one, particularly in the area of §1983 complex civil rights litigation." (*Id.* at 5-6.) Defendants argue that Plaintiff does not provide authority from this District in which his Counsel was awarded $750 per hour as she seeks here. (*Id.* at 6.) Overall, Defendants claim that Plaintiff's Counsel's hourly rate of $750 is "unreasonable and higher than what courts in this District have approved and awarded," and "given her lack of experience in the area of §1983 litigation and her failure to provide facts to support she is entitled to partner-level rates," any award of fees "should be at no more than the general rate of $200 to $325 an hour." (*Id.*) Defendants maintain that Ms. McClure should be awarded no more than $1,020.00 to $1,657.50 total for the time she spent making her "Seventh" Motion to Compel. (*Id.*)

With respect to Plaintiff's Second Motion for Sanctions, Defendants argue that Plaintiff "improperly relies on Rule 16 which does not reference discovery orders" and "seeks the most serious of sanctions in the form of striking Defendants' Answers and entering default judgment against them without any basis to do so at this juncture of the proceedings." (*Id*. at 7.) While Defendants acknowledge that Rule 37(b)(2) "may permit these sanctions for the most egregious of violations," Defendants maintain that Plaintiff has failed to show Defendants disregarded a discovery order, willfully or in bad faith, to merit such a sanction. (*Id*.) Defendants claim that there is no indication that Defense counsel has been intentionally withholding documents from Plaintiff's Counsel. (*Id*.) Specifically, Defendants advise that they produced the deposition Risco Mention-Lewis at the request of Plaintiff's counsel on April 9, 2024. (*Id*. at 8.) Defendants further maintain that Ms. Skorupa, Mr. Mitchell, and Counsel for Defendant Spota "have tried time and again to cooperate with [Plaintiff's Counsel] in an effort to amicably resolve any issues[,]" but claim that "[s]he has obstructed these efforts for years, filing motion after motion without first meeting and conferring as required." (*Id.* at 9.) Overall, Defendants claim that Plaintiff's Second Motion for Sanctions should be denied as baseless, and request the Court impose sanctions on Plaintiff's Counsel for filing it to the extent permissible under the Federal Rules. (*Id*. at 9-10.)[17]

On April 26, 2024, the County Defendants filed their Response in Opposition to Plaintiff's "Ninth" Motion to Compel. (ECF No. 186.) Defendants advise that they have provided Plaintiff's Counsel with the deposition transcript of Risco Lewis and other responsive Internal Affairs files (contained on the "DVD"), including IA files on the matters of Shawn

---

[17] To the extent Defendants seek attorney's fees associated with Plaintiff's Second Motion for Sanctions, they are directed to make a formal application to the Court in accordance with the undersigned's Individual Rules.

Lawrence, Messiah Booker, Thomas Moroughan and Aston Martin Barth, along with four additional deposition transcripts from the Moroughan case (those of DA Investigator Anthony Palumbo, ADA Raphael Pearl, Dr. Kraszewski and Jillian Bienz). (*Id.* at 2-3.) The County Defendants maintain they are not in possession of any responsive documents regarding Eric Williams, Rudolph Bisnauth, Mark Garret, Rodolfo Taylor, Gabriel Hubbard, Wilfredo Flores, Dante Taylor, Nasheem Beck or James McArthur. (*Id.*)

Defendants further argue that with respect to the Internal Affairs files, Court-ordered production was limited to "litigation documents, including electronic copies of any depositions, sworn statements, signed statements, answers to interrogatories, or requests for admission" that are "in the possession of any/ all of the County Attorneys' clients" which pertain to any officer involved in the 'thirteen specifically identified case files' identified earlier in discovery litigation[,]" and "[t]he hearing minutes of a hearing conducted pursuant to General Municipal Law §50-h and documents pertaining to Habeas Corpus (criminal) proceedings do not fall within the confines of what the Court ordered Defendants to produce and these documents were thus not disclosed." (*Id.* at 4.)[18] Defendants claim that they are not in possession of any documents related to Habeas Corpus proceedings nor is the County Attorney's Office, and nevertheless, "[t]he time to expand the scope of discovery to include documents beyond those which the Court ordered production of previously has long since passed." (*Id.*) As to Plaintiff's request to compel production of the *Monell* discovery contained on the "thumb drive" and the previously ordered

---

[18] Defendants maintain Plaintiff's latest motion to compel disclosure of the "entire files of thirteen (13) criminal cases in the form of 'all material relating in any way to the 13 specifically identified disputes, including but not limited to any testimony and sworn statements and transcripts' is far beyond the scope of discovery ordered by this Court and far beyond that which would be discoverable under Fed. R. Civ. P. 26(b)(1)." (*Id.*)

index, Defendants agreed to produce this material as soon as the Court issues an order to do so, lifting the prior stay imposed. (*Id.*)

On May 2, 2024, Plaintiff filed a Reply in Support of his First and Second Motion for Sanctions, and in support of his "Ninth" Motion to Compel. (ECF No. 189.) With respect to Plaintiff's "Ninth" Motion to Compel, Plaintiff maintains that four (4) depositions from the Moroughan case file are still being withheld, including the depositions of: (i) Eric Klug, (ii) Kristie Mondo, (iii) DeMartinez, and (iv) Dr. LaBianca. (*Id.* at 2.) Plaintiff additionally claims that Defendants are refusing to produce the transcript of Rodolpho Taylor (one of the "13" cases). (*Id.*) Plaintiff claims Mr. Taylor's 50-h deposition "is incorporated into his federal civil complaint, in his case before this court that just settled, and that the County previously disclosed the 50-h deposition in the matter of Shawn Lawrence, yet has taken a contrary position in Mr. Taylor's case, refusing to disclose the transcript, claiming Plaintiff is not entitled to it." (*Id.*)

With respect to Plaintiff's Second Motion for Sanctions, Plaintiff argues default is warranted because the County Defendants have been intentionally withholding information for years:

> [Mr.] Mitchell repeatedly told this [C]ourt, for two years, that the [D]efendants did not have any documentation to discover in reference to the "Spota documents[,]" which reflected that position from 2020-2022. However, the Crawford deposition revealed that the [C]ounty did have Spota documents since January of 2020. [Ms.] Skorupa vehemently took the position that defendants disclosed everything they were obligated to disclose and insisted they had nothing to disclose regarding Spota. However, since February 27, 2024 it has been confirmed by the U.S. Attorney that the [C]ounty in fact, has had hundreds of F.B.I. reports and documents as well as a full set of transcripts from the Spota trial never before disclosed.
>
> [Ms. Skorupa] represented to the [C]ourt that she was in the process of copying a DVD that had complete disclosure from the thirteen (13) cases, that she claimed was repeatedly sent "over and over." However, the truth came out on February 27, 2024 that this DVD was not repeatedly sent, and in fact counsel had no record of the DVD and it would have been impossible for her to copy or resend it as claimed. The missing DVD was finally delivered on March 12, 2024 - again alleged to be complete; yet since receiving the

DVD, we have uncovered at least nine witnesses deposition transcripts were withheld, some with multiple dates of depositions, from the critical Moroughan case, again intentionally withheld.

Counsel repeatedly told this [C]ourt on the record that the "thumb drive" with 11 categories of I.A. disclosure was complete. Then it came out on February 27, 2024 that the thumb drive was far from complete and in fact it appears thousands of files are missing.

(*Id.* at 3-4.) Plaintiff maintains he has exposed the County Defendants' "willful pattern of non-disclosure and unremittent use of disingenuous motion practice to achieve their goals of secrecy, delay, and obstruction" which support the entry of default in this case. (*Id.* at 7.)

With respect to Plaintiff's First Motion for Sanctions, Plaintiff argues that his Counsel is entitled to the attorney's fees requested because of her "extensive training and experience in homicide investigation, crime scene processing, witness interrogation, autopsy science, serology etc. all of which are skills that allow [her] to have a superior understanding of [P]laintiff's underlying claims." (*Id.* at 8.) Plaintiff maintains the attacks on Plaintiff's Counsel's creditability "have no merit[,]" given her appointments to serve as part of the New Jersey Office of Attorney Ethics, District Ethics Committee and the New York City Bar's Professional Responsibility Committee. (*Id.*) Plaintiff further maintains that Defense Counsel's argument that because the FBI's Motion for Reconsideration was successful, that Plaintiff's Counsel should be denied a substantial part of her fees is misplaced:

[Plaintiff's Counsel] pursued the[] Spota documents for years due to the County's dishonest refusal to admit possession of the documents, which was proven by the Crawford deposition, exposing their unethical practices. [A]t the February 27, 2024 [Status Conference], [the Court] was moved to actually read counsel the Alexander Crawford transcript triggering her to finally acknowledge possession of documentation she simply refused to acknowledge otherwise. Her actions thereafter, caus[ed] the U.S. Attorney's office to intervene and seek privilege[.] The County's flip-flopping over the Spota documents wholly supports the award of the undersigned's full fee for having to continue to litigate those matters.

24

(*Id.*) (internal citations omitted). Plaintiff further maintains that contingent hourly rate of $750 per hour is reasonable under the circumstances. (*Id*. at 8-9.)

On May 31, 2024, the parties appeared for oral argument on Plaintiff's First and Second Motions for Sanctions, and "Ninth" Motion to Compel. (ECF No. 192.) The Court considers the parties' arguments on each of Plaintiff's Motions in turn.

## DISCUSSION

Discovery in this matter has been plagued by a series of *ad hominem* attacks,[19] blatant disregard for Court orders, the undersigned's individual rules, and the Federal Rules of Civil Procedure – specifically and most prominently, the "meet and confer" requirement.[20] As outlined above, despite numerous warnings from the undersigned, the parties have continuously failed to

---

[19] The Court cautions both Counsel for Plaintiff and Counsel for the County Defendants to refrain from *ad hominem* attacks in papers. *See Van Gundy v. Atlas Rare Coins, Inc.*, No. 23CV2072NJCJMW, 2023 WL 8622844, at *3 (E.D.N.Y. Dec. 13, 2023). "Most of us say things in our heads that we wouldn't say out loud. And most of us say things out loud that we wouldn't say in a court filing. But not everyone is blessed with the same filter or with the same willingness to use the brake pedal." *Porch v. Univ. of Illinois at Chicago*, No. 21-cv-3848, 2023 U.S. Dist. LEXIS 39619 (N.D. Ill. Mar. 9, 2023). Such an approach of using *ad hominem* attacks is not only beyond acceptable advocacy in this Court's eyes, but in fact fails to advance the parties' position or persuade the court in any way. Indeed, the personal attacks undermine the mudslinger's credibility in this Court's view.

[20] The Federal Rules of Civil Procedure, the Local Civil Rules of this Court, and the undersigned's Individual Practice Rules concomitantly require that parties meet and confer in a good faith attempt to resolve discovery disputes before formally initiating motion practice. *See* Individual Practice Rule 3.A; Local Civil Rules 26.4, 37.3(a); Fed R. Civ. P. 37(a). This command is repeatedly reaffirmed – perhaps because the meet and confer requirement obviates unnecessary judicial handholding and encourages parties to raise only genuine disputes that could not otherwise be resolved with good faith and civility. *See Excess Ins. Co. v. Rochdale Ins. Co.*, No. 05-CV-10174, 2007 WL 2900217, at *1 (S.D.N.Y. Oct. 4, 2007) ("The purpose of the meet and confer requirement is to resolve discovery matters without the court's intervention to the greatest extent possible. Only those matters that remain unresolved after serious attempts to reach agreement should be the subject of a [discovery motion]."); *see also Ross v. Citifinancial, Inc.,* 203 F.R.D. 239, 240 (S.D. Miss. 2001) (the meet and confer "prerequisite is not an empty formality" and "cannot be satisfied by including with the motion copies of correspondence that discuss the discovery at issue").

*meaningfully* meet and confer[21] to resolve disputes over the *Monell* discovery, Internal Affairs files, and Spota documents without judicial intervention, and the County Defendants have failed to meet their production obligations – and notably, have made misrepresentations to the Court – with respect to these materials, resulting in a delay of discovery for over three years.[22] As explained further below, the undersigned finds that Plaintiff is entitled to attorneys fees and costs for his efforts to pursue these materials; however, the undersigned also finds that sanctions in the form of default judgment against the County Defendants is inappropriate under the

---

[21] The parties are reminded – once again – that to "'[c]onfer' means to meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining ... (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is responsive to the request, and (c) what specific genuine issues, if any, cannot be resolved without judicial intervention." *Big Apple Pyrotechnics v. Sparktacular Inc.*, No. 05 Civ. 9994, 2006 WL 587331, at *1 (S.D.N.Y. Mar. 8, 2006); *see also Deckon v. Chidebere*, No. 93 Civ. 7845, 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994). The movant must provide evidence of its good faith efforts; a mere conclusory statement where the movant asserts he has fulfilled this requirement is insufficient. *See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590, 1998 WL 67672, at *2 (S.D.N.Y. Feb. 18, 1998) (citing *U.S. Bankcorp Equip. Fin., Inc. v. Babylon Transit, Inc.* 270 F.R.D. 136, 140, (E.D.N.Y. 2010)); *Harris v. Target Corporation*, No. CA 17-0569-CG-MU, 2018 WL 6220109, at *1 (S.D. Ala. Aug. 30, 2018) ("Simply corresponding with opposing counsel is not considered a good-faith attempt to confer or have a conference to resolve discovery disputes."); *Antonis v. Elecs. for Imaging, Inc.*, No. CIV. 07-CV-163JL, 2008 WL 169955, at *1 (D.N.H. Jan. 16, 2008) (holding a serial reiteration of demands over email "probably does not meet the requirement that the parties confer in good faith about discovery issues before invoking judicial remedies."); *C.f. Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474, 479 (D.S.D. 2012) (finding sustained communication itemizing the issues with particularity and explaining why those issues were disputed evinces a good-faith attempt to meet and confer). Plaintiff's Counsel is further cautioned that "[n]o motion to compel will be considered by the Court unless the meet and confer requirement of Rule 37(a)(1) is met[,]" and is directed to refrain from making any further discovery motions without complying with this requirement. *McLain v. Daniel N. Gordon, PC*, No. C09-5362BHS, 2010 WL 11685123, at *1 (W.D. Wash. June 29, 2010); *Velazquez-Perez v. Devs. Diversified Realty Corp.*, 272 F.R.D. 310, 312 (D.P.R. 2011) ("The only thing that can be drawn from these communications is plaintiff's unwillingness to solve the dispute by threatening the defendant with filing a motion to compel if the documents requested were not produced."). "As a party to this lawsuit—indeed, the one who initiated it" the undersigned notes that "Plaintiff ha[s] an affirmative obligation to move the litigation forward and to engage in the meet-and-confer process in *good faith* with Defendants[.]" *Nasreen v. Capitol Petroleum Grp., LLC*, 340 F.R.D. 489, 495 (D.D.C. 2022).

[22] Fact discovery took nearly four years, having commenced in 2020 and concluded on December 1, 2023. *See* ECF Nos. 31-1, 136.

circumstances. Finally, the undersigned finds Plaintiff is entitled to previously ordered

production of Internal Affairs files and *Monell* discovery.

I.   <u>**Plaintiff's First Motion for Sanctions**</u>

   A.   <u>**Scope of Fee Award**</u>

   "A party that fails to cooperate in discovery or comply with court orders is subject to

sanctions under Rule 37 of the Federal Rules of Civil Procedure." *Allied 100, LLC v. Chadha*,

No. 20-CV-03493 (AMD) (PK), 2021 WL 7184241, at *6 (E.D.N.Y. July 26, 2021). "Rule

37(a)(5)(C) provides that if a motion to compel is granted, after giving an opportunity to be

heard, the court may apportion reasonable expenses for the motion." *Cidoni v. Woodhaven Ctr.*

*of Care*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *2 (E.D.N.Y. Mar. 10, 2023) (citing

Fed. R. Civ. P. 37 (a)(5)(C)). "The imposition of sanctions under Rule 37 lies within the broad

discretion of the district court." *Perros v. Cnty of Nassau*, CV 15-5598 (GRB)(AKT), 2021 WL

4480666, at *7 (E.D.N.Y. Sep. 30, 2021). "Rule 37 is most relevant when a party fails to comply

with a court order to produce discovery or fails to produce to an adversary relevant, requested

information." *Id.* (internal quotation and citation omitted).

   Here, Plaintiff has made several motions to compel *Monell* discovery, Internal Affairs

files, and Spota documents since the commencement of discovery in 2020:

| <u>Date</u> | <u>ECF No.</u> | <u>Motion</u> | <u>Result</u> |
|---|---|---|---|
| 4/15/2021 | ECF No. 69 | First Motion to Compel | Granted in part; denied in part. *See* ECF No. 90. |

| 12/31/2021 | ECF No. 98 | Second Motion to Compel | Granted in part; denied in part. *See* ECF No. 111. |
|---|---|---|---|
| 11/19/2023 | ECF No. 144 | Third Motion to Compel | Denied. *See* ECF No. 149. |
| 12/19/2023 | ECF No. 148 | Fourth Motion to Compel | Denied. *See* Electronic Order dated December 19, 2023. |
| 1/26/2024 | ECF No. 151 | Fifth Motion to Compel | Granted. *See* ECF. No. 160. |
| 4/1/2024 | ECF No. 174 | Sixth Motion to Compel | Denied. *See* Electronic Order dated April 2, 2024. |
| 4/17/24 | ECF No. 182 | Seventh Motion to Compel | Granted. *See* ECF No. 194. |

*See* ECF Nos. 69, 98, 144, 148, 151, 174, 182. Of the seven motions made, four were granted. *See* ECF Nos. 90, 111, 160, 194. The undersigned finds that Plaintiff is entitled to costs and fees associated with bringing his First, Second, and Fifth Motions to Compel.[23] *See e.g.*, *Cidoni v. Woodhaven Ctr. of Care*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *2 (E.D.N.Y. Mar. 10, 2023); *Wager v. G4S Secure Integration, LLC*, No. 119CV03547MKVKNF, 2021 WL 293076, at *3 (S.D.N.Y. Jan. 28, 2021) ("To recover expenses under Rule 37(a)(5)(A), the only requirements are that a party has made a motion for an order compelling disclosure or discovery and that the motion is granted") (quotes omitted); ECF No. 160 ("In light of the County of

---

[23] At oral argument, Plaintiff clarified that he is not seeking monetary sanctions for any motions to compel made *after* January 26, 2024. (ECF No. 192.)

Suffolk Defendants' admission regarding the Outstanding *Monell* Discovery, the Court will consider an application for costs from Plaintiff's Counsel for having to continue to pursue these materials.").

The County Defendants have "provided no reason whatsoever to justify [their] failure to respond to Plaintiff's requests in a timely fashion in the first instance, by the date they subsequently agreed to respond, or by the date the Court ordered them to respond." *Interpool, Inc. v. JJS Transportation & Distribution Co.*, No. 22 CV 01103 JMA JMW, 2022 WL 17335670, at *2–3 (E.D.N.Y. Nov. 30, 2022). The County Defendants have not only made misrepresentations to the Court regarding their possession of relevant Spota documents (*see* ECF Nos. 90, 93, 144, 160), but have also disregarded clear Court orders with respect to the scope of production of *Monell* Discovery and Internal Affairs files, and continue to do so. *See* ECF No. 189 at 3-4 (identifying that Defense Counsel represented to the Court that "DVD" and "thumb drive" production was complete, however, at the February 27, 2024 Status Conference, Counsel admitted on record to having additional documents that still needed to be produced); ECF No. 189 at 2 (Plaintiff maintains that four (4) depositions from the Moroughan case file are still being withheld to date, as well as the 50-h transcript of Rodolpho Taylor (one of the "13" cases)). *See Sullivan v. Aircraft Servs. Grp., Inc.*, No. 19 CV 6500 (MKB) (CLP), 2022 WL 16901850, at *4 (E.D.N.Y. Nov. 10, 2022) (imposing sanctions where defendant failed to comply with a clear court order despite the fact that plaintiff had now produced all of the outstanding documents). The Court finds the County Defendants' continued non-compliance with discovery is not justified, and imposing costs and fees incurred by Plaintiff in obtaining discovery owed to him is the appropriate sanction.[24] *Id.* at *4 ("Indeed, courts have awarded attorney's fees and costs

---

[24] For reasons explained further below, the Court finds default judgment inappropriate in this case. *See infra*, Section II.

where sanctions were appropriate but where the court found that the sanctioned party's conduct did not rise to a level that would warrant the more severe sanctions of dismissal or default.")

Plaintiff is further entitled to the costs and fees reasonably incurred in preparing this fee application (*i.e.*, his First Motion for Sanctions). *See Robbins & Myers, Inc. v. J.M. Huber Corp.*, No. 01-CV-00201S F, 2010 WL 3992215, at *10 (W.D.N.Y. Oct. 12, 2010) ("A party awarded attorney's fees is also entitled to compensation 'for time reasonably spent in preparing and defending' the fee application") (quoting *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999)); *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138 (2d Cir. 2012) (holding the district court properly ordered sanctioned law firm to pay for the costs associated with defending the sanctions motion, even though the sanctions motion was denied in part, where high cost of preparing the sanctions motion was attributable largely to "firm's extraordinary pattern of misrepresentations and unreasonable litigation."). "All that remains for the Court to determine on this branch of Plaintiff's application is the reasonableness of Plaintiff's Counsel's fees." <u>Cidoni</u>, No. 221CV03654JMAJMW, 2023 WL 2465167, at *2.

**B.   Assessment of Reasonable Costs and Fees**

As previously mentioned, Plaintiff's Counsel Stephanie McClure, the sole partner of the Law Office of Stephanie McClure, affirms that her office incurred $101,525.00 in costs and fees associated with all work done "[r]elating to certain *Monell*/I.A./Spota Discovery[,]" and has submitted billing records dated from June 21, 2020 to March 14, 2024. *See* ECF No. 171-2 at 1-16. These fees are based on a total of 135.5 hours at an hourly rate of $750 per hour. *See id.* at 14-16. This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case,"

"creates a 'presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.' " *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. CV 10-1737 (ADS)(AKT), 2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011). Therefore, the Court reviews both Plaintiff's Counsel's claimed hourly rate and contemporaneous billing records to determine the reasonableness of the requested fee.

*First*, "[a] reasonable hourly rate is " 'the rate a paying client would be willing to pay,' based on the 'prevailing [hourly rate] in the community ... where the district court sits.' " *E. Sav. Bank, FSB v. Whyte*, No. 13-cv-6111 (CBA)(LB), 2015 WL 790036, at *8 (E.D.N.Y. Feb. 24, 2015) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 190 (2d Cir. 2007)). In assessing a reasonable hourly rate, the Court takes into consideration the market rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant "'community' for purposes of this calculation is the district where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. This has been coined by the Second Circuit as the "forum rule." *Bergerson v. New York State Off. of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) ("This Circuit's forum rule generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee") (quotes omitted). "The

party applying for fees must support the hourly rates it claims with, for example, evidence of counsel's expertise and prevailing market rates." *Gesualdi v. Bestech Transp., LLC*, No. 14-CV-1110(JS)(ARL), 2022 WL 866853, at *2 (E.D.N.Y. 2022). "The court may reduce the hours spent on the litigation to exclude excessive, redundant, or otherwise unnecessary time." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, No. 04-CIV-3531 (LTS) (SLC), 2020 WL 91504, at *4 (S.D.N.Y. Jan. 8, 2020).

Ms. McClure is the founding and sole partner of the Law Office of Stephanie McClure and has been practicing law for approximately eighteen years. *See* ECF No. 171-1. According to Ms. McClure's Affirmation in Support of Attorney's Fees, she has "successfully represented clients across the nation in civil and criminal matters, in state and federal courts" in private practice since 2017. *Id*. at 3. Prior to starting her own firm in 2017, Ms. McClure clerked for the Hon. Frederick J. Theemling, J.S.C. for the Superior Court of New Jersey and served as Assistant Prosecutor for the Hudson County Prosecutor's office for "nearly a decade." *Id*. She graduated with a juris doctorate from Seton Hall University and a bachelor's degree from Fordham University. *Id*. at 2. "The fact that the [the Law Office of Stephanie McClure] bills [Ms. McClure's] time at $750 per hour to it clients is appropriate to consider but not dispositive in determining a fee award in this context." *Cidoni v. Woodhaven Ctr. of Care*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *4; *see also Katzenberg v. Lazzari*, 2007 WL 2973586 at *6 - 8 (E.D.N.Y. Oct. 9, 2007) ("attorneys' fees award in the context of an order requiring a losing party in a litigation to pay the prevailing party "is not the same as the reasonableness of a bill that a law firm might present to its own paying client"). Ms. McClure asserts that, based on the billing range found appropriate for partners by the Southern District in 2021 (up to $1,225 per hour down to $626 for 5th year associates in various firms), $750 per

hour "would be appropriate for an attorney particularly well-suited to litigate the case, as here." ECF No. 171 at 2-3. Recent case law in the Eastern District suggests that Ms. McClure's calculations "may be too generous." *Cidoni*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *4; *McLaughlin v. IDT Energy*, No. 14 CV 4107, 2018 WL 3642627, at *17 (E.D.N.Y. July 30, 2018) (finding award of rates typical to the Eastern District and noted to be: "$550 for partners/equity owners with more than thirty years of experience, $500 for partners/equity owners with more than fifteen years of experience, $450 for partners/equity owners with more than ten years of experience, $400 for senior associates/associates with more than ten years of experience, $350 for senior associates/associates with six to nine years of experience, $300 for associates with three to five years of experience, $250 for associates with fewer than three years of experience").

As recently as January 2023, the Eastern District has held that "[i]n this district, hourly rates 'generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience.'" *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20 CV 2073 (FB)(RML), 2023 WL 1072952, at *4 (E.D.N.Y. Jan. 9, 2023), *report and recommendation adopted*, No. 20-CV-2073-FB-RML, 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023) (quoting *Perrone v. Amato*, No. 09 CV 316, 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022)); *Noboa v. Quality Homes USA, Inc.*, No. 21CV07134JMALGD, 2023 WL 35030, at *2 (E.D.N.Y. Jan. 4, 2023); *see also Interpool, Inc.*, No. 22 CV 1103, 2022 WL 17335670, at *4. Higher rates are approved where the party applying for fees supports the hourly rate with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter. *Williamsburg Climbing Gym Co. LLC*, 2023 WL 1072952 at *4; *Chrysafis v. Marks*, 21-CV-2516(GRB)(AYS), 2023 WL 6158537, at *5

(E.D.N.Y. Sep. 21, 2023) ("'The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields.' Such attorneys have typically shown involvement in teaching and speaking engagements and other academic and professional achievements, writings published in scholarly and professional journals, or appearances as an expert in the media, etc.").

Specifically, in the 1983 civil rights litigation arena, this District has found $450 per hour appropriate for partners with similar, if not more experience. *See e.g.*, *Asseng v. Beisel*, No. CV 14-5275 (AYS), 2024 WL 669871, at *4 (E.D.N.Y. Feb. 19, 2024) (collecting cases) (finding partner Horn's hourly fee of $450 reasonable where Horn was a 1996 law school graduate with "extensive experience" litigating civil rights cases "throughout his nearly thirty-year career"); *Chrysafis,* 21-CV-2516(GRB)(AYS), 2023 WL 6158537, at *5 (holding partner 1's rate of $550 reasonable where partner 1 was an expert in the field with 25 years of civil rights litigation experience on the state and federal level, and had been well as being named "Litigator of the Week" by The American Lawyer twice, and $450 was appropriate for partner 2 with 14 years of experience in civil rights litigation and experience arguing in front of the Supreme Court); *Claud v. Brown Harris Stevens of The Hamptons, LLC*, No. 2:18-CV-01390, 2024 WL 245261 (E.D.N.Y. Jan. 23, 2024); *Jane Doe v. Javier Gonzales*, 2:21-CV-04580(JS)(LGD), 2024 WL 2795216, at *3 (E.D.N.Y. May, 21 2024) (finding partner's hourly rate of $450 was reasonable as she was the founder of the firm, had 16 years of civil litigation experience, and this rate fell within the Eastern District's range for partners); *Shuford v. Cardoza*, No. 17-CV-6349-JRC, 2024 WL 865989, at *3-4 (E.D.N.Y. Feb. 28, 2024) (holding that despite plaintiff's counsel's extensive experience of over 30 years litigating civil rights cases and 25 years with his own law

firm, the $550 rate was considered "unreasonably excessive," noting that the reasonable rate for attorneys of his experience in civil rates cases was $450 per hour, and awarding $450/per hour in attorneys' fees).

Here, there are no unique circumstances that would justify a departure from the prevailing market rates in this district. *See Aponte v. 5th Ave. Kings Fruit & Vegetables Corp.*, No. 20-CV-5625 (RLM), 2022 WL 17718551, at *2 (E.D.N.Y. Dec. 15, 2022) ("The party seeking a fee award bears the burden of establishing the reasonableness of the rates charged and the necessity for the hours spent"). Although the Southern District has found hourly rates of $725 to $940 for partners to be reasonable (*see Advanced Analytics, Inc.*, 2020 WL 91504 at *4), the Court would run afoul of the Second Circuit's "forum rule" if it applied out-of-district rates to the case here. *Allied 100, LLC*, 2021 WL 7184241 at *10 ("To establish that these fees are reasonable, Plaintiff must either show that the same rates apply in the Eastern District of New York or that a reasonable client would pay the out-of-district rates"). Ms. McClure does not provide authority from this District in which counsel was awarded $750 per hour under the circumstances as she seeks here.[25] *See e.g., Blonder v. Indep. Cap. Recovery, LLC*, No. 21-CV-

---

[25] Ms. Mc Clure conceded at oral argument that she did not provide any authority from the Eastern District supporting her argument that her $750 per hour fee is reasonable under the circumstances. (ECF No. 192.) The undersigned permitted Ms. McClure to submit a supplemental brief indicating such authority, if it existed. (*Id.*) Ms. McClure filed a supplemental letter in support of her application for attorneys' fees on June 3, 2024 (ECF No. 193), primarily relying on: (i) *Toyota Lease Tr. v. Vill. of Freeport*, 20-CV-2207(DG)(SL), 2024 WL 639989 (E.D.N.Y. Feb. 15, 2024) ("*Toyota*"); (ii) *HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No.15-cv-5867, 2023 WL 5441898 (E.D.N.Y. Aug. 22, 2023) ("*HVT*"); (iii) *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10-cv-2262, 2019 WL 2870721 (E.D.N.Y. June 18, 2019) ("*Centro*"); and (iv) *Santander Consumer U.S. Inc. v. Port Auth. of N.Y. & N.J.*, 20-CV-1997(MKB), 2023 WL 5758995 (E.D.N.Y. Sep. 6, 2023) ("*Santander*"). The Court finds those cases clearly distinguishable from the instant case in two material respects – *first*, in those cases, the Court assessed the reasonableness of and awarded attorneys' fees following a favorable judgment for the moving party, *not* on a motion for sanctions, and *second*, awarded fees exceeding $600 per hour for attorneys with upwards of thirty-years of experience litigating civil rights matters. *See e.g.*, *Toyota*, 20-CV-2207(DG)(SL), 2024 WL 639989, at *2-3 ($630 was appropriate for partner with 30+ years of relevant experience); *HVT*, No.15-cv-5867, 2023 WL 5441898, at *1 (same); *Centro*, No. 10-cv-2262, 2019 WL 2870721, at *11 (holding $500-600 an hour reasonable, although "at the high end of the

912 (ARR) (AYS), 2023 WL 2236908, at *3 (E.D.N.Y. Feb. 27, 2023) ("Notably, plaintiff's

objection does not cite a single case from this district in which counsel was awarded the hourly

rates sought in this case"). For these reasons, the Court finds the $750 requested hourly rate

higher than what courts have in this District have approved and awarded in civil rights cases.

Accordingly, applying the range of $300 to $450 for partner-level attorneys that is accepted in

this District, the Court concludes that $450 per hour is an appropriate rate for this application.

*See e.g.*, *Cidoni*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *4.[26]

      *Second*, "[a]ttorneys must submit contemporaneous records with their fee applications to

document the hours reasonably billed." *Id.* at *5 (citing *Scott v. City of New York*, 626 F.3d 130,

133 (2d Cir. 2010)). In assessing a fee application and the supporting documentation, the Court

should not include "excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany*

*& Co.*, 166 F.3d 422, 425 (2d Cir. 1999). This does not mean that Courts should become "green-

---

Eastern District's spectrum," in light of the attorneys having 40-60 years of civil rights litigation and being "experts" in the field, demonstrated through experience arguing in front of the Supreme Court, civil rights law book publications, and roles as law professors); *Santander*, 20-CV-1997(MKB), 2023 WL 5758995, at *4 (awarding $600 per hour in fees for partners with 30+ years of experience).

[26] In reaching this conclusion, the undersigned has considered "'all case-specific variables' including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) in determining the reasonable hourly rate[:] . . . (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases[,]" and finds that the majority of the factors weigh in favor of assigning a lesser fee than requested. *Chrysafis*, 21-CV-2516(GRB)(AYS), 2023 WL 6158537 at *4 (internal citations omitted) ("The Second Circuit instructed district courts to consider all case-specific variables including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) in determining the reasonable hourly rate. However, the Court need not robotically recite and make separate findings as to all twelve of the *Johnson* factors.") Notably, Plaintiff has not shown this is "exceptional case where a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result" such that "[a]n out-of- district rate [is] appropriate." *Centro*, No. 10-cv-2262, 2019 WL 2870721, at *9 (internal citations omitted).

eyeshade accountants" but merely that the court has discretion to deduct a reasonable percentage of hours as a "practical means of trimming fat from a fee application." *Allied 100, LLC*, 2021 WL 7184241 at *12. Here, Ms. Mc Clure submitted contemporaneous billing records for *all* billing events related to certain "*Monell*/I.A./Spota Discovery" for a span of *three* years – June 21, 2020 to March 14, 2024. *See* ECF No. 171-2 at 1-16.

For the reasons stated above, the Court finds Plaintiff Counsel's submission exceeds the scope of records to be considered in Plaintiff's fee application, as Plaintiff is only entitled to recover the costs and fees associated with his First, Second, and Fifth Motions to Compel. Therefore, Plaintiff is directed to submit updated time records to reflect the costs and fees incurred in connection with making these Motions for the Court's consideration, to which the Court will calculate the total fee award based on a rate of $450 per hour. *Cidoni*, No. 221CV03654JMAJMW, 2023 WL 2465167, at *3 ("[T]o the extent Plaintiff seeks additional sanctions outside of those previously granted by the Court in connection with [his] Motion to Compel[,] [the] request is denied as it is outside the scope of this Court's prior orders and Plaintiff has not met the requirements of Rule [37].").

## II.  <u>Plaintiff's Second Motion for Sanctions</u>

Rule 16 of the Federal Rules of Civil Procedure authorizes the imposition of sanctions—including those authorized by Rule 37(b)(2)(A)(ii)-(vii)— when a party fails to appear at a court-ordered conference or fails to comply with other pretrial orders. Fed. R. Civ. P. 16(f); *see Rahman v. Red Chili Indian Café, Inc.*, 17-CV-5156 (RA) (BCM), 2019 WL 6619893, at *3 (S.D.N.Y. July 12, 2019). In such circumstances, the Rules authorize sanctions in the form of "striking pleadings in whole or in part" and "rendering a default judgment against the

disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). Courts look to several factors when considering the appropriate sanction, including "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-complaint party had been warned of the consequences of . . . noncompliance." *Sanchez v. Jyp Foods Inc.*, 16-CV-4472 (JLC), 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

Typically, "a single pretrial violation, such as [a] party's failure to respond to a document request by the date ordered, would not ordinarily result in an imposition of a sanction of such finality as striking defendants' answer and entering judgment by default." *U.S. Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 954 (2d Cir. 1983) (citation omitted). However, it is well within the court's discretion to impose such harsher sanctions where a defendant exhibits a "continuing saga of dilatory conduct," and where that party has had notice of the orders with which they failed to comply, paired with "an opportunity to argue [their] case against the proposed sanction." *Id.*; *see Rahman*, 2019 WL 6619893 at *3.

The Court has a panoply of options available once it is determined that discovery sanctions are warranted. "Rule 37 provides a district court with a wide range of sanctions which it may apply to a wide range of circumstances – potential sanctions extend from payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment on the other." *Abante Rooter & Plumbing, Inc. v. Shore Funding Sols., Inc*., No. CV176499 (ADS)(AKT), 2019 WL 2436239, at *5 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted*, No. 217CV06499 (ADS)(AKT), 2019 WL 1986606 (E.D.N.Y. May 6, 2019). The sanction of striking a defendant's answer and entering a default is a severe sanction and is only

38

appropriate "in the most extreme cases." *Id*.

Often, when a party has exhibited misconduct that warrants sanctioning, but the misconduct is not as offensive as to warrant striking of the answer and entering default, courts will impose other, less draconian sanctions. *See e.g., Abante Rooter & Plumbing, Inc*., 2019 WL 2436239, at *6 ("[T]he Court concludes that a default judgment as a sanction under Rule 37 would not be appropriate in the instant circumstances. However…in the absence of any justification for [Defendant's] conduct, it is clear to the Court that some form of sanction under Rule 37 is appropriate"); *In re The 1031 Tax Grp., LLC*, No. ADV. 09-01215 (MG), 2010 WL 2851300, *6 (Bankr. S.D.N.Y. July 16, 2010) ("Although the Court concludes that Hartsdale has acted willfully and in bad faith, it declines to strike Hartsdale's Answer and enter a default judgment. Nevertheless, Hartsdale's conduct merits very strong sanctions"); *Airlines Reporting Corp. v. Grecian Travel, Inc*., 170 F.R.D. 351 (E.D.N.Y. 1995) ("Here, [Defendant's] actions do not quite reach the level where such extreme sanctions should be imposed. . . [Defendant's] dilatory behavior warrants an order compelling discovery").

"There can be no dispute that there has been dilatory misconduct on behalf of [the] [County] Defendants." *Volpe v. Ryder*, No. 19CV02236JMAJMW, 2022 WL 4329475, at *3 (E.D.N.Y. Sept. 19, 2022). Indeed, the County Defendants conceded at the February 27, 2024 Status Conference to being in possession of relevant Spota documents that they previously represented to both the Court and Plaintiff that they were not in possession of, and have failed to timely produce Court-ordered production of relevant *Monell* discovery and Internal Affairs files. The Court finds that such conduct is grounds for imposing sanctions. *See e.g., Volpe*, No. 19CV02236JMAJMW, 2022 WL 4329475, at *3. "However, Plaintiff has not established that Defendants' non-compliance has been entirely willful." *Id*. at *4. "Noncompliance with

discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205, 209 (S.D.N.Y. 2021).

Based on Defense Counsel's representations to the Court during conferences, in status reports, an during motion practice, it appears that Defendants were making efforts to obtain the *Monell* discovery, Internal Affairs files and Spota documents for production to Plaintiff following the departure of Mr. Mitchell as Counsel for the County Defendants. Indeed, it was in fact Mr. Mitchell – not Ms. Skorupa – who made numerous misrepresentations to the Court regarding the Spota documents. *See e.g.*, ECF Nos. 90, 144-2. Evidence additionally suggests that there was confusion about the location of relevant Court-ordered files in the County's possession following Mr. Mitchell's departure (*see e.g.*, ECF No. 155), and that Plaintiff's Counsel presented further difficulties for Defense Counsel in producing this material by her refusal to explain *what* remaining items needed to be produced. *See e.g.,* ECF No. 186 (On April 10, 2024, Defense Counsel claim they "spoke on the telephone in a conversation that was alleged to be a meet and confer regarding the outstanding issues. [D]uring the telephone call[,] [Defense Counsel] repeatedly requested that [Ms. Mc Clure] specify what documents she felt were not provided that she believed Plaintiff was entitled to based on the Court's prior rulings. In response, she repeatedly reiterated that Plaintiff was entitled to 'all documents' without specificity of what she believed she was missing[.]"); *see also* ECF Nos. 144, 148, and 174 (denying Plaintiff's motions to compel on the grounds that the parties failed to adequately "meet and confer" in compliance with the Federal Rules).

In light of the above, the Court having carefully considered the appropriate sanction, will order one less severe than the striking of an answer. *See Volpe*, No. 19CV02236 (JMA)

(JMW), 2022 WL 4329475, at *4 ("Discovery foot-dragging, like what occurred here, standing alone does not give rise to a finding of willfulness."); *Abusikin v. City of New York*, No. 18-CV-4582 (ATK) (NF), 2020 WL 3547773, at *7 (S.D.N.Y. May 27, 2020), *report and recommendation adopted*, No. 18CIV4582 (ATK)(NF), 2020 WL 3546882 (S.D.N.Y. June 30, 2020) (awarding a monetary sanction, rather than dismissal, where plaintiff conceded he did not comply with the Court's order but had a reasonable explanation as to why); *see also Abante Rooter & Plumbing, Inc.* 2019 WL 2436239, at *6 (recommending a monetary sanction, in the form of reimbursement of fees expended and costs incurred, rather than dismissal, where Defendant did not meaningfully participate in discovery). "[D]ue to the repeated and inexplicable delays at the hands of the Defendants after extensions of discovery deadlines had been marked final, the Court finds that lesser sanctions in the form of costs and attorney's fees associated with bringing [his Second Motion for Sanctions] to be appropriate." *Volpe*, No. 19CV02236JMAJMW, 2022 WL 4329475, at *5; *Sullivan*, No. 19CV6500MKBCLP, 2022 WL 16901850, at *7 ("While defendants request that the action be dismissed, the Court Orders plaintiff to reimburse defendants' attorney's fees and costs necessitated by having to file the earlier motion to compel and this instant motion seeking sanctions."). "This sanction should sufficiently deter [Defendants] from continued non-compliance and if it does not, [they are] on notice that [they] could face much more serious consequences including dismissal in the future." *Id*.

## II.   <u>Plaintiff's Motion to Compel</u>

As stated, Plaintiff's latest Motion to Compel seeks a two-part Order: (i) compelling the County Defendants to "disclose all material relating in any way to the 13 specifically identified disputes, including but not limited to any testimony and sworn statements and transcripts that

[the Court] ordered several years ago[;]" and (ii) compelling the County Defendants to disclose the *Monell* discovery contained on the "thumb drive" of the 11 categories, "along with its publication on PACER and index, consistent with [this Court's] February 27, 2024 Order." (ECF No. 182 at 3.) Previously-ordered discovery with respect to the Internal Affairs files (contained on a "DVD") "should have included those Internal Affairs files which pertain to any officer involved in the 'thirteen specifically identified case files' identified earlier in discovery litigation." (ECF No. 144.) With respect to these thirteen cases, the Court ordered Defendants to produce "litigation documents,[27] including electronic copies of any depositions, sworn statements, signed statements, answers to interrogatories, or requests for admission" that are in "in the possession of any/all of the County Attorneys' clients." (ECF No. 144 at 1-2.)[28] As to the *Monell* discovery contained on the "thumb drive," Defendants have agreed to provide said discovery. *See* ECF No. 186. Accordingly, Plaintiff's Motion to Compel production of outstanding Internal Affairs files and *Monell* Discovery is granted.

## CONCLUSION

For the reasons stated herein, Plaintiff's First Motion for Sanctions (ECF No. 171) is **GRANTED** *in part* and **DENIED** *in part*. Plaintiff is directed to file, consistent with this

---

[27] For the reasons stated on record at the Oral Argument, "litigation documents" include "[t]he hearing minutes of a hearing conducted pursuant to General Municipal Law §50-h and documents pertaining to Habeas Corpus (criminal) proceedings." (ECF Nos. 188, 192.)

[28] To the extent Plaintiff seeks any files that exceed the scope of this previously ordered production of Internal Affairs files, Plaintiff's request is denied. When a party requests an extension of a discovery deadline after the deadlines in fact have passed, they must file a motion under Fed. R. Civ. P. 6(b)(1)(B) to re-open discovery. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . .on motion made after the time has expired."). Therefore, Plaintiff was required – and failed to make – a motion to re-open discovery in this case if he is seeking discovery beyond the scope of what was previously ordered. *See Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 514 (E.D.N.Y. 2018) (internal quotations and citations omitted) ("A party seeking to reopen discovery bears the burden of establishing good cause and discovery should not be extended when there was ample opportunity to pursue the evidence during discovery.").

decision, a revised proof of costs and fees associated with the making of his First, Second, and Fifth Motions to Compel, as well as proof of costs and fees associated with the making of his First Motion for Sanctions, on or before **July 3, 2024**. Plaintiff's Second Motion for Sanctions (ECF No. 177) is **GRANTED** *in part* and **DENIED** *in part*. The Court finds that lesser sanctions should be imposed in the form of costs and attorney's fees associated with the bringing of the motion. Plaintiff is directed to file proof of costs and fees associated with the Second Motion for Sanctions on or before **July 3, 2024**.

Finally, Plaintiff's "Ninth" Motion to Compel (ECF No. 182) is **GRANTED**. With respect to the Internal Affairs files, Counsel for Plaintiff is directed to serve Defendants with a comprehensive and list specifically identifying the outstanding Internal Affairs files (contained on the "DVD") to be produced by **June 14, 2024**, and Defendants are directed to produce responsive documents to Plaintiff's Counsel on or before **June 21, 2024.** To the extent the Defendants do not have possession, custody or control over the Internal Affairs files, they are to provide Plaintiff with a sworn affidavit stating so. With respect to *Monell* discovery, Counsel for the County Defendants is directed to serve on Plaintiff's Counsel and file on ECF an updated thumb drive containing outstanding *Monell* discovery, along with a comprehensive index of its contents, on or before **June 14, 2024**. To the extent the County Defendants are not in possession nor have the ability to possess responsive *Monell* discovery, they are to provide Plaintiff with a sworn affidavit stating so.

On or before **June 21, 2024**, the parties are directed to file a Joint Status Report advising the Court if the "DVD" and "thumb drive" issues raised by Plaintiff's Counsel at ECF No. 182 has been resolved. If any disagreements remain over the contents of the thumb drive and/or the DVD, the parties are directed to appear, with the thumb drive, DVD and personal computers, for

an in-person conference scheduled for **June 25, 2024 at 11 a.m**. at the United States District Court, Eastern District of New York, 100 Federal Plaza, Courtroom 1020, Central Islip, New York. If the dispute is reported as resolved, the June 25 conference will be cancelled.

  **The deadline for all discovery is extended to August 2, 2024**, and the last date to take first step of dispositive motion practice before the Hon. Ramon E. Reyes, Jr. is extended to **August 23, 2024**. <u>**This is the final extension and there will be no further extensions of these deadlines.**</u>.  If a motion for summary judgment is not filed, the parties shall file a letter by that date indicating they are not moving for summary judgment, at which time the undersigned will set a date for the Final Pretrial Conference.

Dated: Central Islip, New York
   June 7, 2024

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge
