UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAMUEL WHITE,

                    *Plaintiff*,

    -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, RONALD TAVARES,
MICHAEL MILAU, SUFFOLK COUNTY DISTRICT
ATTORNEY'S OFFICE, DARRYL LEVY, LAURA
NEWCOMBE, THOMAS SPOTA, JOHN DOES
1-10, TIMOTHY SINI, OFFICE OF THE MEDICAL
EXAMINER CRIME LABORATORY (SUFFOLK
COUNTY), HELEN WONG, ODETTE R. HALL,
M.D., JOHN PETERSON and JAMES MCGUINESS,

                    *Defendants*.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
20-CV-1501 (RER)(JMW)

**A P P E A R A N C E S:**

    Stephanie McClure, Esq.
    **Law Office of Stephanie McClure**
    101 Avenue of the Americas, 9th Floor
    New York, NY 10013
    *Attorney for Plaintiff*

    Stacy A. Skorupa, Esq.
    **Suffolk County Department of Law**
    H. Lee Dennison Building
    100 Veterans Memorial Highway
    Hauppauge, NY 11788
    *Attorneys for All Defendants (except Thomas Spota)*

    Anthony M. LaPinta, Esq.
    Kyle O.Wood, Esq.
    **Law Offices of Anthony M. La Pinta**
    200 Vanderbilt Motor Parkway
    Suite C-17
    Hauppauge, NY 11788
    631-231-1199
    *Attorneys for Defendant Thomas Spota*

**WICKS**, Magistrate Judge:

Plaintiff Samuel White ("Plaintiff") commenced this Section 1983 civil rights action against Suffolk County, various other defendants (collectively, the "County Defendants") and former District Attorney Thomas Spota (collectively, "Defendants") on March 21, 2020, seeking monetary damages and non-monetary relief for alleged violations of due process and equal protection, false arrest, malicious prosecution, denial of a fair trial, failure to intervene, denial of right to counsel, fabrication of evidence, presentation of false evidence to the grand jury and an appellate court, conspiracy, and failure to train or supervise. (*See* ECF No. 87.) In her March 31, 2023 Order granting in part and denying in part Defendants' respective dismissal motions (ECF No. 96, 97), District Judge Joanna Seybert returned this case to the undersigned to preside over the discovery phase of this action. (*See* ECF No. 130.) In January 2024, this case was re-assigned to District Judge Ramon E. Reyes, with the undersigned still presiding over discovery and pretrial matters. (*See* Electronic Entry dated January 23, 2024.)

On March 22, 2024, and April 10, 2024, Plaintiff filed his First and Second Motions for Sanctions, respectively. (*See* ECF Nos. 171, 177.) Plaintiff's First Motion for Sanctions pursuant to Fed. R. Civ. P. 37 against the County Defendants sought attorney's fees "incurred specifically in conjunction with efforts and litigation undertaken to obtain certain *Monell* and 'Spota-related' discovery." (ECF Nos. 171, 171-1 at 3.)[1] Plaintiff's Second Motion for Sanctions sought a default judgment against the County Defendants "for their willful and unrelenting disregard of discovery orders" in this case. (ECF No. 177.) On June 7, 2024, the undersigned granted in part and denied

---

[1] In support of his First Motion for Sanctions, Plaintiff's Counsel, Stephanie McClure, the sole partner of the Law Office of Stephanie McClure, affirmed that her office incurred $101,525.00 in fees associated with all work done "[r]elating to certain *Monell*/I.A./Spota Discovery[,]" and submitted billing records dated from June 21, 2020 to March 14, 2024, with fees based on a total of 135.5 hours at an hourly rate of $750 per hour. *See* ECF No. 171-2 at 1-16.

2

in part Plaintiff's First and Second Motions for Sanctions. *See White v. Cnty. of Suffolk*, No. 20-CV-1501 (RER)(JMW), 2024 WL 2882842, at *19 (E.D.N.Y. June 7, 2024).[2] Specifically, the undersigned found Plaintiff entitled to fees associated with bringing his First (ECF No. 69), Second (ECF No. 98), and Fifth (ECF No. 151) Motions to Compel in this case, as well as the fees associated with making his First and Second Motions for Sanctions, and directed Plaintiff's Counsel to submit "updated time records to reflect the fees incurred in connection with making these Motions for the Court's consideration, to which the Court will calculate the total fee award based on a rate of $450 per hour." *Id*. at *13-17. The Court found Plaintiff's Counsel's "$750 requested hourly rate higher than what courts have in this District have approved and awarded in civil rights cases[,]" and, "applying the range of $300 to $450 for partner-level attorneys that is accepted in this District," concluded "that $450 per hour is an appropriate rate for this application." *Id*. at *16. The Court additionally found that Plaintiff's Counsel's billing records submission – which included "*all* billing events related to certain '*Monell*/I.A./Spota Discovery' for a span of *three* years – June 21, 2020 to March 14, 2024 . . .exceed[ed] the scope of records to be considered in Plaintiff's fee application, as Plaintiff is only entitled to recover the fees associated with his First, Second, and Fifth Motions to Compel." *Id*. at *17.

Plaintiff filed a revised proof of fees on July 3, 2024. (ECF No. 205.) On July 25, 2024, the County Defendants filed objections to Plaintiff's revised invoices for attorney's fees. (ECF No. 209.) For the reasons stated herein, Plaintiff's revised attorney's fees application is **GRANTED** *in part* and **DENIED** *in part*.

---

[2] The Court assumes the parties' familiarity with the factual background and procedural history of this case, as well as the specific circumstances leading up to Plaintiffs' Motions, as discussed at length in the undersigned's Memorandum and Order dated June 7, 2024.

## **DISCUSSION**

I. *<u>Plaintiff's Revised Fee Application</u>*

Plaintiff's Counsel affirms that her office incurred $67,725.00 in fees associated with all work done in making Plaintiff's First (ECF No. 69), Second (ECF No. 98), and Fifth (ECF No. 151) Motions to Compel in this case, as well as with making his First (ECF No. 171) and Second (ECF No. 177) Motions for Sanctions, and has submitted billing records dated from March 2, 2021 to March 14, 2024. *See* ECF No. 205 at 3-22. These fees are based on a total of 150.5 hours at an hourly rate of $450 per hour. *See id*. at 17, 22. Plaintiff's Counsel contends that she "undertook a detailed review of billing, and deleted time entries associate with fees" not previously granted by the undersigned and "added billing relevant to the making of the motions not previously a part of the billing submitted (the sanctions motions)." *Id*. at 1.

II. *<u>The County Defendants' Objections</u>*

The County Defendants object to Plaintiff's Counsel's revised proof of fees on several grounds. *See* ECF No. 209. *First*, the County Defendants argue that Plaintiff's Counsel's revised fee application contains "vague entries and block billing." *Id*. at 4. The County Defendants contend that many of the claimed hours are for "vaguely described tasks like 'drafting letter motion,' 'reviewing correspondence,' 'correspondence,' 'preparation' of various motions/ correspondences, researching, etc.[,]" which, according to Defendants, warrants a percentage cut of hours "in line with [Second Circuit] precedent." *Id*. at 5. Defendants further contend that the revised billing records "contain block billing" – specifically, Defendants identify that of "the 100 entries for which Plaintiff is seeking attorney's fees…at least six of them are in excess of five hours (12/31/21, 4/12/22, 3/21/24, 4/9/24, 4/29/24, 5/31/24 which are 5.1, 12.0, 7.3, 5.1, 5.5 and

4

6.0 hours, respectively) and ten more of them are in excess of three hours (4/15/21, 11/19/21, 2/18/22, 2/25/22, 4/11/22, 4/29/22, 3/20/24, 4/10/24, 4/26/24, 5/1/24)." *Id*.

*Second*, the County Defendants argue that Plaintiff's revised fee application "is not substantiated with billing records that are sufficiently detailed to establish how the entries claimed are related specifically to" Plaintiff's First, Second, and Fifth Motions to Compel, as well as his First and Second Motions for Sanctions, and, according to Defendants, "it appears that many of the entries are for routine discovery tasks wholly unrelated to [making] the motions to compel and for sanctions[.]" *Id*.[3] Defendants maintain that many of the tasks for which Plaintiff seeks fees are not related to the specific motions for which the Court previously granted fees, and argue that the following entries should not be included in the fee award:

- Plaintiff's Counsel added multiple entries to the front end of her invoices that were not there previously, specifically eleven entries from April 8, 2021 to September 7, 2021 and a new entry on September 27, 2021. As she could have provided these entries in her initial filing at DE 171-2, it is Defendants' position that that an award of fees for these entries should be denied altogether.

- Plaintiff's First Motion to Compel [DE 69] was made April 15, 2021 and his Second Motion to Compel [DE 98] was made December 31, 2021, it is Defendants' position that any of the entries from the making of the first one (March 2, 2021) to that of the second motion (December 31, 2021—on page 6 to 7 of 22) that do NOT deal with the preparation of the motion (which is most of them) should not be the subject of any fee award.

- Following Plaintiff's Second Motion to Compel [DE 98] on December 31, 2021, the next motion for which the Court awarded fees in DE 194 was not filed until January 26, 2024. Thus, it is Defendants' position that all entries starting with the January 5, 2022 entry on page 7 of 22 up through the January 2, 2024 entry on page 14 of 22 are wholly unrelated to the Fifth Motion to Compel at DE 151 and thus must be excluded from any award for fees.

- Following the Fifth Motion to Compel, the First and Second Motions for Sanctions at DE 171 and 177 were made within less than three weeks of each other on March

---

[3] Defendants claim an "obvious" example is the "April 10-12, 2022 entries wherein 17.3 hours of fees ($7,785) are sought for preparation for, travel to and conducting of the deposition of Alexander Crawford." *Id*. at 6.

5

22, 2024 and April 10, 2024, respectively. Thus, the entries in the invoices following the January 26, 2024 filing of DE 151 (the Fifth Motion to Compel), which starts with an entry on February 5, 2024 on page 15 of 22, up until the first entry on March 20, 2024 on page 18 of 22 should once again be removed from the Court's consideration as unrelated to the motions for which the Court is awarding fees.

- It is Defendants' further position that other than time specifically expended on Plaintiff's Reply in Support of the Sanctions Motions, any further time expended on this case after April 10, 2024 when the Second Motion for Sanctions was filed is excludable from time for which the Court granted a fees award.

*Id*. at 5-6.

Overall, Defendants argue that Plaintiff's Counsel's invoices "lack the level of specificity" to "satisfy the specificity requirement for fee applications in the Second Circuit" *Id*. at 7 (citing *Cruz v. Local Union No. 3 of International Brotherhood of Electrical Workers*, 34 F.3d 1148 (2d Cir. 1994)) and *NYSARC, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)). Specifically, Defendants claim Plaintiff should not be able to recover any fees, however, "[i]f the Court is inclined to award some fees in this matter, which Defendants object to, Defendants request the Court … significantly reduce Plaintiff's requested compensable hours." *Id*. at 7. Specifically, Defendants propose "that Plaintiff be awarded no more than those hours that specifically address and describe" the making of Plaintiff's First, Second and Fifth Motions to Compel, as well as Plaintiff's First and Second Motions for Sanctions, which, according to Defendants, appear to be as follows:

- 12/31/21 entry for 5.1 hours for making of Second Motion to Compel at DE 98

- 1/25/24 entry for 1.5 hours for drafting Fifth Motion to Compel at DE 151 (1/26/24 entry should be excluded as it was not contained in DE 171-2)

- Entries for First Motion for Sanctions [DE 171] on 3/20/24 (second entry; 4.2 hours), 3/21/24 (7.3 hours) and 3/22/24 (1.1 hours) for total of 12.6 hours, but with a reduction of the 3/21/24 hours based on the block billing ramifications set forth above

6

- Denial of any fees for the entries after 3/22/24 as it is unclear which pertain specifically to Plaintiff's reply in support of his First Motion for Sanctions, his Second Motion for Sanctions and his final motion to compel discovery for which no attorney's fee award was granted by the Court (pages 19 to 22 are difficult to decipher)

*Id.* at 7-8.

Defendants posit that "[i]n situations where a fee application is not sufficiently substantiated with supporting documentation or detail, courts have adopted a suggested across-the-board percentage reduction to the fee award" and, while "Defendants are not proposing an across-the-board reduction in this matter, it is Defendants' contention that the fees requested should be dramatically reduced . . . cutting at least 30-50% of the fees for vague and blocked billing alone, and cutting the [fees] altogether for those fees asserted that are not relevant to the referenced motions, thus award[ing] Plaintiff for no more than twenty hours expended for the tasks for which the Court [previously] granted fees." *Id.* at 8.

### III. The Legal Framework: *Determining the Amount of a Fee Award*

A court considering a fee application "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a 'presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The burden to establish a reasonable fee lies with the movant. "A party seeking an award of attorney's fees bears the burden to document 'the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflected, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Bds. Trs. Ins., Annuity, Scholarship, & Apprenticeship Training Funds Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Liberty Signs, Inc.*, No. CV 10-1737 (ADS)(AKT),

7

2011 WL 4374519, at *6 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4373893 (E.D.N.Y. Sept. 19, 2011).

"The fee applicant bears the burden of establishing its entitlement to the requested hourly rate and documenting the hours expended and hourly rates sought." *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *4 (E.D.N.Y. Nov. 21, 2023) ("*Alcon*"). Attorneys must submit contemporaneous records with their fee applications to document the hours reasonably billed. *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010)). In assessing a fee application and the supporting documentation, the Court should not include "excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). This does not mean that Courts should become "green-eyeshade accountants" but merely that the court has discretion to deduct a reasonable percentage of hours as a "practical means of trimming fat from a fee application." *Allied 100, LLC v. Chadha*, No. 20CV03493 (AMD)(PK), 2021 WL 7184241, at *12 (E.D.N.Y. July 26, 2021) (internal citations omitted).

As the Court previously decided applying the lodestar approach, that the total fee award should be calculated at a rate of $450 per hour, the only issue remaining for the instant fee application is the reasonableness of the requested fee in making Plaintiff's First, Second and Fifth Motions to Compel and his First and Second Motions for Sanctions. *See e.g., Alcon*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *3 ("Courts routinely use the presumptively reasonable fee, or lodestar, approach in evaluating an application for attorneys' fees under such sanctions authority."); *Cidoni v. Woodhaven Ctr. of Care*, No. 221CV03654 (JMA)(JMW), 2023 WL 2465167, at *2 (E.D.N.Y. Mar. 10, 2023) ("All that remains for the Court to determine on this branch of Plaintiff's application is the reasonableness of Plaintiff's counsel's fees."). Therefore, the

8

Court reviews both Plaintiff's Counsel's billing records (ECF No. 205 at 3-22) and Affirmation in Support of Attorney's Fees (*id.* at 1-2) to determine the reasonableness of the requested fee.

### IV.   *Analysis of the Reasonableness of the Hours Worked*

Here, Plaintiff's revised fee application: (i) "presents glaring deficiencies with respect to the number of hours worked[,]" and (ii) "is not sufficiently substantiated with supporting documentation or detail," such that the Court finds an across-the-board percentage reduction to the fee award appropriate. *Alcon*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *7.; *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 624 (E.D.N.Y. 2017) ("*Div. 1181*") (internal citations omitted) (cleaned up) ("[I]f upon review of the contemporaneous time records the court determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court in its discretion may account for such over-billing in an across-the-board percentage deduction."); *Ivic v. Advance Stores Co.*, No. 19CV00509(DG)(JMW), 2023 WL 6385706, at *3 (E.D.N.Y. Sept. 29, 2023) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)) ("Where the records submitted in support of a fee application are vague, duplicative, contain block-billing or other deficiencies, it is well within the Court's discretion to consider an 'across the board' percentage reduction. And that's because '[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.'").

*With respect to the first point*, the undersigned finds the fee application contains numerous vague entries and block billing, issues that the courts have for years identified as troubling on fee applications:

> As to the former issue, billing records can be too vague to sufficiently document the hours claimed. Vague entries are those that lack sufficient specificity to enable a court to assess what tasks were completed. Such entries can prevent courts from determining whether that work was a reasonable expenditure of the attorneys' time, or, rather, unreasonable because

9

> the claimed hours are excessive, redundant of earlier work, or, in a sanctions fee application, outside the scope of a sanctions order.
>
> As to the latter issue, block billing is the practice of lumping multiple distinct tasks into a single billing entry and is generally disfavored. Like vague entries, block billing is problematic because it can meaningfully cloud a reviewer's ability to determine the projects on which significant legal hours were spent and make it difficult or impossible for a court to determine the reasonableness of the hours expended. While block billing can be permissible as long as the district court is still able to conduct a meaningful review of the hours, at least three issues may warrant across-the-board percentage reductions for block billing[:] (1) there is reason to believe that the hours billed were independently unreasonable; (2) the block billing involved aggregating tasks that were not all compensable; or (3) the number of hours block billed together was so high (such as five hours or more) as to create an unacceptable risk that the aggregated total exceeded the reasonable hours worked on compensable tasks.

*Id.* at *4 (internal citations and quotations omitted) (cleaned up).

*First*, Plaintiff's revised billing records contain numerous vague entries. "Entries such as those that refer vaguely to legal research regarding the 'motion,' 'working on memo of law in opposition to defendants' motions to dismiss,' or 'drafting & legal research on motion for summary judgment,' are simply far too vague to meaningfully review. They do not allow a court to realistically assess what legal issues, in particular, the attorneys were researching, or which sections of a legal brief they were drafting, and whether the time spent was excessive or duplicative." *Id*. (internal quotations and citations omitted) (cleaned up).

In Plaintiff's case, many of the claimed hours are for vaguely described tasks such as "preparation of outstanding items inventory and incorporating into draft letter motion" (ECF No. 205 at 3), "continuation of drafting letter motion" (*id*.), "final editing of letter motion" (*id*.), "drafting reply to opposition points" (*id*. at 4), "finalized reply in support" (*id*.), "memorandum to file" (*id*. at 4, 16, 22), "preparation and attendance at conference" (*id*. at 5), "review updated order compelling discovery" (*id*.), "received and reviewed opposition" (*id*. at 6, 20), "receipt and review of letter…" (*id*. at 7, 10, 13), "preparation of memo and short form outline…" (*id*. at 9), "continued

10

drafting and communications with counsel…" (*id.*), "finalized and filed motion to compel" (*id.* at 10), "finalized status report" (*id.* at 11), "received and reviewed order from Court…" (*id.* at 11, 18, 20, 22), "telephone call to [opposing counsel]" (*id.* at 14), "research in preparation for sanctions motions…researched case law in re noncompliance with discovery orders…[r]esearched case law regarding lodestar in EDNY" (*id.* at 18), "drafting and editing Motion for Sanctions…finalized and filed Motion for Sanctions" (*id.*), "final edit of Reply to Motion for Sanctions…" (*id.* at 21), "continued editing and finalizing of Reply in support…" (*id.*), and so on. *See e.g.*, *Alcon*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *4 (finding counsel's entries for "researching and preparing the briefs in support of the motions to dismiss the first and second amended counterclaims," "researching and briefing the opposition and motion to vacate the Conditional Transfer Order," and "researching and briefing the motion for sanctions" were "vaguely described tasks"); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (affirming the district court's reduction to the lodestar amount because of concerns regarding "unspecified conferences, telephone calls, email correspondence, and reviews.").

*Second*, having reviewed the billing records, block billing was liberally done. There are, by way of example, no less than sixteen instances where block billing was utilized. *Div. 1181*, 270 F. Supp. 3d at 625–26; *see also* ECF No. 209 at 5 (Defendants identify that of "the 100 entries for which Plaintiff is seeking attorney's fees…at least six of them are in excess of five hours (12/31/21, 4/12/22, 3/21/24, 4/9/24, 4/29/24, 5/31/24 which are 5.1, 12.0, 7.3, 5.1, 5.5 and 6.0 hours, respectively) and ten more of them are in excess of three hours (4/15/21, 11/19/21, 2/18/22, 2/25/22, 4/11/22, 4/29/22, 3/20/24, 4/10/24, 4/26/24, 5/1/24)"). "Although each individual use of block billing does not encompass a large span of time—when considered in the aggregate, the prevalence of these types of entries significantly 'impedes [the] court's ability to assess whether

11

the time expended on any given task was reasonable.'" *Id*. (quoting *Blake v. N.Y. City Health & Hosps. Corp.*, No. 14 CIV 3340, 2016 WL 6520067, at *6 (S.D.N.Y. Nov. 3, 2016)).

The Court also finds that some time entries appear excessive in light of the tasks performed.[4] *Id*. For example, Plaintiff's Counsel billed 7.3 hours for "drafting and editing" a Motion for Sanctions (ECF No. 205 at 18), 5.1 hours for "research and outlin[ing] case law" (*id*. at 19), 4.3 hours for "drafting issues of continued non-compliance and dilatory conduct as basis for default motion" (*id*.), and 5.5 hours for "preparing factual chronology" and "continued drafting" (*id*. at 21). *See Raja v. Burns*, 43 F.4th 80, 88–89 (2d Cir. 2022) (internal citations omitted) (cleaned up) (noting "across-the-board reductions may be proper in some cases where block billing obscures the reasonableness of the billed hours…. these defects are most problematic where large amounts of time (*e.g.*, five hours or more) are block billed and such lack of specificity meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent" and finding some across the board reduction was warranted where the relevant block-billed entries "averaged just 2.8 hours in length, with only three entries of five hours or longer"); *see also Ivic.*, No. 19CV00509 (DG)(JMW), 2023 WL 6385706, at *3 (imposing an across the board percentage cut for block-billing); *Div. 1181*, 270 F. Supp. 3d at 625–26 (finding over five hours spent preparing and filing two *pro hac* vice motions to be excessive); *Hines v. City of Albany*,

---

[4] Although the Court did *not* consider on *this* application whether use of artificial intelligence tools could have been employed to reduce dramatically the costs for some of the tasks billed, query whether in light of the increasing availability of AI in the legal market, whether this consideration should be taken into account. *See* Danielle Braff, *The Fate of Billable Hours is in the Hands of Artificial Intelligence*, ABA J. (March 12, 2024) (https://www.abajournal.com/web/article/the-fate-of-billable-hours-is-in-the-hands-of-artificial-inmtelligence.) ("If AI is capable of doing tasks in second that once took hours or days, then law firms are faced with a dilemma: continue depending on that timer, which will be cut significantly; or find alternative billing methods that account for the tasks done, rather than the time it takes to do them"); *see also* Report and Recommendations of the New York State Bar Association Task Force on Artificial Intelligence (April 2024) ("If the [AI] Tools would make your work on behalf of a client substantially more efficient, then your use of (or failure to use) such Tools may be considered as a factor in determining whether the fees you charged for a given task or matter were reasonable"); ABA Formal Op. 512 (2024) (noting how billing is affected by use of AI in law practice).

No. 106CV1517 (GTS)(RFT), 2015 WL 12828107, at *5 (N.D.N.Y. May 13, 2015), *aff'd*, 613 F. App'x 52 (2d Cir. 2015) (finding that billing 25.5 hours total for the drafting of a fourteen-page memorandum of law and a four-page affidavit opposing Defendants' motion for a stay of judgment excessive); *Juarez v. 156-40 Grill LLC*, No. 15-CV-5081 (CBA) (LGD), 2024 WL 4834313, at *4 (E.D.N.Y. Nov. 20, 2024) (finding "inappropriate excessive billing" where "[s]ome of [P]laintiff's Counsel's] bills were seemingly duplicative, others were higher than a reasonable value for the task at hand[,] others were seemingly padded and others simply should not have been billed.").

*With respect to the second point*, the Court finds the billing records submitted and the accompanying Affirmation in Support are not sufficiently detailed as to allow the Court to decipher what worked was done – and what fees were incurred – specifically for Plaintiff's First, Second, and Fifth Motions to Compel, and Plaintiff's First and Second Motions for Sanctions. *See White*, No. 20-CV-1501 (RER)(JMW), 2024 WL 2882842, at *17 (finding Plaintiff Counsel's [initial] submission "exceeds the scope of records to be considered in Plaintiff's fee application, as Plaintiff is only entitled to recover the fees associated with his First, Second, and Fifth Motions to Compel" and directing Plaintiff to "submit updated time records to reflect the fees incurred in connection with making these Motions for the Court's consideration, to which the Court will calculate the total fee award based on a rate of $450 per hour.").

"The Court appreciates that where, as here, fees are awarded for certain tasks and not others, an attorney's contemporaneous timesheets may not map perfectly onto those tasks, requiring some judgment as to how much of each time entry is properly compensable as part of the fee award. Typically, however, attorneys faced with this problem submit their contemporaneous records to the court, *along with an explanation of what portion is properly compensable, thus allowing the court to review the judgment calls made and adjust them if it*

13

*disagrees.*" *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18-CV-4437 (JGK) (BCM), 2021 WL 1549916, at *6 (S.D.N.Y. Apr. 20, 2021) (emphasis added) (applying percentage reductions for unsupported "redundant hours" and hours outside the scope of a sanctions order); *Alcon*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *5 (internal citations omitted) ("[T]he level of detail that [the Second Circuit] requires enables a court to assess the fee application resulting from such sanctions for reasonableness, and ensure that the award is limited to only those legal fees that the fee applicant would not have paid but for the misconduct. Furthermore, courts have explained that the [the Second Circuit's] requirement[s] do[], indeed, apply to fee awards resulting from such sanctions authority."); *Szczepanek v. Dabek*, 465 F. App'x 74, 75 (2d Cir. 2012) (affirming the district court's 40% across-the-board reduction in hours given the "insufficient" billing records and "inadequate" document documentation supporting the attorney's application for fees).

A complete denial of the fee award, as the County Defendants propose, is not appropriate under the circumstances presented. Such a draconian approach "would not serve the purposes of imposing sanctions, especially where, as here, the sanctions were for bad-faith litigation misconduct." *Alcon*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at *6 (collecting cases) ("[C]ourts are reluctant to deny fee applications entirely when they result from sanctions."); *see also Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.*, 1996 WL 469660, at *6 (S.D.N.Y. Aug. 16, 1996); *Szczepanek v. Dabek*, 2011 WL 846193 (E.D.N.Y. Mar. 7, 2011), *aff'd*, 465 F. App'x 74 (2d Cir. 2012). To this end, "[t]aking all of the above deficiencies [of Plaintiff's revised fee application] into consideration and mindful that the Court has the discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from [Plaintiff's] fee application" the Court finds that a 25% across-the-board reduction in the total

14

hours claimed is warranted here. *Div. 1181*, 270 F. Supp. 3d at 627 (internal citations omitted); *see also Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 CIV. 3600 (SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (reducing the lodestar figure by 25% "[i]n order to account for [] instances of block billing, vagueness, and excess"); *Concrete Flotation Sys., Inc. v. Tadco Const. Corp.*, No. 07-CV-319, 2010 WL 2539661, at *1 (E.D.N.Y. June 17, 2010) (affirming magistrate judge's application of a twenty-five percent across-the-board reduction in compensable hours, and noting "it is common practice in the Second Circuit to reduce the fee award by an across-the-board percentage"); *Lochren v. Cty. of Suffolk*, 344 Fed.Appx. 706, 709 (2d Cir. 2009) (the district court's "decision to reduce [requested attorney's] fees by 25% was not an abuse of discretion."); *Juarez*, No. 15-CV-5081 (CBA) (LGD), 2024 WL 4834313, at *4 (noting that while the magistrate judge's 40% reduction in fees "may have been within his discretion," on *de novo* review, "a 40% reduction is too drastic where [Plaintiff's Counsel] successfully advanced some of Plaintiffs' claims" and, "[b]ecause of the prevalence of improper billing in [Plaintiff's Counsel's] invoices, balanced against Plaintiffs' success in this case," finding that a 25% reduction in Plaintiff's Counsel's hours appropriate).

Applying the above, the Court awards attorney's fees in the total amount of $50,793.75, broken down as follows:

| **Timekeeper** | **Hours Requested** | **Adjusted Reduced Hours** | **Reduced Hourly Rate** | **Total Amount** |
|---|---|---|---|---|
| Stephanie McClure (Managing Attorney) | 150.5 | 112.875 | $450 | $50,793.75 |

15

**CONCLUSION**

For the reasons stated herein, Plaintiff's revised fee application (ECF No. 205) is **GRANTED** *in part* and **DENIED** *in part*. Plaintiff is awarded attorney's fees in the amount of $50,793.75, to be paid by the County Defendants.

Dated: Central Islip, New York
December 26, 2024

S O  O R D E R E D:
/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge